Roger A. Colvin, Esq. (68773)  **[Exempt from filing fees by Gov. Code § 6103]**
Vincent C. Ewing, Esq. (177708)
Eric G. Salbert, Esq. (276073)
ALVAREZ-GLASMAN & COLVIN
Attorneys at Law
13181 Crossroads Parkway North, Suite 400
City of Industry, CA  91746
(562) 699-5500 · Facsimile (562) 692-2244
vewing@agclawfirm.com; rcolvin@agclawfirm.com
esalbert@agclawfirm.com;

Attorneys for Defendants, CITY OF CHICO
CITY OF CHICO POLICE DEPARTMENT

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| BOBBY WARREN; ANDY LAMBACH; JONATHON WILLIAMS; MICHAEL SAMUELSON; TRACY MILLER; TONA PETERSEN; CAROL BETH THOMPSON; CHRISTA STEVENS,<br><br>Plaintiffs,<br>vs.<br><br>CITY OF CHICO; CITY OF CHICO POLICE DEPARTMENT,<br><br>Defendants. | Case No. 2.21-cv-00640-MCE-DMC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; DECLARATION OF MARK ORME; DECLARATION OF PAUL RATTO**<br><br>Hearing:<br>Date:   April 23, 2021<br>Time:  10:00 A.M.<br>Ctrm:  Room 7, 14th Floor<br>Via:    Zoom Videoconference<br>Judge: Hon. Morrison C. England, Jr. |

**TO THE COURT AND TO ALL PARTIES HEREIN:**

**PLEASE TAKE NOTICE THAT** Defendants CITY OF CHICO AND CITY OF CHICO POLICE DEPARTMENT ("Collectively, the City") hereby submit the following Opposition to Plaintiff's Motion For Preliminary Injunction on file herein.

///

Dated:  April 16, 2021                                **ALVAREZ-GLASMAN & COLVIN**

By: /S/ *Eric G. Salbert*
  Eric G. Salbert
  Attorneys for Defendants, CITY OF CHICO and
  CITY OF CHICO POLICE DEPARTMENT

# **TABLE OF CONTENTS**

1. INTRODUCTION ..................................................................................................................6

2. LEGAL ARGUMENT...........................................................................................................7

   a. LEGAL STANDARD FOR OBTAINING A PRELIMINARY INJUNCTION ........................... 7

   b. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THEIR 8TH AMENDMENT CLAIM... 7

      i. Legal Standard For Eighth Amendment Claims ....................................................................... 7

      ii. Chico's Ordinances Do Not Criminalize Homelessness ............................................................. 8

      iii. Chico Has Enough Practically Available Shelter Beds For Plaintiffs ...................................... 10

   c. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THEIR 4TH AND 14TH
AMENDMENT CLAIMS ................................................................................................... 14

   d. PLAINTIFFS WILL NOT BE IRREPARABLY HARMED ABSENT PRELIMINARY RELIEF ................................................................................................................................................. 16

   e. THE BALANCE OF EQUITIES IS IN DEFENDANTS' FAVOR ............................................ 16

   f. A PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST................................ 17

3. CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Aitken v. City of Aberdeen*,
   393 F.Supp.3d 1075 (W.D. Wash. 2019) .............................................................................. 9

*Carlos-Kahalekomo v. County of Kuai*,
   2020 WL 4455101 (D. Haw. Aug. 3, 2020) ...................................................................... 8, 9

*City of West Covina v. Perkins*,
   525 U.S. 234 (1999) ............................................................................................................ 14

*Clement v. City of Glendale*,
   518 F.3d 1090 (9th Cir. 2008) .............................................................................................. 7

*Cobine v. City of Eureka*,
   2016 WL 1730084 (N.D. Cal. May 2, 2016) ..................................................................... 13

*Drakes Bay Oyster Co. v. Jewell*,
   747 F.3d 1073 (9th Cir. 2014) .............................................................................................. 7

*Fuentes v. Shevin*,
   407 U.S. 67 (1972) .............................................................................................................. 14

*Jones v. City of Los Angeles*,
   444 F.3d 1118 (9th Cir. 2006) ........................................................................................ 8, 10

*Lavan v City of Los Angeles*,
   693 F.3d 1022 (9th Cir. 2012) ........................................................................................ 7, 15

*Martin v. City and County of Honolulu*,
   2015 WL 5826822 (D. Haw. Oct. 1, 2015) ........................................................................ 15

*Martin v. City of Boise*,
   920 F.3d 584 (9th Cir. 2019) ........................................................................................ passim

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .............................................................................................. 17

