UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BOBBY WARREN, et al.,

    Plaintiffs,

    v.

CITY OF CHICO, et al.,

    Defendants.

No. 2:21-CV-00640-MCE-DMC

**MEMORANDUM AND ORDER**

By way of this action, Plaintiffs Bobby Warren, Andy Lambach, Jonathon Williams, Michael Samuelson, Tracy Miller, Tona Petersen, Carol Beth Thompson, and Christa Stevens (collectively "Plaintiffs"), who are homeless individuals, seek injunctive and declaratory relief preventing Defendants, the City of Chico ("City") and the City of Chico Police Department ("Police"), (collectively "Defendants") from enforcing various ordinances that purportedly prevent them from "sleeping, sitting, lying, resting and simply existing in the City of Chico." Pls.' First Amended Compl. ("FAC"), ECF No. 34, ¶ 7. They also seek to enjoin the unconstitutional destruction of their personal property. At 11:39 p.m. on Saturday, April 10, 2021, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO"). ECF No. 10. This case was assigned to this Court the following day. Given that Plaintiffs were challenging enforcement actions set to begin the following morning, this Court issued a TRO to preserve the status quo until full

briefing could be provided and a hearing could be had on whether a longer term preliminary injunction should issue. Essentially, the Court called a "time-out" prohibiting Defendants from taking any further action until it could receive briefing from both sides on the issues raised. In keeping with the short-term nature of that TRO, the Court set a hearing on Plaintiffs' Motion for Preliminary Injunction on April 23, 2021. At that hearing, the parties agreed to extend the TRO so they could try to work together to reach an informal resolution of Plaintiffs' claims. They were not able to reach an agreement, and this case came before the Court for hearing on the pending Motion on July 2, 2021. Having considered the record in its entirety and the applicable law, Plaintiffs' Motion is hereby GRANTED.

## STANDARD

"A preliminary injunction is an extraordinary and drastic remedy." Munaf v. Geren, 553 U.S. 674, 689 (2008) (internal quotation marks and citations omitted). "[T]he purpose of a preliminary injunction is to preserve the status quo between the parties pending a resolution of a case on the merits." McCormack v. Hiedeman, 694 F.3d 1004, 1019 (9th Cir. 2012). A plaintiff seeking a preliminary injunction must establish that: (1) he is "likely to succeed on the merits;" (2) he is "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) "an injunction is in the public interest." Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008). "When the government is a party" to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors "merge." Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014). "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the constitution." Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005). There is generally no public interest in the perpetuation of an unlawful government action. UFW v. U.S. DOL, No. 1:20-CV-1690, 2020 WL 7646406,

at *20 (E.D. Cal. Dec. 23, 2020) (citing League of Women Voters v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016)).

Alternatively, under the so-called sliding scale approach, "[t]he Ninth Circuit weighs [the above] factors on a sliding scale," so that where there are "'serious questions going to the merits'—that is, less than a 'likelihood of success' on the merits—a preliminary injunction may still be issued so long as 'the balance of hardships tips sharply in the plaintiff's favor' and the other two factors are satisfied." Short v. Brown, 893 F.3d 671, 675 (9th Cir. 2018) (quoting Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011)).

"In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 542 (1987)). A district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." Id. at 22.

## ANALYSIS[1]

The City of Chico has put into place ordinances that make it unlawful for any individual to sit, lie, stand, sleep on any public property within the City without being subject to criminal penalties. More specifically, Chico's anti-camping ordinance makes it unlawful "for any person to camp or occupy camp facilities on any public property or any private property which is not operated and maintained as a campground . . . ." Chico Cal., Mun. Code § 9.20.030 (2021) (emphasis added). "'Camp' means to place, pitch or

---

[1] This Memorandum focuses on Plaintiffs' Eighth Amendment cause of action. It appears to the Court that the property destruction challenged in the Fourth and Fourteenth Amendment claims occurs in connection with cleaning up "illegal" encampments. That property destruction should thus cease with the criminal enforcement of the relevant ordinances. In an abundance of caution, however, the Court makes clear that it finds Plaintiffs have shown they are likely to succeed on the merits of those claims, Lavan v. City of Los Angeles, 693 F.3d 1022, 1030 (9th Cir. 2012), they are likely to suffer imminent irreparable harm absent an injunction, and that the balance of equities and public interest favor issuing an injunction as well.

3

occupy camp facilities; <u>to live temporarily in a camp facility or outdoors</u>." Id. § 9.20.020(A) (emphasis added). "Violation of this chapter shall be a misdemeanor or an infraction and may be enforced by the filing of a criminal action by the city attorney or the issuance of an administrative citation . . . . ." Id. § 9.20.060. Defendants' counsel conceded that "a person could never sit, sleep, lie on any property or else they would . . . be criminally prosecuted . . . unless the person walked 24 hours a day and had no personal property." Transcript, Apr. 23, 2021, ECF No. 72, at 19.

Because the ordinances passed by the City Council subject individuals to criminal penalties for "living outdoors" anywhere in the City, the result is that homeless individuals are subject to criminal prosecution no matter where they go within the jurisdiction. This Circuit has previously held that ordinances such as this are not enforceable, unless there is enough practically available shelter within the City for all unhoused individuals. <u>Martin v. City of Boise</u>, 920 F.3d 584, 617 (2019) (holding "that 'so long as there is a greater number of homeless individuals in [a jurisdiction] than the number of available beds [in shelters],' the jurisdiction cannot prosecute homeless individuals for 'involuntarily sitting, lying, and sleeping in public.'") (quoting <u>Jones v. City of Los Angeles</u>, 444 F.3d 1118, 1138 (9th Cir. 2006)).

