# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by and between Plaintiffs Bobby Warren, Andy Lambach, Jonathon Williams, Michael Samuelson, Tracy Miller, Tona Petersen, Carol Beth Thompson and Christa Stevens (collectively, "Plaintiffs"), and Defendants City of Chico and City of Chico Police Department (collectively, "Defendants" or the "City") (Plaintiffs and Defendants are collectively referred to as the "Parties"), based on the following facts and recitals.

## RECITALS

The Parties agree that this Agreement is entered into with reference to the following:

A.    On April 8, 2021, Plaintiffs filed a Complaint seeking injunctive relief and monetary damages, thereby commencing a lawsuit in the United States District Court for the Eastern District of California, entitled *Bobby Warren, et al. v. City of Chico, et al.*, Case No. 2:21-cv-00640-MCE-DMC ("Action"). ECF 1.

B.    On April 11, 2021, Plaintiffs filed a First Amended Complaint ("FAC") seeking injunctive and declaratory relief and monetary damages.  The First Amended Complaint is the operative pleading in this Action. ECF 34.

C.    On April 10, 2021, Plaintiffs filed an Ex Parte Motion for Temporary Restraining Order, seeking a temporary restraining order to enjoin Defendants from:

a.    Enforcing or threatening to enforce the 72-Hour Illegal Encampment Notifications dated April 8, 2021 at 12 p.m. at Comanche Creek Greenway;

b.    Issuing or enforcing any other 72-Hour Illegal Encampment Notifications as to unhoused persons on public property in Chico, California;

c.    Enforcing or threatening to enforce the Chico Municipal Code sections listed in the April 8, 2021 72-Hour Illegal Encampment Notification, which are Municipal Code Sections 12R.04.340, 12.18.430, 9.20.010 through 9.20.060, and 9.50.030.  Enforcement and threat of enforcement of § 9.20.030 (Unlawful Camping) is only restrained on public property. Enforcement and threat of enforcement of § 9.50.030 is limited to §§ 9.50.030 (B)-(E) (Waterways Ordinance – Camping, Staying, Storage of Personal Property, Entering and Remaining);

d.      Enforcing or threatening to enforce California Penal Code § 647(c), which is listed on the April 8, 2021 at 12 p.m. Illegal Encampment Notification; and

e.      Destroying property of unhoused persons seized by Defendants even if Defendants value the property at $100 or less and/or determine it is not of reasonable value. ECF 10.

D.      On April 11, 2021, the United States District Court for the Eastern District ("Court") granted Plaintiffs' Ex Parte Motion for Temporary Restraining Order ("TRO") and set a hearing on Plaintiffs' motion for a preliminary injunction for April 23, 2021. ECF 37.

E.      On April 23, 2021, at a hearing before the Court to determine whether a preliminary injunction should issue, Plaintiffs and Defendants agreed, and the Court ordered, for Plaintiffs and Defendants to meet and confer for the purpose of discussing potential avenues to settle the Action. The TRO was extended until May 14, 2021. The hearing on Plaintiffs' Motion for a Preliminary Injunction was continued until May 14, 2021. ECF 71.

F.      The Parties subsequently stipulated and the Court order extended the TRO through July 2, 2021 and continued Plaintiffs' Motion for Preliminary Injunction to that same date. ECF 80, 84, and 88. The Parties were not then able to reach agreement during settlement discussions.

G.      At a hearing on July 2, 2021, on Plaintiffs' Motion for Preliminary Injunction, the Court extended the TRO until the Court issued a decision on the Motion for Preliminary Injunction. ECF 102. The Parties agreed to have the case referred to a magistrate judge for a settlement conference and the Court referred the case to Magistrate Judge Kendall J. Newman. ECF 103.

H.      On July 8, 2021 the Court granted Plaintiffs' Motion for Preliminary Injunction and ordered the TRO converted to a Preliminary Injunction with the same terms. The Court ordered the Preliminary Injunction shall remain in effect until the Preliminary Injunction is dissolved by the Court or a judgment is entered. ECF 110.

I.      Defendants dispute Plaintiffs' factual allegations and legal contentions made in the Action. Defendants' filed an Answer to the First Amended Complaint on June 9, 2021. ECF 86.

J.      The Parties met for settlement conferences before Magistrate Judge Kendall J. Newman on August 30, 2021, September 10, 2021, September 27, 2021, October 27, 2021, November 15, 2021, December 10, 2021, and December 29, 2021.

K.     For the sole purpose of avoiding protracted litigation, the Parties agree that it is in the Parties' best interests to settle the above-referenced Action, including all claims, complaints and any other requests for judicial relief therein, and based thereon, memorialize their agreement subject to the terms and conditions set forth below.  In entering into this Agreement, Defendants are not admitting any wrongdoing, liability or legal violations on their part and are not conceding the validity of any of Plaintiffs' legal theories or claims.

## **TERMS**

The Parties agree to the following to resolve the Action (and any claims related thereto):

1.     **Recitals.**  The Recitals are incorporated into and made a material part of the terms and representations of this Agreement.

2.     **Stipulated Order Re: Settlement, Dismissal and Continuing Jurisdiction and Effective Date.**  Within three days of full execution of this Agreement, the Parties will file with the Court the "[Proposed] Order re Settlement, Dismissal and Continuing Jurisdiction," attached at Exhibit 1 ("Order").  The Parties' obligations and releases in this Agreement are contingent and shall take effect only upon District Judge Morrison C. England Jr.'s signing and entry of the Order ("Effective Date"). This Agreement shall have a term of five years commencing on the Effective Date and the Order shall expressly incorporate the terms of this Agreement and shall include an express provision for the District Court to retain jurisdiction to enforce the Agreement for five years from the Effective Date. The Order shall provide that the Court shall refer jurisdiction and enforcement of the Agreement to Magistrate Judge Kendall J. Newman.

3.     **Definitions.**  The following definitions used in this Agreement, are hereby incorporated into and made a material part of the terms of this Agreement:

a.     "Anti-Camping Ordinances and Regulations" means the following provisions of the Chico Municipal Code ("C.M.C.") and State law and any analogous provision(s) of local or State laws as applied against Homeless Persons on Public Property:

i.     C.M.C. Chapter 9.20 (CAMPING; §§ 9.20.010 – 9.20.070), including §§ 9.20.020 and 9.20.030 (Citywide Camping Prohibition), § 9.20.050 (Storage of Personal Property in Public Places), and § 9.20.055 (Property Removal);

ii.      C.M.C. § 9.50.030 (B)-(E) (Waterways Ordinance – Camping, Staying, Storage of Personal Property, Entering and Remaining);

iii.     C.M.C. § 12.18.430 (Park Ordinance – Camping);

iv.     C.M.C. § 12.18.450 (Park Ordinance – Closure);

v.      C.M.C. § 12R.04.340 (Park Regulation – Camping);

vi.     C.M.C. § 12R.04.370 (Park Regulation – Closure); and

vii.    California Penal Code § 647(e), which provides it is a misdemeanor to lodge in any building, structure, vehicle, or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it.  The portion of California Penal Code § 647(e) pertaining to lodging in private property shall not fall within this definition.

b.      "City" means City of Chico, City of Chico Police Department and their respective agents, servants, employees and those in active concert or participation.

c.      "Homeless Person" has the same meaning as set forth in 42 U.S.C. § 11302.

d.      "Enforce" and/or "Enforcement" means pursuant to the Anti-Camping Ordinances and Regulations: 1) issuance or the threat of issuance of an administrative or criminal citation to a Homeless Person; 2) arrest or threat of arrest of a Homeless Person; 3) issuance of a notice threatening a citation and/or arrest of a Homeless Person; 4) moving of a Homeless Person and/or their personal property from Public Property; and/or 5) seizing personal property of a Homeless Person.

e.      "Individual Assessment" means Outreach and Engagement Staff meeting with and evaluating a Homeless Person to determine if an Appropriate Shelter Space (as defined in Paragraph 10 of this Agreement) is available to the person.

f.      "Outreach and Engagement Staff" or "O&E Staff" means City employees, excluding Chico Police Department and other law enforcement, City contractors, members of other qualified government agencies, and members of qualified organizations that provide outreach and services to Homeless Persons to provide an Individual Assessment. "O&E Staff" must:

i.      Be or be supervised by a licensed social worker, or other similarly trained

professional;

ii.     Have training and experience working with Homeless Persons;

iii.    Have training and experience providing trauma-informed care and services to Homeless Persons;

iv.     Have training and experience in recognizing when a Homeless Person may have a mental health condition and the ability to sensitively communicate with Homeless Persons with mental health conditions; and training/experience with reasonable accommodation law;

v.      Have the training/experience necessary to conduct Individual Assessments described in Paragraph 3(e) of this Agreement; and

vi. While law enforcement are not O&E Staff and do not conduct Individual Assessments, Chico Police Department or other law enforcement may be present at the general location where O&E Staff are meeting with Homeless Persons but they must remain far enough away from O&E Staff and the Homeless Person to ensure that the Individual Assessment remains private and outside the immediate presence of law enforcement unless O&E staff requests law enforcement's presence due to safety concerns or law enforcement determines that they need to intervene for safety reasons.

g.      "Public Property" means any publicly owned property in the City, including but not limited to, a public park, public street, alley, lane, public right-of-way, or any public parking lot or public area whether improved or unimproved, located within the City.

4.      **Construction of the Chico Emergency Non-Congregate Housing Site.**  The City will construct, or cause to be constructed, the Chico Emergency Non-Congregate Housing Site ("Housing Site") at 2352 Martin Luther King Jr. Parkway, Chico, California. The Housing Site may be operated by the City and/or any contractor the City selects.  The City shall provide, or cause to be provided, the following at the Housing Site:

a.      **Emergency Pallet Shelters:**

i.      At least fifty (50), but no more than 177 Emergency Pallet Shelters ("Pallet Shelters").

ii.     The Pallet Shelter interior floor area shall not be less than 64 square feet (6.5 m²) for two occupants. Where more than two persons will occupy a Pallet Shelter, the required floor

area shall be increased at the rate of 50 square feet (4.65 m²) for each occupant in excess of two. The interior floor area shall not exceed 400 square feet (37 m²), excluding lofts.

iii.      Each occupied Pallet Shelter must include a privacy lock on each entrance door and all windows, a continuous source of electricity with at least one interior lighting fixture, electrical heating and air conditioning equipment, at least one smoke and carbon monoxide alarm, and at least one GFCI-protected outlet for use by the occupant.

iv.      The Pallet Shelters shall be organized in pod communities of approximately 50 Pallet Shelters per pod. Each pod shall be separated from the other pods by space or actual barriers to facilitate the feeling of smaller communities within the Housing Site. The City may choose to designate pods for certain populations of Homeless Persons. For example, the City may designate a pod as women-only. Each pod shall have the appropriate number of potable water stations, toilets, handwashing stations, bathing facilities, and waste receptacles per Paragraphs 4(b) and (d) of this Agreement.

v.      Each occupied Pallet Shelter shall be designated by address numbers, letters, or other suitable means of identification. The identification shall be in a conspicuous location facing the street or driveway fronting the building or structure. Each identification character shall be not less than 4 inches (102 mm) in height and not less than 0.5 inch (12.7 mm) in width, installed/painted on a contrasting background.

vi.      Each Pallet Shelter shall be provided with at least two forms of egress placed remotely from each other. One form of egress may be an egress window. The bottom of the clear opening of the egress window shall not be more than 44 inches (1118 mm) above the floor. The egress window shall have a minimum net clear opening height of 24 inches (610 mm), and a minimum net clear opening width of 20 inches (508 mm). The egress window shall have a minimum net clear opening area of 5 square feet (0.465 m2).

vii.      Occupants of the Housing Site will not be required to share a Pallet Shelter with another person. However, when a Pallet Shelter has two beds, an occupant may choose to share a Pallet Shelter with a spouse, partner, family member and/or friend who is also a Homeless Person, if both occupants desire to share a Pallet Shelter. An occupant may also

share the Pallet Shelter with a caregiver if the occupant requires a live-in caregiver due to a disability.

b.     **Toilets, Handwashing and Bathing Facilities:**

i.      At least two (2) handwashing stations for every fifty (50) occupants at the Housing Site.

ii.     At least three (3) toilets for every fifty (50) occupants at the Housing Site.

iii.    Shower/bathing facilities, which may be mobile shower/bathing facilities, and which allow for each occupant of the Housing Site to shower at least once a week. There shall also be facilities with hot running water on site every day that are sufficient for other bodily cleaning needs, such as wound care or other conditions that may arise between weekly showers, and/or for occupants who must bathe more regularly than once a week.

iv.     The City must provide, or cause to be provided, additional toilets, handwashing stations, and shower/bathing facilities if the above ratios of toilets, handwashing stations, and shower/bathing facilities are not sufficient to process the volume of sewage and wastewater, while maintaining sanitary conditions for occupants of the Housing Site.

c.     **Potable Drinking Water:** Potable drinking water shall be provided for all occupants of the Housing Site.

d.     **Garbage, Waste, and Rubbish Disposal:** Covered receptacles shall be provided for all garbage, kitchen waste and rubbish, which shall be deposited by occupants of the Housing Site in those covered receptacles.  Those covered receptacles shall be emptied when filled and the contents shall be disposed of in a sanitary manner.

e.     **Laundry Services:**  Laundry services shall be provided in such a manner that allows each occupant to do at least one load of laundry per week.

f.      **Meals and Kitchen Areas:** One meal per day for all occupants of the Housing Site through a prepared meal service.  Two additional meals per day, shall consist of offering *a la carte* food items to occupants, such as light pastries and snacks for breakfast and sandwiches and snacks for lunch. Occupants shall also have access to hot water and microwaves for preparing food.

g.     **Hospitality Tents and Common Areas:** At least one 30-foot by 60-foot shade tent that is available for a common area. Tables and seating will be provided within the shade tent.

h.     **Private Meeting Space for Service Providers:** The Housing Site will provide indoor private meeting space to allow service providers private meeting space with occupants.

i.     **Designated Smoking Area:** The Housing Site shall allow smoking in a designated smoking area.

j.     **Bike Parking:** Each occupant shall be allowed to store one bike and one bike trailer on site. The City and/or the Housing Site Operator may set reasonable limits on the size of allowed bike trailers if needed due to space limitations.

k.     **Pet Run Area:** The Housing Site shall allow occupants to have a reasonable number of pets, and shall provide a secure pet run area.

l.     **Personal Property Storage:** The Housing Site occupants may reasonably store their possessions within their individual Pallet Shelter in any way that does not alter or attach to the Pallet Shelter structure and does not create an active or potential health and safety hazard.

m.     **Outdoor lighting:** The Housing Site shall include sufficient outdoor lighting for occupants to safely travel throughout the Housing Site at any time of day or night.

5.     **Maintenance of the Chico Non-Congregate Emergency Housing Site:** It is the City's responsibility to ensure the Housing Site, including all toilets, bathing facilities, and common areas, shall be maintained in a safe and sanitary condition, and reasonably free from vermin, vectors and other matter of an infectious or contagious nature. The grounds within the Housing Site shall be kept reasonably clean and free from accumulation of debris, filth, garbage and deleterious matter.

6.     **Operation of the Chico Non-Congregate Emergency Housing Site.**   The City will develop and/or require the Housing Site operator contracted by the City to develop written policies that identify the Housing Site's rules, admissions policies, grievance procedure, reasonable accommodation process, and expulsion procedures.  The Parties shall meet and confer and try to reach agreement on all of the Housing Site's written procedures and policies within 30 days of the effective date of this Agreement and at least fourteen (14) days before the Housing Site opens, whichever is earlier. If the Parties are unable to reach agreement, then they shall submit this dispute for resolution to the dispute

resolution process outlined in Paragraph 16 of this Agreement.  The Housing Site's written policies shall comport with all of the following and all other sections of this Agreement:

a.      The City and/or Housing Site Operator may have a preference for admission for Homeless Persons who reside in the City. If such a preference is implemented, Homeless Persons shall only be subject to reasonable requirements to demonstrate residency.  Homeless Persons cannot be denied admission to the Housing Site on the basis that Pallet Shelters are reserved for other Homeless Persons who have been or will be subject to Enforcement efforts by the City or referrals by the City or third parties with one exception. That exception is that the City may reserve, or cause to be reserved, the number of Pallet Shelters needed to provide shelter to the number of Homeless Persons identified in any notice served on Plaintiffs' Counsel pursuant to Paragraph 10(c) and/or (d) of this Agreement until such Enforcement has concluded.

b.      The Housing Site shall be Low-Barrier, which means the admissions and eligibility policies will prioritize admitting people directly from living outside and shall not include admission barriers such as: sobriety requirements, drug testing, credit checks, and/or identification requirements. Criminal background checks shall only be performed and considered for the purpose of admission to the Housing Site when required by law.

c.      The Housing Site shall be open 24 hours per day, seven days per week and occupants may remain at the Housing Site at all times.

d.      The Housing Site shall not have a limit on the amount of time an occupant may stay at the site.

e.      The Housing Site rules as to expulsion from the site shall only apply to occupants' behavior within the site, such as behavior that puts the health and safety of staff and occupants at risk.

f.      Occupants shall not be required to participate in any programs or services as a condition of admission or remaining at the Housing Site. The City and/or the Housing Site operator may provide voluntary programs on site.

g.      Sobriety shall not be required for occupant admission and to remain at the Housing Site.

h.      On-site possession and/or use of controlled substances that are illegal under California law may be prohibited.

i.      Anyone who is denied admission to reside in the Housing Site shall receive a written notice stating the reason for denial and the grievance procedure for challenging the denial.

j.      When the City or Housing Site operator believes there is grounds to expel an occupant, the City and/or Housing Site operator must provide, or cause to be provided written notice and an opportunity to cure the alleged conduct, unless the conduct is so extreme that it has put or likely will put other occupants or staff at immediate physical harm and the risk cannot be reasonably mitigated.

k.      The City shall ensure, or cause to be ensured, that all occupants of the Housing Site are offered voluntary case management to provide assistance with securing permanent housing, employment and income benefits, health care (both physical and mental), treatment for substance use, assistance with legal issues and transportation.

7.      **Notice of Opening Date for Chico Non-Congregate Emergency Housing Site**. The City or any of its contractors or agents may only start admitting occupants to the Housing Site once it meets all of the requirements of Paragraphs 4, 5, and 6 of this Agreement. At least 5 business days before the Housing Site opens, the City shall notify Plaintiffs' counsel and the Butte County Continuum of Care of the opening date. The City shall also offer Plaintiffs' Counsel the opportunity to tour the Housing Site before it opens.

8.      **Reservation of Pallet Shelters for Plaintiffs.**  Each Plaintiff shall be offered a Pallet Shelter at the Housing Site, and the City must reserve, or cause to be reserved, eight Pallet Shelters for Plaintiffs for two months after the date the Housing Site opens. Plaintiffs may accept a Pallet Shelter and move into the Pallet Shelter upon the Housing Site opening and for two months from that date.

9.      **Enforcement of Anti-Camping Ordinances and Regulations.**  The City shall not require a

Homeless Person to relocate from Public Property and/or Enforce its Anti-Camping Ordinances and Regulations until the Housing Site is open and available to admit Homeless Persons. Once the Housing Site is open, the City may only require Homeless Persons to relocate from Public Property and Enforce the Anti-Camping Ordinances and Regulations in accordance with the terms of this Agreement.

10. **Notice and Individual Assessment Prior to Enforcement of Anti-Camping Ordinances and Regulations.** Any requirement that a Homeless Person relocate themselves or their personal property from Public Property and/or Enforcement of the Anti-Camping Ordinances and Regulations against a Homeless Person will be preceded by notice to Plaintiffs' counsel, contacts with Outreach and Engagement Staff, and an Individual Assessment as follows:

   a. Unless otherwise agreed to by the Parties or pursuant to a decision as part of the dispute resolution procedure outlined in Paragraph 16 of this Agreement, the Torres Community Shelter (Torres Shelter) and the Housing Site are the only shelter locations that can be counted to determine if there are sufficient shelter beds for the City to begin Enforcement in accordance with the terms of this Agreement. The Torres Shelter is a congregate shelter located at 101 Silver Dollar Way, Chico, CA 95928. The Parties' understanding of the Torres Shelter as of the time of signing this agreement is as follows: The Torres Shelter is a year-round congregate shelter that allows occupants to remain at the site 24 hours per day, 7 days per week. The Torres Shelter is available to men and women who are homeless, does not require participation in a religious or other program as a prerequisite to admission or to remain at the shelter, and allows one service or companion animal per person. The Torres Shelter provides three meals a day, and shower and laundry facilities to occupants. Occupants sleep in bunk beds in a dormitory. There is one dormitory for women and one for men. The Torres Shelter also provides sleeping accommodations on mats.

   b. The City must count, or cause to be counted, the number of Homeless Persons staying on the designated Public Property it wishes to relocate Homeless Persons from and/or Enforce the Anti-Camping Ordinances and Regulations, and confirm that, prior to the actions below, there are at least the same number of Pallet Shelters available at the Housing Site and/or beds available at the Torres Shelter. The City may not count spaces on a mat at the Torres Shelter as

available. The City may only count, or cause to be counted, one available bed per unoccupied Pallet Shelter at the Housing Site.  However, whenever the number of Homeless Persons at the designated Public Property subject to relocation and/or Enforcement exceeds the number of unoccupied Pallet Shelters, the City may count an unoccupied bed in a Pallet Shelter provided that the City has a reasonable basis to believe that Homeless Person(s) in question would voluntarily agree to reside together in the particular Pallet Shelter. The City may not require a Homeless Person to share a Pallet Shelter with another Homeless Person. Plaintiffs reserve the right to dispute that there is enough shelter to begin relocation and/or Enforcement, including when the City counts beds in occupied Pallet Shelters.

c.       Upon conducting the count of Homeless Persons and confirming there are sufficient open Pallet Shelters at the Housing Site and beds at the Torres Shelter to accommodate all of the Homeless Persons on the designated Public Property, the City shall provide written notice to Plaintiffs' counsel at least 7 days prior to issuing the notices required to Homeless Persons in Paragraph 10(f) of this Agreement. The notice to Plaintiffs' Counsel shall state: 1) the exact location of Public Property of the planned Enforcement; 2) the number of Homeless Persons the City determined are currently residing at that location; 3) the date the City plans to provide the notices required in Paragraph 10(f); 3) the number of open Pallet Shelters at the Housing Site and the number of open shelter beds at the Torres Shelter by gender (if the Pallet Shelters and/or beds are restricted to a particular gender and the Torres Shelter is able to provide such information with respect to its beds); and 4) the name, phone number, and email of a contact at both shelter sites that Plaintiffs' counsel can contact to verify the shelter information.  Plaintiffs' counsel shall keep this notice and its contents confidential, but are not precluded from investigating the information in the notice.  If Plaintiffs' counsel dispute within 7 days of receiving the notice that there are sufficient open Pallet Shelters and beds for the City to begin the planned Enforcement, Plaintiffs' counsel shall initiate the dispute resolution process in Paragraph 16 of this Agreement. The City must stay Enforcement at the designated location until the dispute resolution process concludes.

d.       When the City serves a notice on Plaintiffs' Counsel pursuant to Paragraph 10(c) of this

Agreement, and the notice designates a Public Property with 5 or fewer Homeless Persons, the City may serve the notice three business days prior to issuing the notices required to Homeless Persons in Paragraph 10(f) of this Agreement.

e.       The City may only serve Plaintiffs' Counsel one notice pursuant to Paragraphs 10 (c) and/or (d) of this Agreement at a time, and cannot serve a subsequent notice until all of the time periods for all notices required by Paragraph 10 of this Agreement have expired.  The City may include up to three Public Properties within a single notice so long as the total number of Homeless Persons at multiple locations does not exceed fifty (50).  If a single Public Property is identified in a notice, there shall be no limit on the number of Homeless Persons who may be subject to relocation.

f.       The City must then provide, or cause to be provided, a notice to all Homeless Persons staying on the designated Public Property the City wishes to close and/or Enforce its Anti-Camping Ordinances and Regulations at least 7 days before the City issues, or causes to be issued, a 72-hour Illegal Encampment Notification or takes any other action to Enforce its Anti-Camping Ordinances and Regulations.  This notice must explain the Individual Assessment process.  The notice shall state the Homeless Persons may contact Legal Service of Northern California at 530-345-9491, chico-office@lsnc.net, or 541 Normal Ave, Chico, California 95928 for information about their legal rights during this process.

g.       The O&E Staff must meet with all Homeless Persons at the Public Property noticed for Enforcement to conduct an Individual Assessment and provide written notice to the Homeless Person of the outcome of the Individual Assessment. The Individual Assessment must occur when or after notice required in Paragraph 10(f) is issued, and at least prior to the date the City issues, or causes to be issued, a 72-hour Illegal Encampment Notification or takes any other action to Enforce its Anti-Camping Ordinances and Regulations as to that person. O&E Staff may provide Homeless Persons information about, and referrals to, any permanent, transitional, and emergency housing space available, and make voluntary referrals to such housing. However, if the Homeless Person declines any of the above, the O&E must assess whether an open Pallet Shelter at the Housing Site or bed at the Torres Shelter is an Appropriate Shelter Space, as defined in Paragraph 10(h) of this Agreement, for the individual.

h. A Pallet Shelter at the Housing Site and/or a bed at the Torres Shelter is not an "Appropriate Shelter Space" for an individual when:

i. The shelter cannot accommodate the person's physical and/or mental disabilities;

ii. The shelter's hours and/or other policies unreasonably impair or otherwise unreasonably hinder a person's ability to work, engage in other income generating activities, and/or attend school;

iii. In the case of a family unit, the family would have to be involuntarily separated into two or more different rooms or units, but a family unit may voluntarily accept such an arrangement;

iv. The individual would be disqualified from accessing the shelter space due to any restrictions, rules or covenants beyond their reasonable use or control, such as having a pet that the shelter does not allow;

v. The shelter space requires mandatory participation in a religious or other program as a prerequisite to access or use the shelter space;

vi. The shelter space only offers a mat, and not a bed for sleeping; or

vii. The shelter space cannot provide the appropriate single-gender placement for someone who reasonably objects to mixed-gender placement.

i. The following procedures apply to Individual Assessments:

i. It shall be conducted at the then-current location of the Homeless Person, or any other location convenient for the Homeless Person.

ii. Chico Police Department or other law enforcement may be present at the general location where O&E Staff are meeting with Homeless Persons but they must remain far enough away from O&E Staff and Homeless Persons to ensure that the Individual Assessment remains private and outside the immediate presence of law enforcement unless O&E staff requests law enforcement's presence due to safety concerns or law enforcement determines that they need to intervene for safety reasons.

iii. O&E Staff must meet with the Homeless Person more than once to complete the Individual Assessment, if necessary.

iv. The Homeless Person may have one advocate or representative attend the Individual Assessment.

v. O&E Staff must document all attempts to meet with a Homeless Person during the 7-day O&E process. If O&E Staff documents that it was at the Homeless Person's location at least

five days during the 7-day O&E period and made a good faith attempt each day to conduct an Individual Assessment of that person, O&E Staff does not need to make any further attempts to conduct an Individual Assessment for that person. O&E Staff must leave a notice on the Homeless Person's property or in the area the person is known to stay that 1) it attempted to contact the Homeless Person, 2) provides the dates and times of the attempted contacts, 3) informs that Homeless Person they can still get an Individual Assessment by contacting O&E Staff, and 4) provides how to contact O&E Staff.

j.      If O&E Staff determines there is an Appropriate Shelter Space at Torres Shelter or the Housing Site for the Homeless Person, O&E Staff will provide the homeless person written notice of the Appropriate Shelter Space.

k.      If the Homeless Person accepts the Appropriate Shelter Space at the Torres Shelter or Housing Site, the O&E Staff will provide or arrange for transportation to the placement, if needed.

l.      If the Homeless Person declines the Appropriate Shelter Space offered, the City may issue a 72-hour Illegal Encampment Notification upon the expiration of the 7-day notice required in Paragraph 10 (f). If the individual relocates within the 72 hours, then they will not be cited or arrested for violating the Anti-Camping Ordinances and Regulations.  If the individual fails to relocate, then the individual may be issued a citation or, subject to this Agreement, placed under custodial arrest for the violation.

m.      If the O&E Staff determine through the Individual Assessment that there is not an Appropriate Shelter Space for a Homeless Person, the City may not Enforce its Anti-Camping Ordinances and Regulations against the Homeless Person. The City may provide, or cause to be provided, to the Homeless Person a list of at least three Public Property locations where the City will not Enforce its Anti-Camping Ordinances and Regulations for at least 60 days and may require the Homeless Person to relocate to one of those three sites. When the City provides the Homeless Person with the list of Public Property locations, the notice must also state the person may contact Legal Services of Northern California at 530-345-9491, chico-office@lsnc.net, or 541 Normal Ave, Chico, California 95928 for information about their legal rights during this process.  The three sites must be within a half mile of public transportation and food services. The City must provide or arrange, or cause to be provided or arranged, for transportation to the new site for the Homeless Person and their personal belongings, if requested by the Homeless

Person. The City may only require a Homeless Person who O&E Staff has determined there is not an Appropriate Shelter Space at Torres and/or the Housing Site to relocate under this process two times during a 12-month period.

n.      The City must keep, or cause to be kept, all notices issued under this process and, only upon request by a Homeless Person, must provide, or cause to be provided, information about the Individual Assessment to the Homeless Person or any representative of the Homeless Person with the Homeless Person's permission.

o.      The Parties shall meet and confer and try to reach agreement on the language of all notices required in Paragraph 10 of this Agreement within 30 days of the effective date of this Agreement and at least fourteen (14) days before the Housing site opens, whichever is earlier. If the Parties are unable to reach agreement, they shall submit the dispute for resolution to the dispute resolution process outlined in Paragraph 16 of this Agreement.

11. **Seizure and Storage of Personal Property**.

a.      SEIZURE OF PERSONAL PROPERTY

i.   Except as specified below in Paragraphs 11(c) and (d), Defendants shall not initiate the process of providing notice and seizing personal property that is being stored on public property in violation of applicable City ordinance(s) when the personal property has been continuously present in that location for less than 24 hours.

ii.  Except as specified below in Paragraphs 11(c) and (d), Defendants shall not seize any personal property that is attended, unattended, or believed to be abandoned on public property in violation of applicable City ordinance(s) without first providing a written pre-removal notice at least 72 hours in advance of the seizure that is posted prominently at the location of the personal property, and if possible, provided to the apparent owner of the personal property.

A.      The pre-removal notice shall provide:

1)      A general description of the personal property to be removed;

2)      A description of the geographic location or area that is sufficient for a reasonable person to understand the location or area within which personal property will be subject to removal;

3) The date and time the notice was posted;

4) A statement that the personal property has been stored on public property in violation of the applicable City ordinance(s) with citations to those ordinances;

5) A statement that the personal property may be relocated or stored if not removed from public property within 72 hours;

6) The address where removed personal property will be stored;

7) A telephone number through which a person may receive information as to stored personal property;

8) The daily schedule when a person may retrieve their personal property;

9) A statement that stored personal property may be destroyed if not claimed within ninety (90) calendar days after storage; and

10) A statement that property determined to be an imminent threat to health and safety may be destroyed.

iii. If Defendants seize personal property following the expiration of the 72-hour period in the pre-removal notice, they shall prominently post and, if possible, provide to the apparent property owner a written notice of removal and storage either at the exact location from which the personal property was removed or as close as possible to that location.

A. The removal and storage notice shall provide:

1) A general description of the personal property removed;

2) The date and approximate time the personal property was removed;

3) A statement that the personal property has been stored on public property in violation of the applicable City ordinance(s) with citations to those ordinances;

4) The address where removed personal property will be stored;

5) A telephone number through which a person may receive information as to stored personal property;

6) The daily schedule when a person may retrieve their personal property;

7) A statement that stored personal property may be destroyed if not claimed within ninety (90) calendar days after storage; and

8)      A statement that property determined to be an imminent threat to health and safety may be destroyed.

b.      STORAGE OF PERSONAL PROPERTY

i.   Except as specified below in Paragraphs 11(c) and (d), Defendants shall not destroy seized personal property, regardless of its value, without first storing the property at a secure location designated by Defendants and for a period of no less than ninety (90) calendar days.

ii.   Seized property shall be stored in a facility that clearly catalogues and stores the property based on the name and identification of the property owner, if known by Defendants, and also by a general description of the personal property, the location from which the personal property was seized, and a reasonable estimate of value for the personal property.

iii.  Seized property shall be stored in a facility from which property is available to be retrieved in person during regular business hours.

iv.  Seized property shall be released on request of the property owner. Alternatively, if the identification of the property owner is unknown to Defendants, the person who claims ownership of the seized property must identify the property and the approximate location from which it was seized.

v.   All medication, medical equipment, and uncontaminated tents, sleeping bags, and blankets seized by the City must be accessible within one business day of seizure.

vi.  No fee shall be charged for the temporary storage of items or for retrieval of items.

c.      RELOCATION OF PERSONAL PROPERTY

i.   Defendants may relocate, but not remove and store, personal property stored on public property in the following circumstances without prior written notice:

A.      Personal property that substantially obstructs or prevents Defendants' performance of construction, maintenance, repair, or landscaping operations on Public Property, including structures, streets, sidewalks, parking lots, parks, and open spaces; and

B.      Personal property obstructing any operational and useable entrance, exit,

driveway, or loading dock.

ii.   When Defendants relocate personal property without prior written notice in the circumstances described above, they shall prominently post and date a "Personal Property Relocation Notice" either at the exact location from which the personal property was relocated or as close as possible to that location and prominently post a copy of that notice at the new location of the personal property. The notice shall provide the following information:

    A.    A general description of the relocated personal property;

    B.    The date and approximate time the personal property was relocated;

    C.    The current location of the personal property;

    D.    A phone number the owner of the personal property may call to request assistance in relocating their personal property if the property's current location may cause a greater hardship to the owner than its prior location due to the owner's disability or disabilities; and

    E.    For personal property relocated due to construction, maintenance, repair, or landscaping operations, the notice shall include a phone number that the personal property owner may call for assistance from Defendants in returning their personal property to its original location.

d.    ITEMS NOT SUBJECT TO RELOCATION, SEIZURE, AND STORAGE PROCEDURES

i.   Personal property may be seized and/or destroyed without being subject to the above relocation, removal, and storage procedures under any of the following circumstances:

    A.    The property presents a health or safety risk, such as toxic sharps, chemicals, and bedding or clothing that is soiled by infectious materials, human waste, body fluids, mold or mildew;

    B.    The property is infested by rodents or insects;

    C.    The property is evidence of a crime, or is contraband; or

    D.    The property owner confirms in writing that they are abandoning the property.

ii.   Trash, garbage, and/or debris may be destroyed and are not subject to the above relocation, seizure, and storage procedures.

e.    DOCUMENTATION

i.    The City must document and maintain, or cause to be documented and maintained, records of compliance with the terms and conditions of Paragraph 11 of this Agreement.

12.   **Public Sanitary Facilities**. The City shall not close or fence off any public bathrooms, toilets, and sinks located on Public Property so as to make such public facilities unavailable to Homeless Persons, except that such facilities may be closed temporarily for maintenance or repairs. Such closure shall only be for the time needed for the applicable maintenance or repairs. If such facilities are closed due to damage and the cost of repair is too costly for the City to repair and reopen, the City may provide mobile toilets and handwashing stations in lieu of making such repairs in the same quantity as the closed facilities and in the same general location.   The City shall not cause water to be cut off to any water fountain located on Public Property, or restrict access to such water fountains so as to make them unavailable to Homeless Persons, unless and only for the time required for maintenance and repairs.  It is the Parties' understanding that the City has not closed public sanitary facilities for the purpose of making the same unavailable to Homeless Persons, but rather to repair and maintain damaged public sanitary facilities.  The intent of this provision is simply to balance Homeless Persons' interest in keeping public sanitary facilities open against the City's interest in reducing the costs required to maintain and repair the same.

13.   **Dismissals of Citations and Charges related to Homelessness against Plaintiffs**. Within 30 days of the Effective Date of this Agreement, the City shall file a request for dismissal and/or take any other appropriate action to dismiss all administrative and criminal citations, charges, and cases against Plaintiffs that relate to Plaintiffs' status as a homeless individual. The City shall take all action needed, but only to the extent it is able, to dismiss the citations, charges, cases, and remove any warrants and fines, whether owed to the City, the Superior Court of California, Butte County, Butte County Central Collections, or any other agency or entity related to the citation or charges. The cases subject to this paragraph include:

a.     Bobby Warren (case nos. 18CI03014, 18TR04448, 18CI06895,19CI00183, 19CI06356,

and 20CI02971);

b.     Christa Stevens (case nos. 18TR02787, 19CI06410, and 19CI06426);

c.     Michael Samuelson (case nos. NT239654 (2013), NT238935 (2013), NT238269 (2013), NT237637 (2013), NT230336 (2013), 18TR02923, and 19CI06360); and

d.     Carol Beth Thompson (Case Nos. 18CI05620 and 17TR10367, and citation (AKA Chico Police Department Notice to Appear) number 300659 issued on December 28, 2021).

e.     If Plaintiffs discover any additional administrative and/or criminal citations, charges, and cases that should be dismissed pursuant to this Paragraph, Plaintiffs' Counsel shall notify the City of the additional cases and request dismissal. The City's failure to dismiss any administrative and/or criminal citations, charges, and cases relating to Plaintiffs' status as a homeless person that are not specifically identified here or subsequently identified shall not constitute a breach of this Agreement.

14.     **Damages.** The City shall pay Plaintiffs a total of $12,000, comprising payment for Plaintiffs' claims for damages.  Within 30 days of the Effective Date of this Agreement, the City shall deliver, or cause to be delivered, a check for $12,000 payable to Legal Services of Northern California, at Legal Services of Northern California, 541 Normal Avenue, Chico, CA 95928.

15.     **Attorneys' Fees and Costs.** The City shall pay Plaintiffs' counsel a total of $650,000, comprising payment for Plaintiffs' claims for attorneys' fees and costs.  Within 30 days of the Effective Date of this Agreement, the City shall deliver, or cause to be delivered, a check for $650,000 payable to Legal Services of Northern California, at Legal Services of Northern California, 541 Normal Avenue, Chico, CA 95928.  This payment of $650,000 does not apply to any additional fees and costs that might be subsequently awarded to Plaintiffs' counsel pursuant to Paragraph 16(g) below.

16.     **Dispute Resolution.**  Magistrate Judge Kendall J. Newman ("Judge Newman") will retain jurisdiction over the Action until five years from the Effective Date for purposes of overseeing implementation, enforcement and/or modification of this Agreement through the dispute resolution process described below. Plaintiffs' counsel may present disputes in the dispute resolution process which not only affect Plaintiffs but any other aggrieved Homeless Person in the City.  The dispute resolution process does not apply to any dispute between Plaintiffs and other Homeless Persons, on the

one hand, and the City, on the other hand, other than alleged violations of the Anti-Camping Ordinances and Regulations and this Agreement.

a.      Should a dispute arise over the implementation, enforcement or modification of the Agreement, the Parties will first attempt to meet and confer informally with the other side to resolve the matter in good faith.  Such attempt will at least involve (a) a communication from the party initiating the dispute to the other side's counsel describing in detail the dispute and the requested remedy and providing any available evidence in relation thereto; and (b) a discussion either in person or by telephone seeking to resolve the dispute.

b.      If the Parties are unable to resolve the dispute, then within five court days after completing the meet and confer process outlined above, the Party initiating the dispute shall request an informal conference before Judge Newman to resolve the matter by contacting Judge Newman's Courtroom Deputy via e-mail.

c.      If the informal conference before Judge Newman does not resolve the dispute, then the Party initiating the dispute may thereafter file a motion to implement, enforce or modify the Agreement in accordance with the standards and processes to be set by Judge Newman, and Judge Newman will have jurisdiction to resolve that dispute.  If the Dispute involves an emergency situation that presents a threat to the immediate health and safety of an individual, the parties may seek expedited review by Judge Newman.

d.      The initiation of the dispute resolution process does not affect the City's right to enforce any laws other than the Anti-Camping Ordinances and Regulations. If a pending dispute brought by Plaintiffs' Counsel involves Plaintiff(s) or other Homeless Person(s), the City agrees that no citation or custodial arrest will subsequently be made for violating an Anti-Camping Ordinance or Regulation arising from an individual's status as a Homeless Person until the dispute resolution process is concluded.  Once the dispute resolution process is concluded regarding an issue, the City is not required to engage in a subsequent dispute resolution process regarding the same issue.

e.      In resolving any dispute, Judge Newman may enforce any rights available to a Party under this Agreement, subject to sufficient notice, opportunity to be heard, briefing, evidence,

and other due process.  Judge Newman may award damages (other than punitive damages), other monetary relief, injunctive relief, declaratory relief or any other relief, if appropriate, to any Party or Homeless Person as a result of any dispute submitted to the dispute resolution process.  Judge Newman shall make the final determination on any motion and no right of appeal shall exist.

f.      Nothing in this Agreement limits the ability of Plaintiffs or other Homeless Persons to seek damages and/or other monetary relief, injunctive relief, declaratory relief or any other type of relief in other proceedings not subject to this Agreement.

g.      Judge Newman will have discretion to award reasonable attorneys' fees and costs against Defendants if Plaintiffs' counsel prevail on any dispute, whether it was resolved by motion or through the informal conference with Judge Newman.  Judge Newman may issue sanctions if a determination is made that Plaintiffs' counsel, Defendants' counsel, or Defendants have not acted in good faith or with substantial justification in bringing or opposing any dispute subject to the dispute resolution process.

h.      If Judge Newman becomes unavailable to resolve disputes during the Court's five-year jurisdiction period, Judge Newman will designate another judge with the Parties' consent to serve in his place. In the event of Judge Newman's replacement, either Plaintiffs or Defendants may determine that they will not agree that the designated judge shall make the final determination on any motions brought to implement, enforce, or modify the Agreement without a right of appeal and Paragraph 16(e) shall be modified accordingly.

17.    **No Guarantee.**  Nothing in this Agreement constitutes a promise, representation, or warranty by City that any number of beds will be available to any particular Homeless Person at any time.

18.    **Release and Covenant Not to Sue by Plaintiffs.**  In consideration for the terms of this Agreement, Plaintiffs Bobby Warren, Andy Lambach, Jonathon Williams, Michael Samuelson, Tracy Miller, Tona Petersen, Carol Beth Thompson, Christa Stevens, and each of them, on their own behalf, (the "Releasing Plaintiffs"), hereby release and forever discharge the City, City of Chico Police Department, as well as their present and former employees, agents, managers, officers, directors,

council members, insurance companies, attorneys, departments, and divisions or affiliated entities, whether previously or hereafter affiliated in any manner (the "Released City Parties"), from and against any and all claims, demands, causes of action, obligations, damages, attorneys' fees and costs, and liabilities, arising from or relating to the events detailed in the lawsuit of any nature whatsoever, whether or not now known, suspected, or claimed, which the Releasing Plaintiffs, and/or any of them, have, or ever may claim to have, as against the Released City Parties, or any of them, whether directly or indirectly, relating to or arising out of (a) the Action, (b) any claims raised in, or that could have been raised in, the Action, (c) the availability of the Housing Site, Pallet Shelters, beds, and/or other homeless accommodations, (d) the City's alleged obligation to provide and/or fund such accommodations, and/or (e) the City's alleged inability to Enforce any of the Anti-Camping Ordinances and Regulations (including, without limitation, to any law that the Releasing Plaintiffs claim criminalizes a person's homeless status), against any person because of his or her homeless status (the "Released Plaintiff Claims").

a.     The release set forth above is a release of ALL claims, demands, causes of action, obligations, damages, and liabilities, of any nature whatsoever, and is intended to encompass all known and unknown, foreseen and unforeseen, claims that are possessed by the Releasing Plaintiffs and within the scope of the Released Plaintiff Claims based solely and only on the events giving rise to this Action.  To effectuate the intent of the Parties, the Releasing Plaintiffs expressly agree to waive and relinquish all rights and benefits they may have under California Civil Code section 1542, which reads as follows:

SECTION 1542.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

b.     The Releasing Plaintiffs, and each of them, warrant that they have made no assignment, and will make no assignment, of any claim, chose in action, right of action, or any right, of any

kind whatsoever, within the scope of the Released Plaintiff Claims, and that, as far as they know, no other person or entity of any kind had or has any interest in any of the demands, obligations, actions, causes of action, debts, liabilities, rights, contracts, damages, attorneys' fees, costs, expenses, losses, or claims within the scope of the Released Plaintiff Claims.

19.     **Release and Covenant Not to Sue by Defendants.**  In consideration for the terms of this Agreement, Defendants City, City of Chico Police Department, and each of them, on their own behalf, (the "Releasing Defendants"), hereby release and forever discharge Plaintiffs Bobby Warren, Andy Lambach, Jonathon Williams, Michael Samuelson, Tracy Miller, Tona Petersen, Carol Beth Thompson and Christa Stevens, their respective heirs, family members, executors, administrators, successors, attorneys, agents, representatives, insurance companies and assigns, whether previously or hereafter affiliated in any manner (the "Released Plaintiffs"), from and against any and all claims, demands, causes of action, obligations, damages, attorneys' fees and costs, and liabilities, arising from or relating to the events detailed in the lawsuit of any nature whatsoever, whether or not now known, suspected, or claimed, which the Releasing Defendants, and/or any of them, have, or ever may claim to have, as against the Released Plaintiffs, or any of them, whether directly or indirectly, relating to or arising out of (a) the Action, (b) any claims raised in, or that could have been raised in, the Action, and (c) the availability of the Housing Site, Pallet Shelters, beds, and/or other homeless accommodations, and (d) any prior administrative or criminal citations for violations of C.M.C. §§ 9.20.030, 9.20.050, 9.44.015, 9.44.018, 9.44.010, 9.43.030, 9.50.030 (B)-(E), 12.18.430, 12.18.450, 12R.04.340, and/or 12R.04.370, including:  Butte County Superior Court Case numbers 20CI02971, 19CI06356, 18TR04448, 19CI00183, 18CI06895, 18CI03014, 19CI06426, 19CI06410, 18TR02787, 19CI06360, 18TR02923, NT239654, NT238935, NT238269, NT237637, NT230336, 18CI05620, and 17TR10367 (the "Released Defendant Claims").

a.     The release set forth above is a release of ALL claims, demands, causes of action, obligations, damages, and liabilities, of any nature whatsoever, and is intended to encompass all known and unknown, foreseen and unforeseen, claims that are possessed by the Releasing Defendants and within the scope of the Released Defendant Claims based solely and only on the events giving rise to this Action.  To effectuate the intent of the Parties, the Releasing

Defendants expressly agree to waive and relinquish all rights and benefits they may have under California Civil Code section 1542, which reads as follows:

> SECTION 1542.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

b.      The Releasing Defendants, and each of them, warrant that they have made no assignment, and will make no assignment, of any claim, chose in action, right of action, or any right, of any kind whatsoever, within the scope of the Released Defendant Claims, and that, as far as they know, no other person or entity had or has any interest in any of the demands, obligations, actions, causes of action, debts, liabilities, rights, contracts, damages, attorneys' fees, costs, expenses, losses, or claims within the scope of the Released Defendant Claims. However, the foregoing warranty does not apply to the following cases which have already been referred out to Butte County Central Collections:  Butte County Superior Court Case numbers 20CI02971, 19CI06356, 18TR04448, 19CI00183, 18CI06895, 18CI03014, 19CI06426, 19CI06410, 18TR02787, 19CI06360, 18TR02923, NT239654, NT238935, NT238269, NT237637, NT230336, 18CI05620, and 17TR10367.  Paragraph 13 of this Agreement governs the City's obligations with respect to the resolution of those cases.

20.      **Dismissal of the Action.**  Upon signing by District Judge Morrison C. England, Jr. and entry of the "[Proposed] Order re Settlement, Dismissal and Continuing Jurisdiction," attached as Exhibit 1, this Action shall be dismissed with prejudice.

21.      **Non-Admission of Liability.**  By entering into this Agreement, the City admits no liability, and explicitly denies any liability or wrongdoing of any kind arising out of or relating to any of the claims alleged in the Action.  Nothing herein constitutes an admission by the City as to any interpretation of laws, or as to the merits, validity, or accuracy of any of the claims or legal contentions made in the Action.  The City entered into this Agreement solely to avoid the time, expense, and risk of

continued litigation.  The Parties agree that an express condition of this settlement is that there has been no finding of liability on the merits, and that this settlement and any document related to this settlement, including this Agreement and the Order, and the negotiations leading up to this settlement, are inadmissible in evidence and cannot be used for any purpose in this or any other proceeding except in an action or proceeding to approve, interpret, or enforce the Agreement.

22.   **Knowing and Voluntary.**  This Agreement is an important legal document and, in all respects, has been voluntarily and knowingly executed by the Parties.  The Parties, and each of them, specifically represent that, before signing, and within the time to consider whether to accept this Agreement, they have each carefully read and fully understand all of the provisions of this Agreement, and they are voluntarily, knowingly, and without coercion entering into this Agreement based upon their own judgment.  Plaintiffs, and each of them, further specifically represent that, before signing this Agreement, they have conferred with counsel of their choice to the extent desired concerning the legal effect of this Agreement, and that the legal effect of this Agreement has been adequately explained to them.

23.   **Entire Agreement.**  This Agreement Constitutes the entire agreement between Plaintiffs and the City regarding the matters discussed herein and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between Plaintiffs and the City relating to the subject matter hereof.  Plaintiffs and the City each acknowledge that no representations, inducements, promises, agreements, or warranties, oral or otherwise, have been made by them, or anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance on any such representation, inducement, promise, agreement, or warranty, and that no representation, inducement, promise, agreement, or warranty not contained in this Agreement, including, without limitation, any purported supplements, modifications, waivers, or terminations of this Agreement, are valid or binding, unless executed in writing by all of the Parties to this Agreement.  Any alteration, change, or modification of or to this Agreement must be made by written instrument executed by each of the Parties in order to become effective.

24.   **Warranty of Authority.**  Each individual or entity that executes this Agreement represents and warrants, in his, her, or its personal capacity, that he, she, or it is duly authorized and empowered to

enter into this Agreement on behalf of the party it purports to represent.

25. **Counterparts.** This Agreement may be executed in multiple counterparts, each of which is considered an original but all of which constitute one agreement.

26. **Notices**. Any notice required under this Agreement shall be in writing and shall be delivered by electronic mail. Notices are effective when received. Either Party may change the name or electronic address for receipt of notice by providing such notice to the other Party, without having to amend this Agreement. The Parties shall deliver notices to the following persons and electronic address:

a. **Notice to Plaintiffs**

  i. Sarah Steinheimer
     Legal Services of Northern California
     ssteinheimer@lsnc.net and abattaglia@lsnc.net
     517 12ᵗʰ Street
     Sacramento, CA 95814

  ii. Cory Turner
      Legal Services of Northern California
      cturner@lsnc.net
      541 Normal Avenue
      Chico, CA 95928

b. **Notice to City**

  i. Office of the City Attorney, City of Chico
     Vincent C. Ewing, City Attorney
     vewing@agclawfirm.com
     13181 Crossroads Parkway North
     Suite 400 – West Tower
     City of Industry, CA 91746

  ii. Office of the City Attorney, City of Chico
      Eric G. Salbert, Deputy City Attorney
      esalbert@agclawfirm.com
      18131 Crossroads Parkway North
      Suite 400 – West Tower
      City of Industry, CA 91746

1    IN WITNESS WHEREOF, this Agreement is entered into on January 6, 2022.

2    PLAINTIFFS:                           DEFENDANTS:
     DATED:  January __, 2022              DATED:  January 6, 2022
3                                          CITY OF CHICO AND CITY OF CHICO POLICE
                                           DEPARTMENT
4
5    _____      By: _____
     Bobby Warren                          Mark Orme, City Manager of the City of Chico
6    DATED:  January __, 2022

7
8    _____
     Andy Lambach
9    DATED:  January __, 2022

10
11   _____
     Jonathon Williams
12   DATED:  January __, 2022

13
14   _____
     Michael Samuelson
15   DATED:  January __, 2022

16
17   _____
     Tracy Miller
18   DATED:  January __, 2022

19
20   _____
     Tona Petersen
21   DATED:  January __, 2022

22
23
24   _____
     Carol Beth Thompson
25   DATED:  January __, 2022

26
27   _____
     Christa Stevens
28

                                    29

1    IN WITNESS WHEREOF, this Agreement is entered into on January 6, 2022.

2    PLAINTIFFS:                               DEFENDANTS:

3    DATED:  January 11, 2022             DATED:  January __, 2022
                                              CITY OF CHICO AND CITY OF CHICO POLICE
                                              DEPARTMENT

4    _____         By: _____

5    Bobby Warren                                   Mark Orme, City Manager of the City of Chico

6    DATED:  January 12, 2022

7

8    _____
     Andy Lambach

9    DATED:  January 10, 2022

10

11    _____
     Jonathon Williams

12    DATED:  January 10, 2022

13

14    _____
     Michael Samuelson

15    DATED:  January 10, 2022

16

17    _____
     Tracy Miller

18    DATED:  January 10, 2022

19

20    _____
     Tona Petersen

21

22    DATED:  January 10, 2022

23    _____
     Carol Beth Thompson

24

25    DATED:  January 10, 2022

26

27    _____
     Christa Stevens

28

1  APPROVED AND AGREED AS TO FORM:

2  DATED: January __, 2022                    DATED: January _6_, 2022

3

4

5

6  _____              _____
   Legal Services of Northern California    Alvarez-Glasman & Colvin
7  By: Cory Turner                          By: Vincent C. Ewing
   Sarah J. Steinheimer                     Eric G. Salbert
8  Attorneys for Plaintiffs                 Attorneys for Defendants

9

10 DATED: January __, 2022

11

12

13

14 _____
   Western Center on Law and Poverty
15 By: Robert Newman
   Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

APPROVED AND AGREED AS TO FORM:

DATED:  January __, 2022                              DATED:  January  __, 2022

_____                    _____
Legal Services of Northern California                Alvarez-Glasman & Colvin
By: Cory Turner                                      By: Vincent C. Ewing
Sarah J. Steinheimer                                 Eric G. Salbert
Attorneys for Plaintiffs                             Attorneys for Defendants

DATED:  January 6, 2022

_____
Western Center on Law and Poverty
By: Robert Newman
Attorneys for Plaintiffs

APPROVED AND AGREED AS TO FORM:

DATED:  January 12, 2022                          DATED:  January ___, 2022

_____           _____
Legal Services of Northern California              Alvarez-Glasman & Colvin
By: Cory Turner                                   By: Vincent C. Ewing
Sarah J. Steinheimer                              Eric G. Salbert
Attorneys for Plaintiffs                          Attorneys for Defendants

DATED:  January ___, 2022

_____
Western Center on Law and Poverty
By: Robert Newman
Attorneys for Plaintiffs

# EXHIBIT 1

LEGAL SERVICES OF NORTHERN CALIFORNIA
CORY TURNER, SBN # 285235
E-mail: cturner@lsnc.net
541 Normal Avenue
Chico, CA 95928
Telephone: (530) 345-9491
Fax: (530) 345-6913

SARAH J. STEINHEIMER, SBN # 267552
E-mail: ssteinheimer@lsnc.net
STEPHEN E. GOLDBERG, SBN # 173499
E-mail: sgoldberg@lsnc.net
517 12th Street
Sacramento, CA 95928
Telephone: (916) 551-2150
Fax: (916) 551-2195

Attorneys for Plaintiffs
*Additional counsel continued on next page*

Roger A. Colvin, Esq. (SBN 68773)
Vincent C. Ewing, Esq. (SBN 177708)
Eric G. Salbert, Esq. (SBN 276073)
ALVAREZ-GLASMAN & COLVIN
Attorneys at Law
13181 Crossroads Parkway North, Suite 400
City of Industry, CA  91746
(562) 699-5500 · Facsimile (562) 692-2244
rcolvin@agclawfirm.com; vewing@agclawfirm.com
esalbert@agclawfirm.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| **BOBBY WARREN; ANDY LAMBACH; JONATHON WILLIAMS; MICHAEL SAMUELSON; TRACY MILLER; TONA PETERSEN; CAROL BETH THOMPSON; CHRISTA STEVENS**,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF CHICO; CITY OF CHICO POLICE DEPARTMENT**,<br><br>Defendants. | Case No. 2:21-cv-00640- MCE-DMC<br><br>**[PROPOSED] STIPULATED ORDER RE: SETTLEMENT, DISMISSAL AND CONTINUING JURISDICTION**<br><br>Judge: Hon. Morrison C. England, Jr. |

1

WESTERN CENTER ON LAW & POVERTY
ALEXANDER PRIETO, SBN # 270864
Email: aprieto@wclp.org
ROBERT D. NEWMAN, SBN # 86534
Email: rnewman@wclp.org
RICHARD ROTHSCHILD, SBN # 67356
Email: rrothschild@wclp.org
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
Telephone: (213) 487-7211
Fax: (213) 487-0242

Attorneys for Plaintiffs

2

On April 8, 2021, Plaintiffs Bobby Warren, Andy Lambach, Jonathon Williams, Michael Samuelson, Tracy Miller, Tona Peterson, Carol Beth Thompson, and Christa Stevens (collectively "Plaintiffs") filed the above-captioned lawsuit against the City of Chico and the City of Chico Police Department (collectively "Defendants"). ECF 1. On April 11, 2021, Plaintiffs filed a First Amended Complaint alleging that Defendants unlawfully enforced a citywide web of local laws that imposed criminal penalties on people experiencing unsheltered homelessness when they sleep, sit, lie down, and rest in public in violation of, among other things, the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and California civil rights laws. ECF 34. Defendants have denied all material allegations in the First Amended Complaint. ECF 86.

On April 11, 2021, this Court granted the Temporary Restraining Order restraining and enjoining Defendants from enforcing or threatening to enforce laws regulating camping, entering and remaining, and storing personal property on public property. ECF 37. On July 8, 2021, this Court entered a Preliminary Injunction against Defendants continuing the same terms previously set forth in the Temporary Restraining Order. ECF 110.

Following extensive discussions, the Parties subsequently reached a settlement resolving the disputed claims in this Action. A copy of the fully executed Settlement Agreement ("Settlement Agreement") is attached hereto as Exhibit A, the terms of which are expressly incorporated herein by reference.

The Court hereby expressly retains jurisdiction to resolve any future disputes regarding the interpretation, performance, or enforcement of the Settlement Agreement for a period of five (5) years from the date of dismissal. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994); *Flanagan v. Arnaiz*, 143 F.3d 540, 544 (9th Cir. 1998).

**NOW THEREFORE**, pursuant to Federal Rule of Civil Procedure 41(a)(2), and good cause appearing therefore, the Court HEREBY ORDERS AND DECREES the following:

1. The Court's Preliminary Injunction dated July 8, 2021, is hereby dissolved in its entirety.

2. This Order expressly incorporates all of the terms of the Settlement Agreement, attached as Exhibit A, into this Order, including and expressly, all nonmonetary terms set forth in the Settlement Agreement.

3

STIPULATED ORDER REGARDING SETTLEMENT, DISMISSAL AND CONTINUING JURISDICTION

3.  The Court expressly retains exclusive jurisdiction for a period of five (5) years from the date of entry of this Order to enforce the Settlement Agreement, and refers this matter to Magistrate Judge Kendall J. Newman to resolve any future disputes pursuant to the Dispute Resolution procedures in the Settlement Agreement regarding interpretation, performance, or enforcement of the Settlement Agreement, including and expressly, nonmonetary terms set forth in the Settlement Agreement.

4.  Except as provided otherwise in the Settlement Agreement, each side shall bear their own fees and costs in this Action.

5.  This entire Action is hereby dismissed with prejudice as to all Defendants.

**IT IS SO ORDERED**

DATED: _____          _____
                                         Morrison C. England, Jr.
                                         Senior United States District Judge

**APPROVED AS TO FORM**

Dated: _____          LEGAL SERVICES OF NORTHERN CALIFORNIA


                             By: _____
                                  Sarah J. Steinheimer
                                  Attorneys for Plaintiffs


Dated: _____          WESTERN CENTER ON LAW & POVERTY


                             By: _____
                                  Robert D. Newman
                                  Attorneys for Plaintiffs

4

1    Dated: _____                    ALVAREZ-GLASMAN & COLVIN

2

3                                              By: _____

4                                                  Vincent C. Ewing
                                                   Attorneys for Defendants
5

6

7

8    All parties have authorized the use of their electronic signatures for this document.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            5