1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BOBBY WARREN, et al.,                      No.  2:21-cv-00640-DAD-DMC

12                    Plaintiffs,

13           v.                                   ORDER DENYING DEFENDANTS'
                                                  MOTION FOR RELIEF FROM FINAL
14    CITY OF CHICO, et al.,                      JUDGMENT

15                    Defendants.                 (Doc. Nos. 209, 213)

16

17

18           This matter is before the court on defendants' motion for relief from judgment. (Doc. No.

19    213.)  On September 16, 2024, defendants' motion was taken under submission pursuant to Local

20    Rule 230(g).  (Doc. No. 215.)  For the reasons explained below, the court will deny defendants'

21    motion.

22                                      **BACKGROUND**

23           On April 8, 2021, plaintiffs initiated this civil action alleging that defendants had

24    committed various civil rights violations.  (Doc. No. 1.)  On April 11, 2021, plaintiffs filed their

25    first amended complaint ("FAC") alleging that the City of Chico had passed ordinances

26    criminalizing violations of the city's park regulations, including a city-wide camping prohibition.

27    (Doc. No. 34 at ¶¶ 38–51.)  Plaintiffs were alleged to be involuntarily unhoused residents of

28    Chico, California.  (*Id.* at ¶¶ 11–18.)  Plaintiffs also alleged that the City of Chico had enforced

                                                 1

these ordinances between 2018 and 2020 by making 120 arrests for violations of its citywide anti-camping ordinance.  (*Id.* at ¶ 52.)  Plaintiffs further alleged that enforcement of the ordinances had increased in January 2021.  (*Id.* at ¶ 56.)  On the basis of these ordinances and the enforcement of them, plaintiffs brought nine causes of action:  (1) cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and (2) the prohibition on cruel and unusual punishment contained in Article 7, § 17 California Constitution; (3) denial of due process of law by creating immediate danger to plaintiffs' health and safety in violation of the Fourteenth Amendment to the United States Constitution and (4) violation of substantive due process rights provided by Article I, § 7 of the California Constitution; (5) unlawful seizure of property in violation of the Fourth Amendment to the United States Constitution; (6) denial of due process of law due to the vague and uncertain requirements of the ordinances in violation of the Fourteenth Amendment to the United States Constitution and (7) violation of the right to due process of law provided by Article I, § 7 of the California Constitution; (8) violation of California Civil Code § 52.1; and (9) a request for declaratory relief.  (*Id.* at ¶¶ 178–207.)

On January 13, 2022, the parties stipulated to a joint dismissal of this action with prejudice conditioned on this court retaining jurisdiction over the parties' settlement agreement (the "Settlement Agreement") for a period of five years.  (Doc. No. 150.)  On January 14, 2022, the then-assigned district judge dismissed this action, dissolved the preliminary injunction which was then in effect, retained jurisdiction to enforce the parties' Settlement Agreement for a period of five years, and incorporated the terms of the Settlement Agreement into the court's dismissal order.  (Doc. Nos. 153, 153-1.)

On September 10, 2024, defendants filed a motion for relief from final judgment before the undersigned.[1]  (Doc. No. 213.)  In that motion, defendants request that the Settlement Agreement be modified to "allow all City pre-enforcement and enforcement of Anti-Camping Ordinances and Regulations in accordance with local, state, and federal laws, including the *Grants Pass* decision."  (Doc. No. 213 at 12–13); *City of Grants Pass, Or. v. Johnson* ("*Grants*

---

[1]  This case was reassigned to the undersigned on September 6, 2024.  (Doc. No. 211.)

Pass"), 603 U.S. 520 (2024) (holding that municipal laws which criminalize camping on public property do not violate the Eighth Amendment by criminalizing a person's status as being homeless), *abrogating Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019). In their reply in support of the pending motion, defendants significantly altered the relief they sought by arguing that they should be relieved from all the terms of their Settlement Agreement other than their obligation to maintain a specified shelter for homeless persons ("the Pallet Shelter") until the end of 2027. (Doc. No. 218 at 17.)

The Settlement Agreement recites that the parties entered into it "[f]or the sole purpose of avoiding protracted litigation[.]" (Doc. No. 153-1 at 4.) The Settlement Agreement also provides various forms of relief, including: (1) requiring that defendants construct a housing site referred to as the Pallet Shelter (*Id.* at ¶ 4); (2) requiring that defendants maintain and operate the Pallet Shelter according to specific policies (*Id.* at ¶¶ 5, 6); (3) requiring that defendants refrain from enforcing a variety of enactments[2] ("the Anti-Camping Ordinances") against plaintiffs while the Pallet Shelter is undergoing construction (*Id.* at ¶ 9.); (4) creating specific notice and pre-enforcement procedures to enforce the Anti-Camping Ordinances which defendants are required to adhere to when enforcing those ordinances following construction of the Pallet Shelter (*Id.* at ¶ 10); (5) creating specific notice and storage procedures regarding the seizure of personal

---

[2] Those enactments are:

> i. [Chico Municipal Code ("C.M.C.")] Chapter 9.20 (CAMPING; §§ 9.20.010–9.20.070), including §§ 9.20.020 and 9.20.030 (Citywide Camping Prohibition); § 9.20.050 (Storage of Personal Property in Public Places), and § 9.20.055 (Property Removal); ii. C.M.C. § 9.50.030 (B)–(E) (Waterways Ordinance — Camping, Staying, Storage of Personal Property, Entering and Remaining); iii. C.M.C. § 12.18.430 (Park Ordinance — Camping); iv. C.M.C. § 12.18.450 (Park Ordinance — Closure); v. C.M.C. § 12R.04.340 (Park Regulation — Camping); vi. C.M.C. § 12R.04.370 (Park Regulation — Closure); and vii. California Penal Code § 647(e), which provides it is a misdemeanor to lodge in any building, structure, vehicle, or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it. The portion of California Penal Code § 647(e) pertaining to lodging in private property shall not fall within this definition.

(Doc. No. 153-1 at ¶ 3-a.)

property left unattended in the City of Chico (*Id.* at ¶ 11); (6) dismissal of criminal and administrative citations and charges against plaintiffs that were based on plaintiffs' status as being homeless (*Id.* at ¶ 13); (7) damages and attorneys' fees (*Id.* at ¶¶ 14, 15); and (8) a dispute resolution process (the "Dispute Resolution process") which provides that the then-assigned magistrate judge would retain jurisdiction for a period of five (5) years for the purpose of "overseeing implementation, enforcement[,] and/or modification of this Agreement." (*Id.* at ¶ 16.) The Settlement Agreement states that it would have a term of five (5) years commencing on the effective date, which was January 14, 2022. (*Id.* at ¶ 2.)

The Dispute Resolution process in the Settlement Agreement governs disputes which arise over the "implementation, enforcement[,] or modification of the Agreement." (*Id.* at ¶ 16.) Under that Dispute Resolution process, the then-assigned magistrate judge was authorized to establish standards and procedures to resolve the dispute with the requirement that those procedures provide sufficient notice, opportunity to be heard, and due process. (*Id.*) The Settlement Agreement further states that the then-assigned magistrate judge may award monetary, injunctive, or any other form of appropriate relief to a party as a result of any dispute submitted to the Dispute Resolution process. (*Id.*)

On September 24, 2024, plaintiffs filed their opposition to the pending motion. (Doc. No. 216.) On October 4, 2024, defendants filed their reply thereto. (Doc. No. 218 at 17.) On November 27, 2024, with leave of the court, plaintiffs filed a sur-reply. (Doc. No. 225.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Rule 60(b) permits a district court to relieve a party from a final order or judgment on grounds of: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . . of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or /////

4

1    applying it prospectively is no longer equitable; or (6) any other reason justifying relief from the

2    operation of the judgment."  Fed. R. Civ. P. 60(b).

3                                              **DISCUSSION**

4    **A.    Subject Matter Jurisdiction**

5            In their pending motion, defendants seek a modification of the Settlement Agreement—

6    which they voluntarily entered into—over the objection of plaintiffs.  (Doc. No. 213 at 24–25.)

7    Defendants pursue this relief in a motion under Federal Rule of Civil Procedure 60(b)(5) and

8    60(b)(6).  (Doc. No. 213.)  The first question then is whether the court has jurisdiction to grant the

9    relief sought by defendants.

10           In the dismissal order, the previously-assigned district judge expressly retained

11   jurisdiction for a period of five (5) years from January 14, 2022, for the purpose of enforcing the

12   Settlement Agreement and expressly incorporated the terms of the Settlement Agreement into the

13   order.  (Doc. No. 153 at 3–4.)  A district court has ancillary jurisdiction to enforce the terms of a

14   settlement agreement when it expressly retains jurisdiction or incorporates the terms of the

15   settlement agreement into its dismissal order.  *Hajro v. U.S. Citizenship and Immigr. Servs*, 811

16   F.3d 1086, 1099 (9th Cir. 2016) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380–

17   81 (1994)).  The court therefore concludes, and the parties do not dispute, that it has jurisdiction

18   to *enforce* the terms of the Settlement Agreement.

19           The issue before the court is whether the court also has ancillary jurisdiction to modify the

20   terms of the Settlement Agreement.  In the Ninth Circuit, it is well-established that Rule 60(b)

21   may be employed to vacate a dismissal conditioned on an incorporated settlement agreement and

22   resume litigation.  *Keeling v. Sheet Metal Workers Int'l Ass'n, Local Union 162*, 937 F.2d 408,

23   410 (9th Cir. 1991); *see also Delay v. Gordon*, 475 F.3d 1039, 1044 n.11 (9th Cir. 2007)

24   (reaffirming that, under Ninth Circuit precedent, a party may move to vacate a conditional

25   dismissal rather than sue for breach of the settlement agreement).  The Ninth Circuit has further

26   recognized, in the context of a contempt action to enforce a settlement agreement, that an

27   incorporated settlement agreement can be modified because the modification "of the settlement

28   agreement was therefore a modification of the court order."  *Kelly v. Wengler*, 822 F.3d 1085,

                                                    5

1   1098 (9th Cir. 2016).  Another district court has applied this precedent to modify the entry of a

2   settlement agreement in the class action context pursuant to Rule 60(b)(5), without the parties

3   having repudiated their settlement agreement.  *Byrne v. Ore. One, Inc.*, No. 3:16-cv-01910-SB,

4   2023 WL 2755301, at *3 (D. Or. Apr. 3, 2023); *see also Bay Marine Boatworks, Inc. v. S/Y*

5   *Pursuit*, No. 3:20-cv-05399-WHO, 2022 WL 991751, at *3 (N.D. Cal. Apr. 1, 2022) (holding

6   that, while settlement agreements "are private contracts that courts do not usually rework," the

7   court had jurisdiction to modify the settlement agreement under Rule 60(b) because the judicial

8   order which incorporated the settlement agreement could be modified).  The court thus concludes

9   that its jurisdiction to enforce the Settlement Agreement also extends to its inherent power to

10  modify its order and, by incorporation, the Settlement Agreement.  Therefore, the court concludes

11  that it does have jurisdiction to enter the relief sought by defendants.

12  **B.      Dispute Resolution Process**

13          In their opposition, plaintiffs contend that defendants' pending motion was improperly

14  noticed before the undersigned rather than Chief Magistrate Judge Delaney under the terms of the

15  parties' Settlement Agreement.  (Doc. No. 216 at 11–12.)  In this regard, plaintiffs argue that

16  defendants are seeking a "modification of the Settlement" which requires going through the

17  Dispute Resolution process outlined in the Settlement Agreement.  (*Id.* at 12.)  In reply,

18  defendants clarify that they do not believe the Dispute Resolution process set out in the

19  Settlement Agreement applies here because the relief they seek includes the dissolution of the

20  Dispute Resolution Process.  (Doc. No. 218 at 17.)  Defendants request, without citation to legal

21  authority, that the court consider their motion on the merits because of the threats to public health

22  and safety that are prolonged by having to engage in the Dispute Resolution Process of their

23  Settlement Agreement.  (*Id.*)  Defendants contend that the "most recent dispute resolution

24  proceedings[,]" which lasted approximately six months without resolution, demonstrate the

25  unworkability of that process.  (*Id.*)  In sur-reply, plaintiffs counter that defendants have not

26  demonstrated any change in factual conditions or law which would warrant a change in the

27  Dispute Resolution process set out in the parties' Settlement Agreement and that, if defendants

28  were not satisfied with the outcome of the recently conducted informal conferences, they could

1  have filed a motion before Magistrate Judge Delaney seeking to resolve those issues pursuant to

2  the agreed upon process.  (Doc. No. 225 at 3–4.)

3         "Courts have long had inherent power to modify court orders in changed circumstances. . .

4  . This power is now codified at Rule 60(b) of the Federal Rules of Civil Procedure." *Kelly*, 822

5  F.3d at 1098 (citing *United States v. Swift & Co.*, 286 U.S. 106, 114–15 (1932); *Bellevue Manor*

6  *Assocs. v. United States*, 165 F.3d 1249, 1252 (9th Cir. 1999)).  Though the parties' Settlement

7  Agreement contains an explicit modification procedure under its Dispute Resolution process, this

8  does not displace the alternative means of a party to modify the Settlement Agreement pursuant to

9  Rule 60(b).  *See Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 123, 128 (D.D.C. 2015) (analyzing

10  modification of an incorporated settlement agreement under Rule 60(b) without written

11  agreement of the parties despite the incorporated agreement only permitting modification

12  pursuant to written agreement of the parties).

13         The court therefore finds that defendants' pending motion seeking relief from final

14  judgment is properly before the undersigned rather than Chief Magistrate Judge Delaney despite

15  the Dispute Resolution process set out in the parties' Settlement Agreement.

16  **C.     Rule 60(b)(5)**

17         Defendants move under Federal Rule of Civil Procedure 60(b)(5) to modify the parties'

18  Settlement Agreement.  (Doc. No. 213 at 24.)  Under Rule 60(b)(5), the court may relieve a party

19  from a "final judgment, order, or proceeding" if "the judgment has been satisfied, released, or

20  discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it

21  prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).  Though defendants do not state

22  under which prong of Rule 60(b)(5) they seek relief, the court will consider each prong

23  independently as plaintiffs do in their opposition.  (Doc. No. 216 at 13–14.)

24         "Rule 60(b)(5) typically involves a party seeking to modify an injunction." *Sikousis*

25  *Legacy Inc. v. B-Gas Ltd.*, No. 22-cv-03273-CRB, 2024 WL 5048914, at *3 (N.D. Cal. July 29,

26  2024) (citing *Horne v. Flores*, 557 U.S. 433, 447 (2009) (describing how the party seeking relief

27  bears the burden of establishing changed circumstances to warrant modifying an injunction or

28  consent decree)).  The court begins by noting that the preliminary injunction which had been

1    entered in this action was specifically dissolved in the court's dismissal order.  (Doc. No. 153 at

2    3) ("The Court's Preliminary Injunction dated July 8, 2021, is hereby dissolved in its entirety.")

3    Implicit in defendants' Rule 60(b)(5) motion is the assumption that the parties' Settlement

4    Agreement has prospective effect.  *Hansen v. Parkhurst*, No. 16-cv-00459-VBF-AS, 2017 WL

5    11631505, at *6 (C.D. Cal. Aug. 2, 2017) ("[T]he Ninth Circuit has explicitly stated that Rule

6    60(b)(5) applies only to those judgments that have prospective application.") (internal quotation

7    marks omitted) (citing *Harvest v. Castro*, 531 F.3d 737, 748 (9th Cir. 2008)).

8           "The standard used in determining whether a judgment has prospective application is

9    whether it is executory or involves the supervision of changing conduct or conditions."  *Maraziti*

10   *v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995).  For a judgment to be "executory," it must "compel

11   [a party] to perform or restrain [that party] from performing a future act[.]"  *FTC v. Hewitt*, 68

12   F.4th 461, 467 (9th Cir. 2023).  Because the parties' Settlement Agreement prevents defendants

13   from enforcing Anti-Camping Ordinances and Regulations without following specific

14   enforcement procedures, the Settlement Agreement does restrain defendants from performing

15   certain future acts.  *See Martin*, 920 F.3d at 611 (discussing how protection against future

16   enforcement of a statute does constitute prospective relief).[3]  Moreover, in its dismissal order, the

17   court expressly retained jurisdiction "to resolve any future disputes" regarding the performance of

18   the Settlement Agreement and stated that the then-assigned magistrate judge retained jurisdiction

19   "for purposes of *overseeing* implementation, enforcement, and/or modification of this

20   Agreement."  (Doc. Nos. 153 at 3; 153-1 at 22.)  This provides some support for the proposition

21   that the Settlement Agreement contemplated court oversight to some degree.  *Cf. Sikousis Legacy*

22   *Inc*, 2024 WL 5048914, at *4 (concluding that the court's vacatur order did not have prospective

23   effect in part because it had not retained jurisdiction to oversee implementation of its order).  In

24   /////

25   _____

26   [3]  The court notes that a settlement agreement with a somewhat similar structure to the Settlement
     Agreement at issue here (in that it required the plaintiffs to monitor compliance through set
27   procedures) was modified by a district court pursuant to Rule 60(b)(5) in response to the Covid-
     19 pandemic.  *Peoples v. Annucci*, No. 11-cv-02694-ALC, 2022 WL 7164199, at *1 (S.D.N.Y.
28   Sept. 30, 2022).

1    light of the authorities addressed above, the court concludes that the parties' Settlement

2    Agreement has some prospective effect.

3        Because the Settlement Agreement has prospective effect and this court has jurisdiction to

4    modify it, relief is available to defendants under Federal Rule of Civil Procedure 60(b)(5). *See*

5    *Clark v. California*, 739 F. Supp. 2d 1168, 1233 (N.D. Cal. 2010) (in the context of a settlement

6    agreement which stated that the "Court shall retain jurisdiction to enforce the terms of this

7    agreement," applying Rule 60(b)(5) in ruling on defendants' motion to terminate brought under

8    the Prison Litigation Reform Act and in determining whether to dissolve that settlement

9    agreement and stipulated order).  However, the undersigned is wary of modifying a contract

10    agreed to by the parties which is neither a consent decree nor an injunction issued by the court.

11    *See Walsh v. U.S. Postal Serv.*, No. 1:20-cv-00435-DAD-SKO, 2021 WL 2337605, at *2 (E.D.

12    Cal. June 8, 2021) (noting that before approving a consent decree, the district court has an

13    independent duty to determine that it is "fundamentally fair, adequate, and reasonable" and

14    "conform[s] to applicable laws" and in doing so must balance several factors).  Much of the

15    parties' arguments here center on the standard under Rule 60(b)(5) for the modification of a

16    consent decree.  (Doc. Nos. 216 at 14; 218 at 8.)  The court had not entered a consent decree in

17    this case.[4]  It is certainly arguable that a more stringent standard should apply where, as here,

18    defendants seek to modify a settlement agreement incorporated by a dismissal order rather than a

19    consent decree.  *See Macias v. N.M. Dep't of Lab.*, 300 F.R.D. 529, 566 n.37 (D.N.M. 2014)

20    ("[T]he fact that the movant consented to the obligations from which he is moving for relief, as

21    well as the general policy of promoting settlement and the finality of judgments, support raising

22    rule 60(b)(5)'s bar higher for orders that effectuate a settlement agreement than for orders by

23    /////

24

---

25    [4]  The court need not decide whether the Settlement Agreement is in essence a consent decree,
because it concludes below that, even if treated as such, defendants have not met their burden of

26    demonstrating a change in factual circumstances or law warranting its modification even under
the standard applicable to consent decrees.  *See generally Kelly v. Wengler*, 979 F. Supp. 2d 1237

27    (D. Idaho 2013) (discussing the possibility of a settlement agreement being, for practical
purposes, a consent decree but ultimately declining to decide the issue because it was not

28    necessary for resolution of the case), <u>aff'd</u>, 822 F.3d 1085 (9th Cir. 2016).

1    judicial fiat.")  Nevertheless, the court will analyze defendants' motion under the Rule 60(b)(5)

2    standard governing the modification of consent decrees.[5]

3        As stated above, the court may grant defendant relief from the terms of their Settlement

4    Agreement if one of the following three prongs of Rule 60(b)(5) is true:  (1) the Settlement

5    Agreement is satisfied; (2) the Settlement Agreement is based on a reversed judgment; or (3) it is

6    no longer equitable to prospectively apply the Settlement Agreement.  The court will now

7    evaluate each of these prongs in turn.

8            1.    Satisfaction of the Settlement Agreement

9        Vacatur of a judgment is permitted under Federal Rule of Civil Procedure 60(b)(5) when

10   "the judgment has been satisfied, released[,] or discharged."  *Jeff D. v. Otter*, 643 F.3d 278, 283

11   (9th Cir. 2011).  To demonstrate that the Settlement Agreement has been satisfied, defendants

12   must establish that they have substantially complied with its requirements.  *Id.* at 283–84 (citing

13   *Joseph A. v. N.M. Dept. of Human Servs.*, 69 F.3d 1081, 1086 (10th Cir. 1995)).  "The status of

14   compliance in light of the governing standards require overall attention to whether the larger

15   purposes of the decrees have been served."  *Id.* at 288.  "[I]n California a party is deemed to have

16   substantially complied with an obligation only where any deviation is unintentional and so minor

17   or trivial as not substantially to defeat the object which the parties intend to accomplish."  *Rouser*

18   *v. White*, 825 F.3d 1076, 1082 (9th Cir. 2016) (internal quotation marks omitted) (quoting *Wells*

19   *Benz, Inc. v. United States*, 333 F.2d 89, 92 (9th Cir. 1964)).  The court notes that this prong of

20   Rule 60(b)(5) for vacatur based on satisfaction of the judgment "has been relied on very rarely."

21   11 Mary Kay Kane, Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §

22   2863 (3d ed. 2024).

23       In support of their contention that they have complied with the requirements of the

24   consent decree, defendants provide a declaration from Mark Sorensen, the City Manager of

25   Chico.  (Doc. No. 213 at 27.)  In his declaration, Mr. Sorensen states that the city has constructed

26

27   [5]  For ease of reading, the court has not altered quotations from the cited cases to replace the term
     "consent decree" where it appears with the term "incorporated settlement agreement" which is
28   applicable here

                                10

1   177 tiny homes, collectively referred to as the "Pallet Shelter," which have locks, lighting,

2   electricity, and running water.  (*Id.* at ¶¶ 7, 9.)  However, defendants do not offer any authority

3   suggesting that construction of these homes alone constitutes good faith compliance with the

4   Settlement Agreement.  Indeed, defendants do not even offer any argument as to the purposes of

5   the Settlement Agreement.  The court observes that the Settlement Agreement itself states that the

6   sole purpose of the parties entering into it was to avoid protracted litigation.  (*See* Doc. No. 153-1

7   at 4); *see also Jeff. D.*, 643 F.3d at 288 ("A court considering termination of a consent decree in

8   light of performance of its specific terms 'must also consider the general goals of the decree

9   which the terms were designed to accomplish.'") (quoting *Youngblood v. Dalzell*, 925 F.2d 954,

10  960 (6th Cir. 1991)).  Thus, although the city's construction efforts may be commendable, they do

11  not appear to satisfy or connect to the purposes of the Settlement Agreement as recited therein.

12  The Settlement Agreement also contemplated a five-year term of operation which has not been

13  completed.  (Doc. No. 153-1 at ¶ 2.)  Defendants did not address this uncompleted term in their

14  motion.  Because defendants have failed to meet their burden of demonstrating their substantial

15  compliance with the Settlement Agreement, they are not entitled to relief under the satisfaction

16  provision of Rule 60(b)(5).[6]  *See Burt v. Cnty. of Contra Costa*, No. 73-cv-00906-JCS, 2014 WL

17  253010, at *11 (N.D. Cal. Jan. 22, 2014) (considering the purposes of a consent decree to

18  determine whether the defendant had substantially complied with the decree).

19        2.    <u>Whether the Settlement is Based on a Reversed Judgment</u>

20        Rule 60(b)(5) permits relief from a final judgment when it is "based on an earlier

21  judgment that has been reversed or vacated" (the "reversed judgment provision").  However,

22  "[t]he fact that [], after the judgment being challenged issued, precedent arose in a different case

23  that rendered the challenged judgment flawed or incorrect is not sufficient to implicate [the

24  reversed judgment provision] of Rule 60(b)(5)."  *Schrubb v. Blankenship*, No. 2:19-cv-06557-

---

[6]  In their reply brief, defendants describe a change in factual circumstances that they contend would make further compliance with the Settlement Agreement onerous.  (Doc. No. 218 at 14–15) (citing *Horne*, 557 U.S. at 447 (discussing the provision of Rule 60(b)(5) allowing relief when "applying [the judgment or order] prospectively is no longer equitable")).  The claimed changes in factual circumstances are not relevant to the substantial compliance analysis, though the court considers these arguments under the equitable provision analysis.

1   MWF-GJS, 2022 WL 3971054, at *2 (C.D. Cal. July 26, 2022) (collecting cases).  "[R]ather it is

2   necessary that the present judgment [be] based on the prior judgment in the sense of *res judicata*

3   or collateral estoppel."  *Manzanares v. City of Albuquerque*, 628 F.3d 1237, 1240 (10th Cir.

4   2010) (italics added) (internal quotation marks omitted).  Here, defendants do not contend that the

5   Settlement Agreement was based on a prior judgment based upon *res judicata* or collateral

6   estoppel principles.  Accordingly, the court concludes that the reversed judgment provision of

7   Rule 60(b)(5) provides no basis for the granting of defendants' pending motion for relief from

8   their Settlement Agreement.

9           3.      Whether Continued Enforcement is Not Equitable

10          Defendants' primary argument is that the continued application of the prospective relief

11  provided for in the Settlement Agreement is not equitable and that the court should therefore

12  modify the Settlement Agreement under the equitable provision of Rule 60(b)(5).  (Doc. No. 213

13  at 24.)  Defendants appear to raise two separate arguments in this regard:  (1) the Supreme

14  Court's decision in *Grants Pass* constitutes a significant change in law mandating that the court

15  provide relief from the Settlement Agreement; and, (2) there has been a significant change in

16  factual circumstances related to the difficulty in enforcing Anti-Camping Ordinances and

17  Regulations that would also warrant the granting of relief.  (*Id.* at 13–14.)

18          Plaintiffs respond that the difficulties defendants cite in support of their arguments were

19  anticipated from the outset of the Settlement Agreement and that the provisions of that agreement

20  have promoted public health and safety.  (Doc. No. 216 at 16–20.)  Plaintiffs further contend that

21  the Supreme Court's decision in *Grants Pass* did not render any obligations undertaken by

22  defendants as part of the Settlement Agreement impermissible.  (*Id.* at 21–23.)  Moreover,

23  plaintiffs argue that *Grants Pass* does not constitute a significant change of law as to this case

24  because it only addresses one cause of action asserted by plaintiffs in their FAC.  (*Id.*)

25  Defendants retort that there is no evidence that they have violated any constitutional rights of

26  plaintiffs since the implementation of the Settlement Agreement.  (Doc. No. 218 at 11–12.)

27          The court finds the standard applicable to requests to modify a consent decree instructive

28  since that is the least demanding standard which defendants would arguably have to meet to

1   justify the modification of their settlement agreement which was incorporated by a dismissal

2   order.  "When the government seeks to modify or terminate a consent decree based on changed

3   circumstances, it 'must establish that a significant change in facts or law warrants revision of the

4   decree and that the proposed modification is suitably tailored to the changed circumstance.'"

5   *Flores v. Rosen*, 984 F.3d 720, 740–41 (9th Cir. 2020) (describing the two-prong standard for

6   modifying a consent decree under Rule 60(b)(5)) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*,

7   502 U.S. 367, 393 (1992)).  The moving party bears the burden of proof as to both prongs of that

8   test.  *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005).  "A court should not

9   ordinarily modify a decree, . . . 'where a party relies upon events that actually were anticipated at

10  the time it entered into a decree.'"  *Id.* (quoting *Rufo*, 502 U.S. at 385).  "A change in law may

11  justify modifying or terminating a consent decree if the new law makes complying with the

12  consent decree 'impermissible,' or, on the other hand, if it 'make[s] legal what the decree was

13  designed to prevent.'"  *Rosen*, 984 F.3d at 741 (alterations in original) (quoting *Rufo*, 502 U.S. at

14  388); *see also Bellevue Manor Assocs.*, 165 F.3d at 1257 (holding that the *Rufo* standard applies

15  to all motions brought under the equitable provision of Rule 60(b)(5) rather than merely to

16  motions brought in institutional reform cases).[7]

17                    a.     *Change in the Law*

18       Defendants argue that the Supreme Court's decision in *Grants Pass* constitutes a

19  significant change in the law because it "reversed" the Ninth Circuit's decision in *Martin*, which

20  the previously assigned district judge relied upon in granting a preliminary injunction in this case.

21  (Doc. No. 213 at 11–12); *see also Grants Pass*, 603 U.S. at 543 (abrogating *Martin*).  In *Grants*

22  *Pass*, the Supreme Court concluded that anti-public-camping ordinances did not violate the

23  Eighth Amendment because the enforcement of those ordinances does not implicate the "method

24  _____

25  [7]  The court notes that in *Flores v. Lynch*, the Ninth Circuit stated that "[w]hen the basis for
    modification is a change in law, the moving party must establish that the provision it seeks to

26  modify has become 'impermissible.'"  *Flores v. Lynch*, 828 F.3d 898, 909–10 (9th Cir. 2016).
    However, in a later decision, the Ninth Circuit clarified that a movant may also show that what

27  the decree was designed to prevent is now legal as a separate potential grounds for relief.  *Rosen*,
    984 F.3d at 741; *see also Alexander v. Bahou*, 512 F. Supp. 3d 363, 375 (N.D.N.Y. 2021)

28  (declining to follow *Lynch* on this point).

or kind of punishment" a government may impose nor does it criminalize conduct based on an individual's status. *Id.* at 542, 546. Plaintiffs do not dispute that *Grants Pass* implicates the reasoning behind the temporary restraining and preliminary injunction orders that the previously-assigned judge issued, but correctly state that it is the Settlement Agreement which currently binds defendants rather than the dissolved preliminary injunction. (Doc. Nos. 216 at 22; 153 at 3.) In this regard, plaintiffs concede that there has been a change in law, but emphasize that the parties had anticipated the possibility of *Martin* being overturned when they entered into the Settlement Agreement. (Doc. No. 216 at 21–23.) Moreover, plaintiffs note that in their FAC they asserted several causes of action that were not affected by the Supreme Court's decision in *Grants Pass*. (*Id.*) The court agrees that defendants have met their burden to show that there has been a change of law and will therefore analyze whether that change in law is "significant" such that continued enforcement of the prospective effects of the Settlement Agreement would be inequitable.

The question before the court then is akin to whether "altering an injunction is equitable, even if the legal duty underlying [portions of] the injunction has disappeared." *Cal. ex rel Becerra v. United States EPA*, 978 F.3d 708, 715–16 (9th Cir. 2020) (distinguishing the equitable standard for modifying consent decrees which requires considering the expectations of the parties from the standard for modifying a court-entered injunction which does not). Another judge of this court has described this equitable analysis as being flexible:

> The touchstone of Rule 60(b)(5) analysis is that "a district court should exercise flexibility in considering requests for modification of an institutional reform consent decree." . . . "A flexible approach allows courts to ensure that responsibility for discharging the State's obligations is returned promptly to the State and its officials when the circumstances warrant." . . . However, "it does not follow that a modification will be warranted in all circumstances. Rule 60(b)(5) provides that a party may obtain relief from a court order when it is no longer equitable that the judgment should have prospective application, not when it is no longer convenient to live with the terms of a consent decree.

*Coleman v. Brown*, 922 F. Supp. 2d 1004, 1027 (E.D. Cal. 2013) (internal quotations omitted) (quoting *Rufo*, 502 U.S. at 383 and *Horne*, 557 U.S. at 450). "Applying this 'flexible' Rule 60(b)(5) standard, the Ninth Circuit has directed courts to 'take all the circumstances into account

14

1  in determining whether to modify or vacate a prior injunction or consent decree.'" *Orantes-*

2  *Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 830 (C.D. Cal. July 24, 2007) (quoting *Bellevue*

3  *Manor Assocs.*, 165 F.3d at 1256).

4          Defendants contend that it is inequitable for the Settlement Agreement to remain

5  unmodified because the decision in *Grants Pass* would not constrain their enforcement of the

6  Anti-Camping Ordinances.  (Doc. No. 213 at 17.)  The court is not persuaded by defendants'

7  argument.  This is because defendants voluntarily entered into the Settlement Agreement, thereby

8  agreeing to assume obligations beyond the minimum constitutional requirements, and did so for

9  the purposes of resolving the litigation.  (Doc. No. 153-1.)  For example, the parties agreed to

10  implement measures beyond those required under the holding in *Martin*, such as creating

11  enforcement procedures for the Anti-Camping Ordinances even after the construction of suitable

12  shelter for homeless individuals.  (*Id.* at 12–17); *Martin*, 920 F.3d at 617 (holding only that a city

13  cannot prosecute "homeless individuals for 'involuntarily sitting, lying, and sleeping in public[]'"

14  when there are more homeless individuals than there are available beds in a public shelter).  Of

15  course, "parties may agree to provisions in a consent decree which exceed the requirements of

16  federal law." *Suter v. Artist M.*, 503 U.S. 347, 354 n.6 (1992); *see also Jeff D. v. Kempthorne*,

17  365 F.3d 844, 853 (9th Cir. 2004) ("[T]he defendants' argument that the provision of certain

18  services is not mandated by the Constitution misses the point:  after a consent decree is properly

19  entered, it is the defendants' voluntary assumption of an obligation to provide those services that

20  requires them to comply.") (citing *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v.*

21  *City of Cleveland*, 478 U.S. 501, 525 (1986); *Gilmore v. People of the State of Cal.*, 220 F.3d

22  987, 1005 (9th Cir. 2000)[8]); *Mannick v. Kaiser Found. Health Plan, Inc.*, No. 03-cv-05905-PJH,

23  2006 WL 3734390, at *15 (N.D. Cal. Dec. 18, 2006) ("[A] subsequent judicial determination that

24  obligations to which a party agreed in a consent decree were not legally required is not the sort of

25  change in the law that justifies modification of a consent decree.")

26

27  _____

  [8]  In *Gilmore*, the Ninth Circuit stated that "continuing decrees entered by consent of the parties
28  may, precisely because of their consensual nature, provide more than the constitutional
  minimum[.]"  *Gilmore*, 220 F.3d at 1005.

1  The Supreme Court has previously rejected, in the context of a consent decree rather than

2  in a case of a settlement agreement incorporated by a dismissal order, a similar argument that a

3  change in decisional law inherently warrants a modification:

> Petitioner Rapone urges that, without more, our 1979 decision in *Bell v. Wolfish*, 441 U.S. 520 [. . .] was a change in law requiring modification of the decree governing construction of the Suffolk County Jail. We disagree. *Bell* made clear what the Court had not before announced: that double celling is not in all cases unconstitutional. But it surely did not cast doubt on the legality of single celling, and petitioners were undoubtedly aware that *Bell* was pending when they signed the decree. Thus, the case must be judged on the basis that it was immaterial to petitioners that double celling might be ruled constitutional, *i.e.*, they preferred even in that event to agree to a decree which called for providing only single cells in the jail to be built.
>
> ***
>
> To hold that a clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree would undermine the finality of such agreements and could serve as a disincentive to negotiation of settlements in institutional reform litigation.

15  *Rufo*, 502 U.S. at 388–89. Similarly, in the present case *Grants Pass* was pending appeal before

16  the Ninth Circuit when the parties nevertheless decided to enter into the Settlement Agreement.[9]

17  (Doc. No. 216 at 23) (citing *Johnson v. City of Grants Pass*, 50 F.4th 787 (9th Cir. 2022)).

18  Indeed, defendants appear to concede that they were aware of the possible unsettled nature of the

19  law in this area based on the dissents written in the order denying rehearing *en banc* in *Martin*.

20  (Doc. No. 218 at 11); *see also R.C. ex rel. Ala. Disabilities Advoc. Program v. Nachman*, 969 F.

21  Supp. 682, 703 (M.D. Ala. 1997) (finding that modification of a consent decree was not

22  warranted where defendant was aware that the law regarding the plaintiffs' Adoptions Assistance

23  and Child Welfare Act claim was unsettled and the defendant chose to settle). This weighs

24

---

25  [9] The court notes that the parties could have agreed to include a termination clause which allowed relief from the Settlement Agreement's obligations in the event that the Ninth Circuit or

26  Supreme Court abrogated *Martin v. City of Boise*. *See, e.g., Rosen*, 984 F.3d at 727 (describing a termination clause in an institutional reform settlement agreement which provided for termination

27  following the defendants' publication of regulations implementing the agreement). Despite the possibility of a change in controlling law, the parties chose not to include such a term and the

28  court declines to speculate as to reason why.

1    strongly against finding that any change in law brought about by the Supreme Court's decision in

2    *Grants Pass* renders continued enforcement of the Settlement Agreement inequitable. The court

3    therefore rejects defendants' contention that the *Grants Pass* decision represents a significant

4    change in the law warranting modification of a consent decree, much less a private settlement

5    agreement as in this case.[10]

6            The court thus concludes that defendants have not met their burden to show that there has

7    been a significant change in law that renders further enforcement of the Settlement Agreement

8    inequitable.  In particular, the court finds that, because *Grants Pass* was pending before the Ninth

9    Circuit at the time, the expectation of the parties when entering into the Settlement Agreement

10   weighs strongly against modifying the Settlement Agreement.

11                       b.    *Change in Factual Circumstances*

12           Defendants next argue that factual circumstances have significantly changed such that

13   requiring their ongoing compliance with the Settlement Agreement is onerous, unworkable, and

14   detrimental to the public interest.  (Doc. No. 213 at 14–23.)  In this regard, defendants contend

---

[10]  For the first time in their reply, defendants argue that the court should modify the Settlement Agreement to return power to local officials based upon "concepts of federalism."  (Doc. No. 218 at 19.)  Federalism concerns are implicated when a federal court oversees a local government's compliance with a consent decree and the court "must consider, in the context of a consent decree, whether there is an ongoing violation of federal law."  *Burt*, 2014 WL 253010, at *19; *see also Horne*, 557 U.S. at 448 ("Federalism concerns are heightened when, as in these cases, a federal court decree has the effect of dictating state or local budget priorities[]").  Plaintiffs point out that the Settlement Agreement also extinguished their federal claims against defendants for violations of the Fourth and Fourteenth Amendments, which were not affected by the decision in *Grants Pass*.  (Doc. No. 216 at 23.)  Under Ninth Circuit precedent, a lack of a continuing violation of federal law is not required for continuing enforcement of a consent decree. *Kempthorne*, 365 F.3d at 852 ("Those decisions made clear that federal courts can enforce consent decrees which require state officials to do more than what federal law demands even without a showing of an ongoing violation of federal law.")  The court need not address whether there is an ongoing substantial federal interest in this case because the order at issue is a dismissal order incorporating a settlement agreement, rather than a consent decree.  Nevertheless, the court notes that defendants have not offered any evidence or authority to suggest that a subsequent clarification of law as to plaintiffs' Eighth Amendment claim but not as to plaintiffs' Fourth and Fourteenth Amendment claims would render continued enforcement of the Settlement Agreement inequitable.  *See Boyd v. City of San Rafael*, No. 23-cv-04085-EMC, 2024 WL 3748334, at *4 (N.D. Cal. Aug. 7, 2024) (noting that the plaintiffs' claims in that case brought under the ADA and the Fourteenth Amendment were not impacted by the Supreme Court's decision in *Grants Pass*).

1    that the notice and enforcement process required to clear homeless encampments has resulted in

2    unexpected expenditures and has led to homeless encampments moving to other locations rather

3    than dispersing.  (*Id.* at 14–17.)  Defendants also list several isolated fires and criminal activity

4    near homeless encampments that were perpetrated by homeless persons.  (*Id.* at 18–21.)  From

5    this, defendants contend that their inability to quickly disperse homeless encampments endangers

6    public safety.  (*Id.* at 21–23.)  Additionally, defendants indicate that Governor Newsom has

7    issued an executive order encouraging local governments to adopt their policies to humanely

8    remove homeless encampments from public spaces and they assert that the governor has

9    "threatened to redirect state funds away from local agencies that do not act expeditiously" in

10    response to that order.  (*Id.* at 10–11.)  In response, plaintiffs contend that the factual

11    circumstances which defendants cite were foreseen at the time the Settlement Agreement was

12    entered into and therefore do not constitute a change in circumstances that would warrant the

13    relief defendants seek.  (Doc. No. 216 at 17–20.)

14         "'[I]f the movant cites significantly changed factual conditions,' . . . 'it must additionally

15    show that the changed conditions make compliance with the consent decree more onerous,

16    unworkable, or detrimental to the public interest.'"  *Asarco Inc.*, 430 F.3d at 979 (quoting *Small*

17    *v. Hunt*, 98 F.3d 789, 795 (4th Cir. 1996)).[11]  "However, modification is not appropriate simply

18    because 'it is no longer convenient to live with the terms of a consent decree.'"  *Wash. v. Moniz*,

19    No. 2:08-cv-05085-RMP, 2015 WL 12643792, at *7 (E.D. Wash. May 11, 2015) (quoting *Rufo*,

20    502 U.S. at 383).  Rather,

21
22
23
             [t]he party seeking modification of a consent decree bears the burden
             of establishing the following four conditions:  (1) "a significant
             change either in factual conditions or in the law occurred *after*
             execution of the decree"; (2) "the change was not anticipated at the
             time it entered into the decree"; (3) "the changed factual

24

---

25    [11]  The court notes that one district court has modified the requirements of an incorporated

26    settlement agreement under Rule 60(b)(5) based on a change in factual circumstances, though that
court did not articulate what standard it was applying in doing so.  *Byrne*, 2023 WL 2755301, at

27    *3–4.  The court therefore will continue to apply the standard applicable to consent decrees in
resolving defendants' pending motion, because if a more demanding standard were to apply to a

28    settlement agreement incorporated by an order of dismissal, defendants would be found to have
failed to make the required showing.

circumstance makes compliance with the consent decree more onerous, unworkable, or detrimental to the public interest"; and (4) the proposed modification is "suitably tailored to resolve the problems created by the changed . . . conditions."

*Moniz*, 2015 WL 12643792, at *7 (emphasis added) (quoting *Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120 (9th Cir. 2009)).  While a movant is required to show that the change in factual circumstances was not actually anticipated at the time it entered into the agreement, the movant is not required to show that the changed circumstances were unforeseeable.  *Evans v. Williams*, 206 F.3d 1292, 1298 (D.C. Cir. 2000).

Defendants assert that five changes in factual circumstances warrant modification of the Settlement Agreement:  (1) the cumbersome nature of the enforcement process for the Anti-Camping Ordinances and Regulations; (2) the fire dangers posed by encampments created by homeless persons; (3) the criminal activity that takes place in encampments created by homeless persons; (4) the environmental and health impacts of encampments created by homeless persons; and (5) an executive order issued by Governor Newsom.  The court analyzes each of these claimed circumstances below.

i.       The Enforcement Process

Defendants contend that the process for enforcing the Anti-Camping Ordinances which they had agreed to as a part of the Settlement Agreement is unduly cumbersome and to continue to require them to comply with it would be inequitable, partially because they claim the process has cost them millions of dollars.[12]  (Doc. No. 213 at 16–17.)  Plaintiffs counter that when defendants signed the Settlement Agreement they agreed upon the terms of the enforcement

---

[12]  It is unclear what defendants are referring to when they describe "the City's expenditure of millions of dollars."  (Doc. No. 213 at 16.)  Defendants may be referring to a figure of $12,991,027 that they have expended in complying with the Settlement Agreement, but the declaration of the Chico City Manager Mark Sorenson states that this expenditure was for constructing and operating the Pallet Shelter.  (*Id.* at 17, 31–32.)  Plaintiffs have objected to these paragraphs of the Sorenson Declaration as lacking foundation.  (Doc. No. 216-1 at 10.)  Because Sorenson's declaration states that he is "responsible for preparing the City's budget annually" and is "directly involved in the daily oversight and management of the City's financial operations," defendants have established a basis for Mr. Sorenson's knowledge of the City's expenditures on the Pallet Shelter.  (Doc. No. 213 at 27.)  Accordingly, plaintiffs' objections in this regard are overruled.

1    process, those terms have not changed, and therefore there has been no significant change in

2    factual circumstances.  (Doc. No. 216 at 17.)  Defendants reply that they could not and did not

3    anticipate that some homeless persons would repeatedly refuse offers of shelter.  (Doc. No. 218 at

4    12.)

5           "Ordinarily . . . modification should not be granted where a party relies upon events that

6    actually were anticipated at the time it entered into a decree."  *Rufo*, 502 U.S. at 385.  Though

7    "[f]inancial constraints are a legitimate concern[,]" anticipated costs in complying do not

8    constitute a significant change in factual circumstances.  *LaShawn A. ex rel. Moore v. Fenty*, 701

9    F. Supp. 2d 84, 102 (D.D.C. 2010) (citing *Agostini v. Felton*, 521 U.S. 203, 216 (1997) (holding

10   that anticipated costs of compliance are not changed circumstances)).

11          Defendants' contention that the enforcement procedures constitute a change in factual

12   circumstances is unpersuasive, particularly in light of the fact that the Settlement Agreement

13   which defendants assented to contained the terms for those procedures.  The Settlement

14   Agreement itself indicates that the parties were aware that a homeless person may refuse the

15   shelter spaces offered to them.  Indeed, paragraph 10(i) provides the procedure for enforcing the

16   Anti-Camping Ordinances should a homeless person decline the space offered.  (Doc. No. 153-1

17   at 16) ("If the Homeless Person declines the Appropriate Shelter Space offered, the City may

18   issue a 72-hour Illegal Encampment Notification upon the expiration of the 7-day notice required

19   in Paragraph 10(f)").[13]  Defendants also clearly anticipated the nature of the enforcement

20   procedure because it was set forth in the Settlement Agreement they assented to.  Further,

21   defendants have provided no evidence that the costs of complying with the Settlement Agreement

22   have unexpectedly risen or were otherwise not anticipated when they entered the agreement.

23   _____

24   [13]  In their reply, defendants contend that they did not anticipate that some homeless persons
     would repeatedly refuse offers of shelter.  (Doc. No. 218 at 12.)  However, the declarations which

25   defendants cite to simply refer to the number of individuals who have refused shelter and the
     reasons that they have refused and do not address whether this was a departure from the

26   expectations of the parties to the Settlement Agreement.  (Doc. No. 213 at 57, 64–65.)
     Defendants provide no argument as to why the existence of "a hard core of individuals who

27   resolutely refuse to avail themselves of any of the available shelters" is a change in factual
     circumstances making the enforcement procedures they agreed to more onerous than anticipated.

28   (*Id.* at 17.)

1    The court therefore finds that the enforcement process itself and the financial costs

2    associated with it were anticipated by defendants at the time they voluntarily entered into the

3    Settlement Agreement.  Accordingly, the court concludes that in this regard defendants have not

4    demonstrated a change in factual circumstances warranting relief under Rule 60(b)(5).

5          ii.  Fires in Encampments

6      Defendants contend that encampments constructed by homeless people pose fire hazards

7    because of the frequent use of open fires for cooking, heating, and lighting.  (Doc. No. 213 at 18.)

8    They argue that the mere existence of fires at homeless encampments constitutes a change in

9    factual circumstances warranting the granting of the requested relief.[14]  (Doc. No. 213 at 19–20.)

10   Plaintiffs respond by pointing out that the fact that "homeless encampments present safety risks to

11   the community and people who live there, without security, fire alarms, or a safe way to heat is

12   uncontroverted and was well-known by [defendants] at the time [they] entered into the Settlement

13   [Agreement]."  (Doc. No. 216 at 20.)  Plaintiffs also contend that these encampment conditions

14   were anticipated by the parties and that this cannot constitute a change in factual circumstances

15   justifying modification.  (*Id.*)  Plaintiffs point out that defendants' own declarations establish that

16   there were actually more fires prior to the parties' entry into the Settlement Agreement.  (*Id.* at

17   11.)  In reply, defendants restate their view that any fires at all are unacceptable and warrant the

18   granting of relief from the final judgment entered in this action.  (Doc. No. 218 at 6.)

19     It is undisputed by the parties that the number of fires attributable to homeless people in

20   general has been reduced during the operation of the Settlement Agreement compared to the

21   number that took place prior to their entry into the Settlement Agreement.  (*Id.*) (in 2020 there

---

[14]  In support of this contention, defendants cite to a number of fires including:  (1) one caused by a "transient" cooking in a shopping cart outside of an encampment; (2) one that the Fire Department's investigation concluded was "*probably* caused by transients living in a nearby encampment; and (3) one where a "transient from a nearby encampment" was reported throwing lit flammable objects into a drainage pipe of a commercial structure.  (Doc. No. 213 at 19–20.)  Because the cause of each of these three fires is to some degree speculative or, even if described by defendants accurately, would not provide significant support for defendants' broad contention that homeless encampments increase fire risk, the court does not view them as representing a change in factual circumstances that could play a role in supporting the granting of the relief sought by defendants.

1  was an average of 5.75 fires per month or 69 per year); *see also* (Doc. Nos. 90-6 at ¶ 5) (a

2  declaration attached to defendants' supplemental brief opposing the imposition of a preliminary

3  injunction in which it was stated that in 2020 there had been 69 homeless-related fires); (Doc. No.

4  213 at 50) (in 2022 there were 45 confirmed or suspected homeless-related fires, in 2023 there

5  were 27 confirmed or suspected homeless-related fires, and in 2024 as of September 10, 2024

6  there had been 28 confirmed or suspected homeless-related fires).  Defendants do not argue that

7  fire rates have increased or that fires have become more dangerous in the years since their entry

8  into the Settlement Agreement.  Further, the court observes that, while the Settlement Agreement

9  is silent as to fire risk, the arguments advanced by defendants in opposition to plaintiffs' motion

10  for a preliminary injunction demonstrates that they clearly anticipated at that time the danger of

11  fires in homeless encampments.  (Doc. No. 216 at 20.)

12          Accordingly, the court concludes that defendants have not satisfied their burden to

13  demonstrate a change in factual circumstances that would warrant relief under Rule 60(b)(5)

14  based upon the evidence they have presented of the rather obvious proposition that homeless

15  encampments can pose a fire risk.[15]

16                              iii.     Criminal Activity

17          Defendants next argue that the encampments constructed by homeless individuals in

18  Chico have resulted in criminal activity.  (Doc. No. 213 at 20–21.)  Defendants provide no

19  argument as to how this is a significant change of fact that would warrant granting relief from the

20  Settlement Agreement they entered into, nor have they presented evidence showing that the level

21  of crime in Chico has changed since their entry into that agreement.  Even if the court were to

22

23  [15]  Defendants also ask the court to take judicial notice of two incident reports regarding the 2024
    Park Fire to demonstrate the danger of singular fires.  (Doc. Nos 218 at 6; 218-2 at 1–2.)
24  Defendants have made no showing that these documents are relevant to the court's analysis of
    whether there has been a significant change in factual circumstances that would warrant relieving
25  them of the obligations they voluntarily undertook in entering the parties' Settlement Agreement.
    The lack of such a showing suggests the court should not take judicial notice of the incident
26  reports.  *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, No. 1:17-cv-01207-DAD-
    BAM, 2019 WL 1400093, at *4 (E.D. Cal. Mar. 28, 2019) (declining to take judicial notice of
27  document that is irrelevant to deciding the matter at issue).  Accordingly, the court will deny
    defendants' request for judicial notice.
28

1    conclude with no basis that the amount of crime now occurring was unanticipated, defendants

2    have failed to demonstrate that the extent of crime in encampments has changed in such a way

3    that it has made complying with the Settlement Agreement they entered into "substantially more

4    onerous, unworkable, or detrimental to the public interest." *Rosen*, 984 F.3d at 743 (internal

5    quotation marks omitted) (quoting *Rufo*, 502 U.S. at 384).  Accordingly, defendants have not met

6    their burden of demonstrating that the presence of criminal activity in Chico constitutes a changed

7    circumstance warranting relief under Rule 60(b)(5).

8                                   iv.    Public Health

9          Defendants argue that encampments pose a danger to the ecosystem and to public health

10   due to the trash and debris that can be left behind as well as pollution from that trash and human

11   waste.  (Doc. No. 213 at 21–22.)  Plaintiffs counter that defendants' declarations in support of its

12   pending motion indicate that the amount of trash and debris cleared from encampments has

13   decreased substantially this year with the parties' Settlement Agreement in place.  (Doc. No. 216

14   at 20.)  Defendants reply that it is irrelevant that the amount of trash removed has decreased over

15   time when they still must remove large amounts of trash when clearing homeless encampments.

16   (Doc. No. 218 at 13.)

17         Defendants do not provide any argument or evidence as to how a quantified number of

18   pounds of trash removed from encampment sites constitutes an unanticipated change in factual

19   circumstances.  Without evidence as to the amount of waste or worker time involved in clearing

20   encampments prior to the parties' execution of their Settlement Agreement or what was

21   anticipated at the time the agreement was entered into, the court cannot determine that a change in

22   factual circumstances has occurred since the execution of the Settlement Agreement.  Contrary to

23   defendants' implicit argument that conditions have worsened, it appears from defendants'

24   declarations that the amount of trash removed may have actually decreased over time, indicating

25   that the Settlement Agreement may be having a positive effect on public health in Chico.  (*See*

26   Doc. No. 213 at 42) (stating that in 2022 the City of Chico cleared 539 tons of trash from

27   "homeless encampments"); (Doc. No. 218 at 13) (estimating that the amount of trash removed

28   this year will be approximately 256 tons); *see also Coleman*, 922 F. Supp. 2d at 1044 (finding, in

1   the context of an injunction, that positive changes reflected the success of the injunction and did

2   not provide a basis for its vacatur).

3        The court therefore concludes that defendants have not demonstrated a significant change

4   in factual circumstances regarding the public health impact of encampments which would warrant

5   relief under Rule 60(b)(5).

6                            v.    Executive Order

7        Defendants argue that an executive order issued by Governor Newsom directing local

8   governments to prioritize "humanely remov[ing] encampments from public spaces" constitutes a

9   change in factual circumstances that warrants them being relieved of their obligations under their

10  Settlement Agreement.[16]  (Doc. No. 213.)  Plaintiffs contend that the governor's order is not

11  binding on defendants and that the order itself recognizes that, when dispersing encampments,

12  cities should "prioritize offers of shelter and services as a first step[.]"  (Doc. Nos. 214 at 5; 216

13  at 19.)  In reply, defendants state, without authority, that the executive order "mandates the

14  clearing of homeless encampments" and that defendants risk losing state funding if they do not

15  comply.  (Doc. No. 218 at 15.)

16       Defendants' arguments on this point are not persuasive.  Executive Order N-1-24 on its

17  face merely "encouraged" local governments to adopt certain policies and, as plaintiffs note, it

18  recognizes that offers of shelter and services "best respect the dignity of every Californian and

19  provide meaningful paths to ending homelessness."  (Doc. No. 214 at 5.)  Therefore, defendants'

20  compliance with their Settlement Agreement does not appear to conflict with the order.

21  Accordingly, the court concludes that defendants have not satisfied their burden to demonstrate

22  that the executive order constitutes a significant change in factual circumstances that warrants

23  relief under Rule 60(b)(5).

24  /////

25  _____

26  [16]  Defendants request that the court take judicial notice of Governor Newsom's Executive Order
    N-1-24.  (Doc. No. 214.)  The court will grant defendants' request because Executive Order N-1-
27  24 is an undisputed matter of public record and therefore is properly subject to judicial notice.
    *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 n.5 (9th Cir. 2018) (taking
28  judicial notice of "undisputed matters of public record").

1    Because defendants have not demonstrated significant changes in factual circumstances

2    after their entry into the Settlement Agreement, they have not met their burden under Rule

3    60(b)(5) to show changes that would warrant modification of the Settlement Agreement.

4    Accordingly, the court will deny defendants' motion for relief from the Settlement Agreement

5    made pursuant to the equitable provision of Rule 60(b)(5).[17]

6    **D.    Rule 60(b)(6)**

7    Defendants alternatively move for relief from the Settlement Agreement under Federal

8    Rule of Civil Procedure 60(b)(6).  (Doc. No. 213 at 25.)  In this regard, defendants argue that the

9    change in law brought about by the Supreme Court's decision in *Grants Pass* constitutes an

10    extraordinary circumstance which warrants relief.  (*Id.*)  Plaintiffs argue that the court should not

11    grant relief under Rule 60(b)(6) because an intervening change in the law does not by itself

12    constitute extraordinary circumstances.  (Doc. No. 216 at 27–28.)[18]

13    Federal Rule of Civil Procedure 60(b)(6) allows for the modification of a court order for

14    "any other reason that justifies relief" besides those already listed elsewhere in the Rule.  Fed. R.

15    _____

16    [17]  The court need not consider whether the modification proposed by defendants, namely
vacating all provisions in the Settlement Agreement, is suitably tailored because defendants have
17    not shown a significant change in circumstances that would warrant any modification.  *See
Topanga Press, Inc. v. City of Los Angeles*, 409 F. Supp. 2d 1188, 1194 (C.D. Cal. 2005)
18    (denying motion to vacate a consent decree because no significant change in circumstances was
shown without considering tailoring).  The court however notes that it is not evident from
19    defendants' briefing why the extreme modification sought would be suitably tailored to this
particular case.  *See Flores v. Lynch*, 828 F.3d 898, 910 (9th Cir. 2016) (noting that a
20    modification of an exemption for an entire category of people from a class in a settlement
agreement is not suitably tailored when there were less intrusive means of modifying the
21    settlement).

22

23    [18]  Plaintiffs also argue that relief is not available to defendants under Rule 60(b)(6) because Rule
60(b)(5) provides the appropriate framework for determining whether relief is warranted due to a
24    change in law.  (Doc. No. 216 at 27); *see also Kemp v. United States*, 596 U.S. 528, 533 (2022);
*see also Bynoe*, 966 F.3d at 979 ("A party seeking relief under Rule 60(b)(6) must satisfy three
25    requirements.  The motion cannot be premised on another ground delineated in the rule[]") (citing
*Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988)).  Nevertheless, the
26    court will consider whether defendants have demonstrated that extraordinary circumstances exist
that justify relief under Rule 60(b)(6).  *See Jones v. Eller*, Nos. 17-cv-00099-JLS-PLA, 14-cv-
27    00936-JLS-PLA, 2018 WL 1801254, at *4 (C.D. Cal. Jan. 22, 2018) (evaluating a settlement
28    agreement over which the court retained jurisdiction under both Rules 60(b)(5) and 60(b)(6)).

1  Civ. P. 60(b)(6). "The decision to grant Rule 60(b)(6) relief must be made on a case-by-case

2  inquiry that requires the trial court to 'intensively balance' numerous factors, including the

3  competing policies of the finality of judgments and the incessant command of the court's

4  conscience that justice be done in light of all the facts." *Phelps v. Alameida*, 569 F.3d 1120, 1133

5  (9th Cir. 2009). "The Ninth Circuit has distilled the extraordinary-circumstances requirement for

6  change-of-law-based Rule 60(b)(6) motions into a non-exhaustive list of six factors, considered

7  flexibly and in their totality." *FTC v. Ivy Cap., Inc.*, 340 F.R.D. 602, 606 (D. Nev. 2022) (quoting

8  *Bynoe v. Baca*, 966 F.3d 972, 983 (9th Cir. 2020)). Those six factors are: "(1) the nature of the

9  legal change, including whether the change in law resolved an unsettled legal question; (2)

10  whether the movant exercised diligence in pursuing reconsideration of his or her claim; (3) the

11  parties' reliance interests in the finality of the judgment; (4) the delay between the finality of the

12  judgment and the Rule 60(b)(6) motion; (5) the relationship between the change in law and the

13  challenged judgment; and (6) whether there are concerns of comity that would be disturbed by

14  reopening a case." *Bynoe*, 966 F.3d at 983. "Generally, however, a change in decisional law

15  does not constitute an extraordinary circumstance justifying relief." *SEC v. Muroff*, No. 1:17-cv-

16  00180-EJL, 2017 WL 10768468, at *5 (D. Idaho Nov. 16, 2017) (citing *Gonzalez*, 545 U.S. at

17  525).

18        The court first considers the first and fifth factors identified by the Ninth Circuit in *Bynoe*,

19  namely the nature of the intervening change in law and its relationship to the challenged

20  judgment. As the Ninth Circuit has recognized, the Supreme Court arriving at a different result

21  than the then-prevailing precedent in this circuit does not typically constitute extraordinary

22  circumstances. *Hewitt*, 68 F.4th at 468 (quoting *Gonzalez*, 545 U.S. at 536–37). In this case, the

23  parties' Settlement Agreement was not even explicitly predicated on any specific decisional law.

24  *Cf. Henson v. Fidelity Nat'l Fin., Inc.*, 943 F.3d 434, 447–48 (9th Cir. 2019) (finding that, when

25  the plaintiffs had voluntarily dismissed the action to pursue an interlocutory appeal in explicit

26  reliance on later overturned Ninth Circuit precedent regarding appellate jurisdiction, the change in

27  law favored the plaintiffs' motion to reopen the case). Defendants knew, or should have known,

28  that the appeal to the Ninth Circuit in *Grants Pass* was pending at the time they entered the

1   Settlement Agreement, but chose to negotiate a resolution of this case despite the chance that the

2   law would develop favorably for them. *Muroff*, 2017 WL 10768468, at *5 (finding no

3   extraordinary circumstances where the parties should have known that an appeal which may have

4   an impact on the amount of relief available was pending when they agreed to settle); *see also FTC*

5   *v. Apex Cap. Grp.*, No. 18-cv-09573-JFW-JPR, 2021 WL 7707269, at *4 (C.D. Cal. Sept. 3,

6   2021) (noting that the defendants were not entitled to relief under Rule 60(b)(6) based on a

7   change in law when the defendants were aware of the pending challenges that created that change

8   in law). Consideration of these factors thus weighs against the granting of the requested relief to

9   defendants.

10       Consideration of the second factor, namely the diligence of defendants in seeking relief

11   from the Settlement Agreement, also weighs against defendants. Changes in law are "all the less

12   extraordinary where a party has displayed a lack of diligence—in particular by (a) failing to

13   raise[] [the] issue before the district court, (b) declining to lodge an appeal or file[] a petition for

14   rehearing, or (c) neglecting to seek certiorari review." *Hewitt*, 68 F.4th at 469 (alterations in

15   original) (internal quotation marks omitted) (quoting *Gonzalez*, 545 U.S. at 536–37). In this case,

16   defendants chose not to pursue an interlocutory appeal of the district court's preliminary

17   injunction order and instead negotiated the Settlement Agreement, showing a lack of diligence in

18   pursuing the legal theory upon which they now base their motion for relief. *Hewitt*, 68 F.4th at

19   469 (finding a lack of diligence where the defendant did not appeal the original judgment or take

20   any further steps in the district court for reconsideration of that judgment). Further, defendants

21   chose not to pursue an appeal when other municipalities subject to similar injunctions—such as

22   the City of Grants Pass—were actively doing so, which certainly weighs against the availability

23   of relief under Rule 60(b)(6). *Gonzalez*, 545 U.S. at 537–38 (holding that Rule 60(b) relief was

24   not available to a movant who had failed to appeal an adverse ruling when another party to the

25   same judgment had appealed and won reversal) (citing *Ackermann v. United States*, 340 U.S. 193,

26   195–98 (1950)); *see also Johnson v. City of Grants Pass*, 50 F.4th 787, 797 (9th Cir. 2022)

27   (discussing the permanent injunction from which the City of Grants Pass sought relief on appeal).

28   "When a party makes a conscious and informed choice of litigation strategy, [that party] cannot

27

1    seek extraordinary relief [under Rule 60(b)(6)] merely because his assessment of the

2    consequences was incorrect." *Apex Cap. Grp.*, 2021 WL 7707269, at *4 (alterations in original)

3    (internal quotation marks omitted).  Accordingly, the court concludes that the diligence factor

4    weighs against granting defendants relief under Rule 60(b)(6).

5            Finally, the court considers the third and fourth factors,[19] namely the reliance by the

6    parties on the finality of the judgment and the delay in seeking reconsideration.  The Ninth Circuit

7    has recognized these factors as "additional considerations relevant to balancing the competing

8    policies of the finality of judgments and the incessant command of the court's conscience that

9    justice be done in light of all the facts[.]"  *Hewitt*, 68 F.4th at 469 (internal quotation marks

10   omitted) (quoting *Henson*, 943 F.3d at 444–45).  Neither party has addressed whether they have

11   relied on the terms of the Settlement Agreement, though the court notes that the fact that plaintiffs

12   sought relief from the enforcement of the Anti-Camping Ordinances from the commencement of

13   the case indicates the material importance of that relief to plaintiffs.  (Doc. No. 34 at ¶¶ 207–09);

14   *see also Planned Parenthood Fed'n of Am., Inc.*, 704 F. Supp. 3d at 1037–38 (finding that the

15   plaintiffs had a material reliance interest on injunctive relief when they had sought that relief from

16   the outset).  Neither party has addressed the delay between their entry into the Settlement

17   Agreement and the Supreme Court's decision in *Grants Pass.*[20]  Therefore, the court weighs these

18   factors as neutral.

19           Because the *Bynoe* factors in total weigh against providing relief to defendants when

20   considered in their totality, the court concludes that the change in law represented by the decision

21   in *Grants Pass* also would not warrant the granting of defendants' request for relief under Rule

22   60(b)(6), if applicable.  Accordingly, the court will deny defendants' motion for relief from the

23   Settlement Agreement brought pursuant to Rule 60(b)(6).

24   _____

25   [19]  The court does not consider the comity factor because the relief sought by defendants here
     would not reopen this case.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
26   704 F. Supp. 3d 1027, 1037 n.11 (N.D. Cal. 2023).

27   [20]  The court acknowledges that there was only a two-month period that elapsed between the
     issuance of the Supreme Court's decision in *Grants Pass* and the defendants' filing of the pending
28   motion.

**CONCLUSION**

For the reasons explained above, the court will deny defendants' motion for relief from final judgment (Doc. Nos. 209, 213) in its entirety based upon the showing made at this time in support of their motion.

IT IS SO ORDERED.

Dated: __**March 31, 2025**__

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

29