*Miralle v. City of Oakland*,
   2018 WL 6199929 (N.D. Cal. Nov. 28, 2018) ..................................................................... 9

*Miranda v. City of Cornelius*,
   429 F.3d 858 (9th Cir. 2005) .................................................................................................. 14

*Quintero v. City of Santa Cruz*,
   2019 WL 1924990 (N.D. Cal. Apr. 30, 2019) ......................................................... 16, 17, 18

*Shipp v. Schaaf*,
   379 F.Supp.3d 1033 (N.D. Cal. Apr. 16, 2019) ................................................................... 15

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .................................................................................................................... 7

**Statutes**

Chico Municipal Code section 12.18.020 ................................................................................. 10

Chico Municipal Code section 12.18.430 ................................................................................. 10

Chico Municipal Code section 12.18.450 ................................................................................. 10

Chico Municipal Code section 12.18.470 ................................................................................. 10

Chico Municipal Code section 12R.04.020 .............................................................................. 10

Chico Municipal Code section 12R.04.340 .............................................................................. 10

Chico Municipal Code section 12R.04.370 .............................................................................. 10

Chico Municipal Code section 9.20.030 ................................................................................ 9, 10

Chico Municipal Code section 9.44.015 ................................................................................ 9, 10

Kuai County Code section 19-1.4(a)(1) ...................................................................................... 9

Kuai County Code section 19-1.4(a)(13) .................................................................................... 9

Kuai County Code section 19-2.3(a) ........................................................................................... 9

U.S. Constitution, amend. XIV, § 1. .......................................................................................... 14

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## 1. INTRODUCTION

This case is about eight unhoused individuals—Bobby Warren, Andy Lambach, Jonathon Williams, Michael Samuelson, Tracy Miller, Tona Petersen, Carol Beth Thompson, and Christa Stevens (collectively, "Plaintiffs")—who seek to enjoin the City of Chico and the City of Chico Police Department (collectively, "the City") from enforcing its anti-camping ordinances, despite the fact that there are currently approximately 40 to 50 available shelter beds in the City each night, Declaration of Paul Ratto ("Ratto Decl."), ¶ 8; Declaration of Mark Orme ("Orme Decl."), ¶ 10, which Plaintiffs refuse to accept, Plaintiffs' Points and Authorities In Support of Plaintiffs' Ex Parte Motion for Temporary Restraining Order ("Mot.") 7:27-8:9; Declaration of Tona Petersen ("Petersen Decl."), ¶¶ 2, 6 & 10; Declaration of Carol Beth Thompson ("Thompson Decl."), ¶ 19; Declaration of Christa Stevens ("Stevens Decl.") ¶¶ 11-12; Declaration of Jonathon Williams ("Williams Decl."), ¶ 14; Declaration of Andy Lambach ("Lambach Decl."), ¶ 17; Declaration of Michael Samuelson ("Samuelson Decl."), ¶ 15; Declaration of Bobby Warren ("Warren Decl."), ¶¶ 12-13 & 22; Declaration of Tracy Miller ("Miller Decl."), ¶¶ 4 & 19; Ratto Decl., ¶¶ 10 & 12. Plaintiffs claim they are concerned that their property will be taken, yet the City has provided them 72-hours' notice of when property needs to be moved, Plaintiffs are given the opportunity to throw away trash and move their property, Plaintiffs are instructed how to retrieve any property the City moves to storage, and the City only discards property identified as waste, is unclaimed property valued under $100 or that poses health and safety risks. Petersen Decl., ¶ 8, Ex. 1; Thompson Decl., ¶ 24, Ex. 1; Stevens Decl., ¶ 8; Williams Decl., ¶ 8; Lambach Decl., ¶¶ 9-10; Samuelson Decl., ¶¶ 8-9; Warren Decl., ¶¶ 10-11, Ex. 1; Miller Decl., ¶¶ 10 & 14, Exs. 1-3; Ratto Decl. ¶¶ 22, 27-33; Orme Decl. ¶¶ 20-33. The issues raised by Plaintiffs present Fourth, Eighth and Fourteenth Amendment constitutional concerns, but relevant case authority, coupled with the specific facts of this case, ultimately leads to the conclusion that none of Plaintiffs constitutional rights have been violated.

The Ninth Circuit, in *Martin v. City of Boise*, 920 F.3d 584, 617 n. 8 (9th Cir. 2019), held that the Eighth Amendment's proscription of cruel and unusual punishment is not violated where: (1) "an ordinance prohibit[s] sitting, lying, or sleeping outside at particular times or in particular locations;" and (2) "individuals who do have access to adequate temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free, … choose not to use it." Because the

1  City's anti-camping ordinances are variously limited by location, time and a combination of both, *see*,
2  *infra*, Section 2.b.ii., Plaintiffs have no viable Eighth Amendment claim.  Moreover, Plaintiffs' Eighth
3  Amendment rights have not been impinged where adequate shelter space exists to serve them even though
4  they refuse to utilize the same.  *See*, *infra*, Section 2.b.iii.

Regarding Plaintiffs' Fourth and Fourteenth Amendment claims that their property cannot be unreasonably seized by the government without due process of law, the Ninth Circuit has explained that a municipality may seize a homeless person's property where it "announce[s] its intentions and give[s] the property owner a chance to argue against the taking." *Lavan v City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012) (quoting *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008)). Plaintiffs' Fourth and Fourteenth Amendment rights have not been violated because the City provided Plaintiffs with 72-hours' notice before removing property, notified Plaintiffs where their property would be stored and how it could be recovered, and discarded items Plaintiffs identified as trash or that create health and safety hazards only.  *See*, *infra*, Section 2.c.  For these reasons, and those that follow, the City respectfully requests that Plaintiffs' motion for preliminary injunction be denied.

## 2. LEGAL ARGUMENT

### a. LEGAL STANDARD FOR OBTAINING A PRELIMINARY INJUNCTION

To obtain a preliminary injunction, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The last two factors merge if the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  When considering whether to grant this "extraordinary remedy, … courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences." *Winter*, 555 U.S. at 24.

### b. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THEIR 8TH AMENDMENT CLAIM.

#### i. Legal Standard For Eighth Amendment Claims

The Eighth Amendment reads: "Excessive bail shall not be required, nor excessive fines imposed,

nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. Interpreting the Eighth Amendment, the Ninth Circuit has ruled that, "the Eighth Amendment prohibits the state from punishing an involuntary act or condition if it is the unavoidable consequence of one's status or being." *Jones v. City of Los Angeles*, 444 F.3d 1118, 1135 (9th Cir. 2006). Elaborating on this principle, the Ninth Circuit, in *Martin v. City of Boise*, 920 F.3d 584, 616 (9th Cir. 2019), recently held that, "the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter."

Carefully circumscribing the limits of its holding, the *Martin* Court explained that:

> ***Our holding is a narrow one***. Like the *Jones* panel, "***we in no way dictate to the City that it must provide sufficient shelter for the homeless, or allow anyone who wishes to sit, lie, or sleep on the streets … at any time and at any place***." [*Jones*, 444 F.3d at 1138.] We hold only that "so long as there is a greater number of homeless individuals in [a jurisdiction] than the number of available beds [in shelters]," the jurisdiction cannot prosecute homeless individuals for "involuntarily sitting, lying, and sleeping in public." *Id.* That is, ***as long as there is no option of sleeping indoors, the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter***."

*Martin*, 920 F.3d at 617, emphasis added. The Ninth Circuit concluded that "a municipality cannot criminalize such behavior consistently with the Eighth Amendment when no sleeping space is ***practically*** available in any shelter." *Id*. at 618, emphasis added. This does not mean that homeless individuals have a viable Eighth Amendment claim where they refuse practically available shelter, or that a municipality may never criminalize the act of sleeping outside. As the *Martin* Court explained:

> Naturally, ***our holding does not cover individuals who do have access to adequate temporary shelter***, whether because they have the means to pay for it or because it is realistically available to them for free, ***but who choose not to use it***. Nor do we suggest that a jurisdiction with insufficient shelter can *never* criminalize the act of sleeping outside. ***Even where shelter is unavailable, an ordinance prohibiting sitting, lying, or sleeping outside at particular times or in particular locations might well be constitutionally permissible***. *See Jones*, 444 F.3d at 1123.

*Martin*, 920 F.3d at 617 n. 8.

### ii. Chico's Ordinances Do Not Criminalize Homelessness

In *Carlos-Kahalekomo v. County of Kuai*, 2020 WL 4455101, at *1 (D. Haw. Aug. 3, 2020), the District Court considered whether the County of Kuai could restrict homeless individuals from camping

without a permit at a camping area. Kuai County Code ("KCC") section 19-2.3(a) requires a camping permit for anyone "who camps, erects a tent or constructs any temporary sleeping quarters on any County public park during the hours of 5:00 p.m. to 10:00 a.m.;" KCC section 19-1.4(a)(1) prohibits abandoned vehicles; and KCC section 19-1.4(a)(13) prohibits structures without a permit "except for a prefab and manufactured quick tent no larger than twenty (20) feet by twenty feet (2[0]) feet for an event or gathering." *Carlos-Kahalekomo*, 2020 WL 4455101, at *3. Because "*Martin* does not limit the [c]ity's ability to evict comeless individuals from particular public places," *Aitken v. City of Aberdeen*, 393 F.Supp.3d 1075, 1082 (W.D. Wash. 2019), and "*Martin* does not establish a constitutional right to occupy public property indefinitely at Plaintiffs' option," *Miralle v. City of Oakland*, 2018 WL 6199929, at *2 (N.D. Cal. Nov. 28, 2018), the District Court concluded that the county code sections at issue did not run afoul of the Ninth Circuit's holding in *Martin. Carlos-Kahalekomo*, 2020 WL 4455101, at *2-4.

The Chico Municipal Code sections at issue in the instant matter are limited as to time and location similar to those at issue in *Carlos-Kahalekomo*. First, Chico Municipal Code section 9.20.030 ("Section 9.20.030") states, "Except as otherwise provided in this Chapter, it is unlawful and a public nuisance for any person to camp or occupy camp facilities on any public property or any private property which is not operated and maintained as a campground in conformance with the regulations set forth in Title 19 of this code." In other words, this ordinance does not restrict people from camping at designated campgrounds within the City. Plaintiffs' incorrectly claim that, "Under this ordinance, it is unlawful for someone to live temporarily outside on public property." Mot. 9:12-13. By containing a location-based restriction as authorized by *Martin* and *Carlos-Kahelekomo*, Section 9.20.030 does *not* "criminalize the simple act of sleeping outside on public property in the [c]ity…." *Martin*, 920 F.3d at 617.

Chico Municipal Code section 9.50.030 ("Section 9.50.030") also contains a location-based restriction in that it restricts camping in "regulated areas," defined in Chico Municipal Code section 9.50.020 as city-owned land adjacent to watercourses. Plaintiffs agree Section 9.50.030 is limited to "city-owned land adjacent to bodies of water." Mot. 9:24-25. Similarly, Plaintiffs agree that Chico Municipal Code section 9.44.015 ("Section 9.44.015") prohibits people from sitting or lying down on sidewalks, curbs and streets that are "adjacent to any property zoned or used for commercial uses" between 7:00 a.m. and 11:00 p.m. Mot. 10:1-3. In fact, this ordinance was utilized to inform unhoused

individuals that they could legally abide by the City's ordinances by sleeping on public right-of-ways and sidewalks from 11:00 p.m. to 7:00 a.m. Ratto Decl., ¶ 25. Stated differently, Section 9.44.015 contains a location-based restriction for sidewalks, curbs and streets next to commercial property, and a time-based restriction limiting sitting and lying at said locations during the daytime.

Next, Plaintiffs agree that Chico Municipal Code section 9.43.030 ("Section 9.43.030") contains location- and time-based restrictions in that it limits people from being present in Chico's civic center between 10:01 p.m. and 6:59 a.m. Likewise, Chico Municipal Code section 12.18.430 ("Section 12.18.430") includes a location-based restriction limiting people from camping in "parks," which are defined in Chico Municipal Code section 12.18.020 ("Section 12.18.020"), subdivision (N), as parks, greenways and open spaces, and further visually identified on a map at Exhibit K in Chico Municipal Code section 12.18.470 ("Section 12.18.470"). Chico Municipal Code section 12.18.450 ("Section 12.18.450") places an additional time-based restriction for being present in "parks" from 11:00 p.m. to 5:00 a.m. Lastly, the "park" restrictions in Sections 12.18.020, 12.18.430, 12.18.450 and 12.18.470 (Exhibit K) are repeated in Chico Municipal Code sections 12R.04.020, 12R.04.340, 12R.04.370, and Exhibit K to Chapter 12R.

Each of the City's camping ordinances contain location-based, time-based or dual location- and time-based restrictions. Moreover, the City's anti-camping ordinances are only enforced inside the City's parks and waterways, not in other areas, including the public sidewalk, unless an individual blocks ingress or egress to pedestrians, businesses or residences. Ratto Decl., ¶ 13, Orme Decl. ¶¶ 18-19. As the Ninth Circuit explained in *Martin*, because such restrictions necessarily provide homeless persons with the ability to find alternative locations to sleep, no Eight Amendment violation has occurred. *Martin*, 920 F.3d at 617 n. 8. Consequently, Plaintiffs are unable to prove a likelihood of success on the merits, and this factor tips in favor of the City.

### iii. Chico Has Enough Practically Available Shelter Beds For Plaintiffs

The Ninth Circuit has held "that 'so long as there is a greater number of homeless individuals in [a jurisdiction] than the number of available beds [in shelters],' the jurisdiction cannot prosecute homeless individuals for 'involuntarily sitting, lying, and sleeping in public.'" *Martin*, 920 F.3d at 617 (quoting *Jones*, 444 F.3d at 1138). However, as explained above, "Even where shelter is unavailable,

an ordinance prohibiting sitting, lying, or sleeping outside at particular times or in particular locations might well be constitutionally permissible." *Martin*, 920 F.3d at 617 n. 8. Additionally, the Ninth Circuit's "holding does not cover individuals who do have access to adequate temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free, but who choose not to use it." *Id*. The critical inquiry here is what the *Martin* Court meant as to calculating the number of persons "in [a jurisdiction]" relative to the number of available shelter spaces.

Plaintiffs claim that there are 2,304 homeless persons living in Butte County, 891 of whom are unsheltered, with 571 of those unsheltered adults living in Chico. Mot. 6:22-24. These numbers are based off a two-year-old 2019 "point-in-time" count of unsheltered and sheltered homeless people, which acknowledges that the numbers may be understated due to displacement caused by the 2018 Camp Fire, but states that "it is intended to be a snapshot in time" only. *Id*. at 6:21-7:1; Orme Decl., ¶ 4. Moreover, the City is unaware of any formal census being taken of the unsheltered population in the City that would provide current or accurate information. Orme Decl., ¶ 5. There is no doubt that the crisis of unsheltered homelessness is a continuing concern in the City of Chico. Orme Decl., ¶ 6. So much so that the City of Chico approved a Shelter Crisis Declaration in 2018. (See Plaintiffs' Exhibit 2 – Resolution No. 82-18, Resolution of the Council of the City of Chico declaring a Shelter Crisis in the City of Chico). *Id*. This designation allowed the City to become eligible for the Homeless Emergency Aid Program. ("HELP"), a program to provide immediate assistance for its homeless population. *Id*.

With respect to whether the Camp Fire has caused increases or decreases to the homeless population in Butte County as a whole, the City or both, Plaintiffs have provided no evidence. Further, Plaintiffs point to a City Council report dated February 2, 2021 for the proposition that "the community 'lacks adequate emergency shelter beds for all unsheltered homeless in our community, leaving more than 200 persons sleeping on the streets on any given night." Mot. 7:4-9. However, that report states that, "In many cases, these persons are chronically homeless. Some for a variety of reasons, are often reluctant to seek out public assistance that will improve their health outcomes." Mot., Ex. 1., p. 3. As a result, the number of shelter beds available at the Torres Shelter varies between approximately 40 and 50 every night, and on April 14, 2021, there were 38 shelter beds open and available. Ratto Decl., ¶ 8.

None of the unhoused individuals contacted by Officer Paul Ratto in 2021 agreed to accept the services and shelter beds of the Torres Shelter, likely due to its regulations regarding behavior and restrictions as to drug and alcohol use at the facility. Ratto Decl., ¶¶ 10 & 12. However, the Torres Shelter does not have overly restrictive regulations. To stay at Torres Shelter, the basic rules and policies that must be followed are: (1) every new and returning guest must submit a negative COVID-19 test; (2) no drinking; (3) no using drugs (unless prescribed); and (4) no violent behavior. Orme Decl., ¶ 11, Ex. 1.

The City should not be enjoined from enforcing its camping ordinances based on whether it is able to house the entire homeless population in Butte County. Although the *Martin* Court reviewed the homeless population in Ada County, the City of Boise is the seat of Ada County, and here, the City of Chico is not the seat of Butte County; rather, the City of Oroville is. *Martin*, 920 F.3d at 604. Moreover, Plaintiffs have failed to explain how many homeless individuals voluntarily refuse to enter shelters. This is critical information and Plaintiffs have not carried their burden of proof because *Martin* expressly states that its holding does not cover those homeless individuals who choose not to enter shelters when space is available. *Martin*, 920 F.3d at 617 n. 8. The City has multiple homeless shelters operating in the area, Mot. 7:10-25, and its law enforcement officers provided Plaintiffs with written 72-hour camp closure notifications that have the contact information for several shelters and other social services, Petersen Decl., ¶ 8, Ex. 1; Thompson Decl., ¶ 24, Ex. 1; Stevens Decl. ¶ 8; Williams Decl., ¶ 8; Lambach Decl., ¶¶ 9-10; Samuelson Decl., ¶¶ 8-9; Warren Decl., ¶¶ 10-11, Ex. 1; Miller Decl., ¶¶ 10 & 14, Exs. 1-3; Ratto Decl. ¶¶ 22, 27-33; Orme Decl. ¶¶ 20-33. Additionally, the officer in charge of the team responsible for issuing the 72-hour notices informs each homeless individual he meets about the Torres Shelter, a free, year-round emergency shelter. Ratto Decl., ¶ 7.

Instead of explaining how many open shelter spaces there are each night, Plaintiffs argue that, "Even when shelter beds are open, they are not always practically available to unsheltered residents." Mot. 7:26-27. The reasons Plaintiffs claim such open shelter beds are not practically available are because Plaintiffs either have pets, mental disabilities or fears of COVID-19 that prevent them from entering the homeless shelters operating in the City. Mot. 7:27-8:9. *Martin* does not state that shelter spaces are rendered practically unavailable for such reasons. *See*, *generally*, *Martin*, 920 F.3d 584.

The only legal authority Plaintiffs cite in support of their claim that shelter space is practically unavailable in the City due to rules banning pets is *Cobine v. City of Eureka*, 2016 WL 1730084, *8 (N.D. Cal. May 2, 2016). However, *Cobine* does not hold that a shelter's rules regarding pets may render bed space practically unavailable for the purposes of complying with *Martin*. *See*, *generally*, *Cobine*, 2016 WL 1730084. The only reference to pets and animals in *Cobine* occurs in the District Court's recitation of the conditions of its preliminary injunction. *Id*. at *8.

Factually, Plaintiffs do not contend that all shelters in the City have a rule prohibiting persons with mental health issues from entering their facilities. Plaintiffs instead variously complain that they do not want to go to congregate shelters because they have pets, they believe shelters are not sanitary, their own behavioral issues prevent them from living at a shelter, and/or they prefer not to live in a shared living space or indoors at all. Petersen Decl., ¶¶ 2, 6 & 10; Thompson Decl., ¶ 19; Stevens Decl. ¶¶ 11-12; Williams Decl., ¶ 14; Lambach Decl., ¶ 17; Samuelson Decl., ¶ 15; Warren Decl., ¶¶ 12-13 & 22; Miller Decl., ¶¶ 4 & 19. The fact that Plaintiffs do not want to go to a shelter does not render shelter space practically unavailable, it means only that Plaintiffs are unwilling to stay at any congregate shelter. *Martin* does not stand for the proposition that shelter beds are practically unavailable if a homeless person does not want to stay there; the Ninth Circuit explained, to the contrary, that, "our holding does not cover individuals who do have access to adequate temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free, but who choose not to use it." *Martin*, 920 F.3d at 617 n. 8.

Arguing shelter beds are practically unavailable due to Plaintiffs' stated COVID-19 concerns, Mot. 18:24-19:2, is similarly unfounded. Specifically, Plaintiffs claim that they are at increased risk of complications from COVID-19 due to underlying health conditions, and that the CDC has issued guidance recommending that homeless persons should remain outside if shelters do not have individual rooms. *Id.* at 8:18-24, 18:24-19:2. However, these claims do not address the fact, as claimed by Plaintiffs, that the homeless encampments in the City have been occupied by over 100 people at Comanche Creek, by 50 people in total at Annie's Glen and Horseshoe Pits, by 25 people at the Boucher Street encampment, by 40 to 50 people at Windchime Park. Petersen Decl. ¶ 6; Declaration of Addison Winslow ¶¶ 11, 21, 23, 24, Declaration of Nancy Wirtz ¶ 2, Miller Decl. ¶¶ 6, 9. Plaintiffs have also

not provided any evidence as to whether they would be any safer at a congregate shelter as opposed to an outside homeless encampment. To the contrary, Plaintiffs have submitted evidence that, despite their stated COVID-19 concerns, they engage in close-contact interactions outside by, for example, lending bicycles to and borrowing bicycles from other homeless individuals. Warren Decl. ¶ 8. Additionally, the Torres Shelter requires all new and returning guests to submit a negative COVID-19 test. Orme Decl., ¶ 11. Not only have Plaintiffs failed to cite any legal authority for the proposition that COVID-19 renders shelter beds unavailable under *Martin*, they have not provided factual analysis as to whether the health risks posed by COVID-19 are more prevalent at large homeless encampments in the City than at the shelters in the City.

No evidence has been presented with respect to: (1) the number of available shelter beds in the City at this time as opposed to in 2019; (2) the number of homeless persons living in the City who choose not to accept available shelter beds; or (3) the prevalence of COVID-19 in shelters as opposed to homeless encampments. Moreover, no legal authority has been cited that would support Plaintiffs' claims that owning pets, having mental disabilities and being fearful of COVID-19 render shelter space practically unavailable for purposes of determining that the City may not enforce its anti-camping ordinances under the Eighth Amendment. Consequently, Plaintiffs are unlikely to prevail on the merits, and this factor tips in favor of the City.

### c. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THEIR 4TH AND 14TH AMENDMENT CLAIMS.

"The Fourth Amendment protects against unreasonable interferences in property interests …." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). Similarly, the Fourteenth Amendment mandates that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. "Any significant taking of property by the State is within the purview of the Due Process Clause." *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972). Due process requires law enforcement "to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999). "Because homeless persons' unabandoned possessions are 'property' within the meaning of the Fourteenth Amendment, the City must comport with the requirements of the Fourteenth Amendment's

due process clause if it wishes to take and destroy them." *Lavan v City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012).

In *Lavan v City of Los Angeles*, 693 F.3d at 1023-24, the Ninth Circuit held that a preliminary injunction could issue where homeless persons' property was *summarily* destroyed, without notice, in violation of the Fourth and Fourteenth Amendments. Cases presenting factual scenarios more akin to those at issue in the instant matter have arrived at contrary conclusion. In *Martin v. City and County of Honolulu*, 2015 WL 5826822, *1-2, 6-8 (D. Haw. Oct. 1, 2015), the District Court denied plaintiffs' motion for temporary restraining order where the defendants provided twenty-four hours' notice before removing homeless persons' property from public property, stored homeless persons' property for 30 days (with instructions on how to retrieve the same), and destroyed items presenting health and safety risks only. Likewise, in *Shipp v. Schaaf*, 379 F.Supp.3d 1033, 1037-39 (N.D. Cal. Apr. 16, 2019), the District Court denied homeless plaintiffs' preliminary injunction motion where the defendants provided 72-hours' notice before removing property, would only discard items that were "unsafe or hazardous to store," and stored the remaining property for at least 90 days (providing information on how to retrieve said property).

The facts of the instant matter more closely resemble those at issue in *Martin v. City and County of Honolulu* and *Shipp*. Here, as amply described in the 72-hour notices attached to Plaintiffs' declarations, the City provided Plaintiffs with advance warning that unclaimed property would be removed and stored for a period of 90 days. Petersen Decl., ¶ 8, Ex. 1; Thompson Decl., ¶ 24, Ex. 1; Warren Decl., ¶¶ 10-11, Ex. 1; Miller Decl., ¶¶ 10 & 14, Exs. 1-3. These notices provided instructions as to how the property could be retrieved. *Id*. Additionally, the City's law enforcement officers would discard items identified by the homeless persons they belonged to as trash, and items presenting health and safety risks. Ratto Decl., ¶¶ 27-33, Orme Decl. ¶¶ 20-33. On the expiration of the 72-hour period, law enforcement would never "clear out" the unhoused, but would provide additional time to gather personal property and belongings. Ratto Decl., ¶ 22; Orme Decl. ¶ 22. Only four individuals out of approximately 200 have been cited for illegal encampment, and none of the Plaintiffs were issued citations or arrested. Ratto Decl., ¶ 23; Orme Decl. ¶ 23. Consequently, the City has not violated Plaintiffs' rights guaranteed by the Fourth and Fourteenth Amendments, and Plaintiffs are not likely to

succeed on these claims.

### d. PLAINTIFFS WILL NOT BE IRREPARABLY HARMED ABSENT PRELIMINARY RELIEF

Plaintiffs argue they will be irreparably harmed because the violation of a constitutional right constitutes irreparable harm, and the loss of a home and property in a camp is irreparable harm. Mot. 23-9-23. As explained above, Plaintiffs's constitutional rights have not been violated, they can sleep in parts of the City not subject to the anti-camping ordinances, they have been provided with the contact information for the shelters in the community (whether they choose to accept it or not), and they have been provided advance notice of the removal of their property (including information as to how they can retrieve it). This case more closely aligns with *Quintero v. City of Santa Cruz*, 2019 WL 1924990, *2-3 (N.D. Cal. Apr. 30, 2019), where the District Court explained that irreparable harm did not exist, despite one plaintiff's concern that she may be murdered if forced to leave a homeless encampment, because the City of Santa Cruz offered alternative shelter to plaintiffs even though only 30 of the 112 vouchers offering such housing were utilized. Thus, this factor tips in favor of the City.

### e. THE BALANCE OF EQUITIES IS IN DEFENDANTS' FAVOR

Considering the equities of this case, Plaintiffs assert, with respect to their Eighth Amendment claim, that they will lose their safety, community, possessions and places of rest. Mot. 24:3-5. Again, this argument ignores the fact that the City's law enforcement officers provide 72-hours' advance written notice of camp clearing, with instructions for retrieving possessions and contact information for homeless shelters. Petersen Decl., ¶ 8, Ex. 1; Thompson Decl., ¶ 24, Ex. 1; Warren Decl., ¶¶ 10-11, Ex. 1; Miller Decl., ¶¶ 10 & 14, Exs. 1-3. Regarding safety, Plaintiffs have failed to demonstrate that their fear of COVID-19 existing at a congregate shelter is valid in light of their own admission that they reside in congregate homeless encampments where COVID-19 may be present. Plaintiffs next claim that their interest in keeping their possessions outweighs the City's interest in keeping the streets clean. Mot. 24:5-8. Not only has the City provided Plaintiffs with advance notice before taking property and an opportunity to recover the same, but its interest reaches beyond simply cleaning the streets. As explained on page 3 of the City Council Agenda Report attached as Exhibit 1 to Plaintiff's motion, "For months, dozens of unhoused individuals have camped on wedge-shaped lots, in public parks and in the city's

waterways and greenways often creating environmental, fire, health and safety concerns in high-risk areas." The homeless encampments in the City have become so large that parks have become unsuable for housed residents of the City, and have been beset by significant ecological damage. Ratto Decl., ¶ 18. In sum, Plaintiffs arguments that they will lose a place to sleep, their possessions and their safety are undercut by the fact that no showing has been made that COVID-19 is a greater threat in congregate shelters than in congregate homeless encampments, and the City has informed Plaintiffs of where they may stay, has provided advance notice before taking any property, and has infrromed Plaintiffs of where they can recover their property. On the other hand, if the City is not able to clear homeless encampments from waterways, greenways, parks and its civic center, it faces environmental, fire, health and safety threats that will not be ameliorated whatsoever. Consequently, the balance of equities tips in the City's favor.

### f. A PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST

In *Quintero*, 2019 WL 1924990, *4-5, the District Court explained that the public interest factor tipped in the City of Santa Cruz' favor where, although the local homeless community had been growing due to rising housing costs, the city needed to protect the health and safety of all residents, the homeless encampment presented its own health and safety risks, and the city was working with community providers to create alternative shelter solutions. Plaintiffs urge that this factor tips in their favor because "[i]t is always in the public interest to enjoin actions that violate an individual's constitutional rights…." Mot. 24:11-15 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As explained above, the City has not violated Plaintiffs' rights under the Fourth, Eighth or Fourteenth Amendments. Page 3 of the City Council Agenda Report attached as Exhibit 1 to Plaintiff's motion explains that the public has an interest in protecting the environment, reducing fire hazards, promoting the safety of its residents (including its unhoused population) by keeping public property safe, and keeping residents healthy. This is a critical concern. Law enforcement has observed unhoused individuals using multiple tents not for sleeping, but for storage. Ratto Decl., ¶ 39. Moreover, that report details that the City is working with multiple community providers to provide alternative housing solutions to homeless persons, including the conversion of a BMX track to a 50-person tent site containing shower and restroom facilities, working with the Chico Housing Action Team "to rehabilitate an existing 29 unit project site and add an additional

60 units of single room occupancy units, and working with the North State Shelter Team "to establish additional safe parking environments at the Park-n-Ride off Highways 99 and 32…." Mot., Ex. 1, pp. 4-6, *see*, *also*, Orme Decl., ¶¶ 7 & 14.  The City has also hired a Homeless Solution Coordinator, created a 15-unit apartment program for unhoused persons and those at risk of homelessness, and started the Chico Police Department's Homeless Evaluation Liason Program.  Orme Decl., ¶¶ 8, 15 & 16.  Thus, under *Quintero*, this factor tips in favor of the City.

### 3. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for preliminary injunction.

Dated:  April 16, 2021                  **ALVAREZ-GLASMAN & COLVIN**

By: /S/ *Eric G. Salbert*
    Eric G. Salbert
    Attorneys for Defendants, CITY OF CHICO and
    CITY OF CHICO POLICE DEPARTMENT

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Eastern District of California by using the Court's CM/ECF system on April 16, 2021.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/S/ Liza Slaughter  
Liza Slaughter

4847-1646-0262, v. 3