At the first preliminary injunction hearing, Plaintiffs advised the Court there were a total of 120 shelter beds in Chico to serve an estimated homeless population of over 500 individuals. That is insufficient under <u>Martin</u> if Chico wants to criminalize resting on public property. <u>See</u> <u>id.</u>[2]

As indicated above, however, the Court extended the TRO after that initial hearing to allow the parties time to try to work toward a negotiated resolution. According to the City, it then "constructed an outdoor temporary shelter facility at the Chico Municipal

///

---

[2] Given the great disparity between the number of beds and the number of unhoused persons, the Court need not get into the weeds of whether the existing beds are "practically available." There was simply not enough shelter available for the community to opt to enforce its criminal sanctions. Plaintiffs are nonetheless again advised that the Court is not necessarily convinced that the reasons they offer for declining shelter render that shelter "practically unavailable" under <u>Martin</u>.

4

Airport that accommodates all 571 of the City's homeless persons." Defs.' Suppl. Br., ECF No. 90, at 3:13-14. This raises the question, "What is shelter?"

According to Defendants, "[a] shelter is a practically-available space for persons who are unhoused to go on a given day that would enable a city . . . to enforce its anti-camping, sit/lie, and so forth ordinances." Transcript July 2, 2021, ECF No. 106, at 5:18-22. That definition does not pass the straight face test. Calling a plot of land a shelter does not make it so.[3]

So we turn to the dictionaries. Merriam-Webster defines shelter as:

> 1:   a:  something that covers or affords protection
>
> //a bomb shelter
>
> b:  an establishment providing food and shelter (as to the homeless)
>
> c:  an establishment that houses and feeds stray or unwanted animals
>
> 2:   a position or the state of being covered and protected
>
> //took shelter

*Shelter*, *Mirriam-Webster*, https://www.merriam-webster.com/dictionary/shelter (last visited July 8, 2021). In the Cambridge English dictionary, shelter is "(a building designed to give) protection from bad weather, danger, or attack." *Shelter*, *Cambridge Dictionary*, https://dictionary.cambridge.org/dictionary/english/shelter (last visited July 8, 2021). And Black's Law Dictionary defines "shelter" as "[a] place of refuge providing safety from danger, attack, or observation." *Shelter, Black's Law Dictionary* (11th ed. 2019).

///

---

[3] To the extent Defendants instead tried to argue at the July 2 hearing that the airport site is a designated place individuals can rest within the city limits, that argument also fails. If Defendants want to exempt particular "spaces" from criminal enforcement, they need to codify those spaces into their rules, paying particular attention to what Martin may require. It is unlikely that designating an airport tarmac as the one place in the city where individuals may rest without being criminally prosecuted would be a viable argument under Martin. Regardless, Chico defines "camp facilities" to include "temporary shelters," Cal. Mun. Code § 9.20.020(B), which seems to mean that it is still illegal for individuals to frequent the airport site, regardless of whether the City invites them.

Even Martin, which does not directly answer this question, seems to contemplate shelter will offer individuals a place to sleep "indoors." 920 F.3d at 617.

Under none of these definitions is the airport site a "shelter." It is an asphalt tarmac with no roof and no walls, no water and no electricity. It is an open space with what amounts to a large umbrella for some shade. It affords no real cover or protection to anyone.

That ends the Court's current inquiry. Since Chico's ordinances prohibit homeless persons from resting on all public property and there is not enough practically-available shelter within the City, Plaintiffs have shown a likelihood of success under Martin, such that the City cannot resort to arresting people or imposing criminal penalties like fines on homeless persons in violation.[4]

Given the likelihood of success on the merits, Plaintiffs have also shown a likelihood of irreparable harm in the form of the potential violation of their constitutional rights. The City's interest in enforcing its health and safety ordinances is not strong enough to outweigh Plaintiffs interests when balancing the equities and, given the strong showing that Plaintiffs made on the likelihood of success and irreparable harm, the public interest also tips in their favor. Nothing in this Court's decision prevents the enforcement of laws that do not criminalize the status of being homeless — e.g., public intoxication laws, destruction of public property, etc. As such preliminary injunctive relief is appropriate.

///

---

[4] As straight-forward as the Martin analysis plays out in application of the law to the facts of this case, the Court understands the practical ramifications for the community are much more complex. Indeed, the concerns raised in the dissent from the denial of rehearing en banc appear to have come to fruition in Chico. See id. 920 F.3d at 594 ("Such a holding leaves cities with a Hobson's choice: They must either undertake an overwhelming financial responsibility to provide housing for or count the number of homeless individuals within their jurisdiction every night, or abandon enforcement of a host of laws regulating public health and safety."); id. at 596 ("I fear that the panel's decision will prohibit local governments from fulfilling their duty to enforce an array of public health and safety laws. Halting enforcement of such laws will potentially wreak havoc on our communities. As we have already begun to witness, our neighborhoods will soon feature '[t]ents ... equipped with mini refrigerators, cupboards, televisions, and heaters, [that] vie with pedestrian traffic' and 'human waste appearing on sidewalks and at local playgrounds.'") (footnotes and citations omitted). The impact on local governments was a foregone conclusion under Martin.

6

**CONCLUSION**

Accordingly, for the foregoing reasons, Plaintiffs' motion for a preliminary injunction is GRANTED. The TRO already in place is hereby converted to a preliminary injunction on the same terms previously set forth. This injunction shall remain in effect until a judgment is entered in this case or it is lifted by order of this Court.

IT IS SO ORDERED.

DATED: July 8, 2021

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE