LEGAL SERVICES OF NORTHERN CALIFORNIA
CORY TURNER, SBN # 285235
E-mail: cturner@lsnc.net
MATTHEW K. BOWEN, SBN # 351171
E-mail: mbowen@lsnc.net
541 Normal Avenue
Chico, CA 95928
Telephone: (530) 345-9491
Fax: (530) 345-6913

SARAH J. STEINHEIMER, SBN # 267552
E-mail: ssteinheimer@lsnc.net
STEPHEN E. GOLDBERG, SBN # 173499
E-mail: sgoldberg@lsnc.net
KATHERINE WARDRIP, SBN # 306387
E-mail: kwardrip@lsnc.net
517 12th Street
Sacramento, CA 95928
Telephone: (916) 551-2150
Fax: (916) 551-2195

WESTERN CENTER ON LAW & POVERTY
ROBERT D. NEWMAN, SBN # 86534
Email: rnewman@wclp.org
RICHARD ROTHSCHILD, SBN # 67356
Email: rrothschild@wclp.org
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
Telephone: (213) 487-7211
Fax: (213) 487-0242

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| **BOBBY WARREN; ANDY LAMBACH; JONATHON WILLIAMS; MICHAEL SAMUELSON; TRACY MILLER; TONA PETERSEN; CAROL BETH THOMPSON; CHRISTA STEVENS,**<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF CHICO; CITY OF CHICO POLICE DEPARTMENT**,<br><br>Defendants. | Case No. 2:21-cv-00640-DAD-AC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO MODIFY AND/OR INTERPRET SETTLEMENT AGREEMENT**<br><br><u>**Hearing on Motion:**</u><br>Date: October 15, 2025<br>Time: 1:30 p.m.<br>Courtroom: 24 / 8th Floor<br>Judge: Hon. Carolyn K. Delaney |

1

**Table of Contents**

I.    INTRODUCTION ................................................................................................. 4

II.    PROCEDURAL HISTORY.................................................................................. 5

III.    ARGUMENT ....................................................................................................... 7

   A.    Defendants Seek Modifications to the Settlement That Can Only Be Made by Agreement Between the Parties.................................................................................................. 7

   B.    There Is No Legal or Factual Basis for the City's Proposed Modification to Eliminate the Notice, Shelter Referral, and Personal Property Procedures on Thousands of Acres of Public Property... 9

     1.    Defendants already asked the court to be relieved from the Settlement for the same reasons it now seeks this modification and the District Court denied that request.................................... 10

     2.    Defendants' reliance on the impossibility doctrine is misplaced because they are able to comply with the Settlement and there are no intervening and unforeseen events. .................... 12

     3.    Defendants' requested modification to eliminate the personal property procedures on all properties in its "no camping enforcement" map violates the 4th and 14th Amendments.......... 14

     4.    Defendants' conduct undermines their allegation that it is necessary to suspend Homeless Persons' rights on thousands of acres of public property. ......................................................... 15

     5.    Defendants' proposed modification is not linked to their purported concern about wildfire.... 17

   C.    Defendants' Proposed Modification to Eliminate All of the Settlement's Procedures on Public Property After an Enforcement Should Be Denied Because There Is No Legal or Factual Basis for It ................................................................................................................................... 18

   D.    Defendants' Allegations About the Definition of Public Properties Are Not True and Their Requested Change Is Not Needed.................................................................................. 20

   E.    There Is No Reason to Strike "Analogous Provision(S)" From the Definition of Anti-Camping Ordinances and Regulations. .................................................................................. 21

IV.    CONCLUSION.................................................................................................... 24

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY . . . (*Warren, et al. v. Chico*)

## <u>Table of Authorities</u>

**Cases**

*AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807 (1990) ........................................................................ 8

*Alameda Cnty. Flood Control & Water Conservation Dist. v. Dep't of Water Res.*, 213 Cal. App. 4th 1163 (2013) ........................................................................ 23

*Autry v. Republic Prods.*, 30 Cal. 2d 144 (1947) ........................................................................ 12

*Blatz Brewing Co. v. Collins*, 69 Cal. App. 2d 639 (1945) ........................................................................ 22

*Botefur v. City of Eagle Point, Or.*, 7 F.3d 152 (9th Cir. 1993) ........................................................................ 8

*Bustamante v. Intuit, Inc.,* 141 Cal. App. 4th 199 (2006) ........................................................................ 22

*Cobine v. City of Eureka*, 2016 WL 1730084 (N.D. Cal. 2016) ........................................................................ 14

*Daniels v. Aguillera*, 2019 WL 95510, *3 (E.D. Cal.  Jan. 3, 2019) ........................................................................ 8

*Dore v. Arnold Worldwide, Inc.*, 39 Cal.4th 384 (2006) ........................................................................ 23

*Evans v. Y's Fries, Inc.*, 2011 WL 189978 (E.D. Cal. May 19, 2011) ........................................................................ 8

*Guinn v. Sturm*, 2013 WL 87955 (E.D. Cal March 7, 2013) ........................................................................ 8

*Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013) ........................................................................ 8

*KB Salt Lake III, LLC v. Fitness Internat., LLC*, 95 Cal. App. 5th 1032 (2023) ........................................................................ 12

*Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012) ........................................................................ 14, 15

*Loftus v. Loftus*, 753 F.Appx 461 (9th Cir. 2019) ........................................................................ 8

*Martin v. City of Honolulu*, 2015 WL 5826822, *7 (D. Haw. 2015) ........................................................................ 14

*Midwest Motor Supply Co. v. Superior Court*, 56 Cal. App. 5th 702 (2020) ........................................................................ 7

*Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058 (2005) ........................................................................ 22

*Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 141 Cal. App. 4th 969 (2006) ........................................................................ 22

*Osumi v. Sutton*, 151 Cal. App. 4th 1355 (2007) ........................................................................ 8

*Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377 (2005) ........................................................................ 23

*San Mateo Cmty. Coll. Dist. v. Half Moon Bay Ltd. P'ship*, 65 Cal. App. 4th 401 (1998) ........................................................................ 12

*Shipp v. Schaaf*, 379 F.Supp.3d. 1033, 1038 (N.D. Cal. 2019) ........................................................................ 14

*Wilcox v. Arpaio*, 753 F.3d 872 (9th Cir. 2014) ........................................................................ 8

**Statutes**

Cal. Civ. Code § 1639 ........................................................................ 8

Cal. Civ. Code § 3534 ........................................................................ 22

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 60(b) ........................................................................ passim

Fed. R. Civ. P. 60(b)(1) ........................................................................ 7

Fed. R. Civ. P. 60(b)(2) ........................................................................ 7

Fed. R. Civ. P. 60(b)(3) ........................................................................ 7

Fed. R. Civ. P. 60(b)(4) ........................................................................ 6, 7

Fed. R. Civ. P. 60(b)(5) ........................................................................ 5, 6, 7, 11

Fed. R. Civ. P. 60(b)(6) ........................................................................ 5, 7

Fed. R. Civ. P. 60(c)(1) ........................................................................ 11

**Secondary Sources**

23 Cal.Jur. 755, § 130 ........................................................................ 22

# I.  **INTRODUCTION**

Defendants bring their third motion in the past fourteen months asking this court to allow them to modify the Settlement the parties negotiated and voluntarily entered into to resolve this lawsuit. They bring this motion while their second motion is still pending. The current motion recycles many of the arguments that failed in round one, and yet Defendants seek nearly the same outcome they sought in that first motion, which is to be relieved from their obligations to ensure there is sufficient shelter and Homeless Persons receive notice, offers of shelter, and help getting to that shelter before they risk being arrested for violating Chico's Anti-Camping Ordinances.

In round three, Defendants ask the court to approve their attempt to rewrite the Settlement in four ways. Defendants' first two proposed modifications, combined, would amount to Homeless Persons in Chico shortly losing all rights to notice, a referral to shelter, and transportation to shelter before being arrested for staying on Public Properties. Defendants fail to provide a legal basis for these changes and ask the court to approve their changes despite the plain language of the Settlement, which says "[a]ny alteration, change, or modification of or to this Agreement must be made by written instrument executed by each of the Parties in order to become effective." Settl. at 27:25-26, ECF No. 153-1.

Defendants' stated reason for wanting these radical changes to the Settlement is risk of wildfire. Plaintiffs, one of whom is a 2018 Camp Fire survivor, do not dispute the risk fires have on their community and share Defendants' concerns about fire hazards. As such, Plaintiffs' counsel engaged in discussions with Defendants when asked to do so in April and May 2025. Unfortunately, these discussions broke down in June 2025, when Defendants, after retaining new counsel, made clear through a June 16, 2025, letter that their goal was to walk away from all of their obligations in the Settlement. Defendants asserted, for the first time, that the Settlement they had negotiated, jointly drafted, and voluntarily entered into was void and they planned to file "the appropriate motion." True to their word, Defendants filed a Motion on August 14, 2025, asking the District Court to find the entire settlement void and relieve them from the Settlement. That motion is pending.

The best way to get Chico community members who are living outside out of fire prone areas is to help them move indoors. Through the Settlement, Defendants have developed the tools and infrastructure to do this. The Pallet Shelter, a low-barrier and non-congregate shelter, has 28 open spaces

tonight. Defendants have an Outreach and Engagement team who can conduct outreach to people living outside, talk to them about shelter, and help them move into shelter. Rather than utilizing and improving these resources to address the fire risk they complain about, Defendants have spent their time over the past fourteen months filing successive motions seeking to dismantle the Settlement entirely.

Plaintiffs Bobby Warren, Michael Samuelson, Tracy Miller, Tona Peterson, Carol Beth Thompson, and Christa Stevens once again oppose Defendants' request to modify the Settlement and respectfully ask the court to deny Defendants requested modifications because, as discussed below, there is no legal basis to allow Defendants to unilaterally rewrite the Settlement.


## II. <u>PROCEDURAL HISTORY</u>

The parties resolved Plaintiffs' lawsuit against Defendants through a Settlement Agreement that they negotiated through seven court-overseen settlement conferences. Settlement (Settl.) at 2:26-28, ECF. No. 153-1. The parties "voluntarily and knowingly" entered into the Settlement. *Id.* at 27:6-7. The Court retained jurisdiction to enforce the Settlement for a period of five years. Stipulated Order Re: Settlement, Dismissal, and Continuing Jurisdiction (Stip. Order) at 3:19-21, ECF. No. 153. The five-year settlement period ends in less than 16 months - on January 14, 2027. *Id.*

Just over a year ago, Defendants filed their first motion seeking modification of the Settlement. First Rule 60(b) Motion, ECF. No. 213. Defendants argued they should be relieved from the Settlement under all three grounds for relief under Rule 60(b)(5) as well as 60(b)(6). *Id.* at 2:14-3:14, ECF No. 213. In a 29-page order, the Court denied Defendants' motion in its entirety. Order Denying Defendants' Motion for Relief from Final Judgment (First Rule 60(b) Order), ECF. No. 226. Defendants did not appeal this order.

Days after the Court's March 31, 2025, order denying the First Rule 60(b) Motion, Defendants' counsel contacted Plaintiffs' counsel and asked to meet about "the clearing of areas viewed as particularly sensitive from a public health and safety perspective." Declaration of Cory Turner in Support of Plaintiffs Opposition to Defendants' Motion to Modify and/or Interpret Settlement Agreement ("Turner Decl.") at 2:9-11. Plaintiffs' counsel and Defendants met on April 9, 2025. *Id.* at 2:12-15. Defendants did not make any proposed changes to the Settlement in this meeting but indicated

they wanted to discuss some changes based on concerns about wildfire. Turner Decl. at 2:12-15. Plaintiffs' counsel did not hear back from Defendants until May when they asked for another meeting. *Id.* at 2:16-17. Plaintiffs' counsel met with Defendants again on May 7, and at this meeting Defendants presented their "no camping enforcement" map and proposal. *Id.* at 2:17-23. The next day, Defendants sent a letter with the map confirming their proposal to implement a no camping ban from May to November on public property they allege are "high-risk fire areas." *Id.* at 2:23-24. The parties met again on May 15, 2025. *Id.* at 2:25-26. At this meeting, Defendants stated they would be in contact after the City Council meeting on May 20 and the parties set a follow up meeting for May 27, 2025. *Id.* at 2:26-3:1. The purpose of this meeting was to discuss the City's alleged concerns about wildfire and its proposed "no camping enforcement" map. *Id.* at 2:27-3:1. Defendants canceled this meeting, and Plaintiffs' counsel did not hear from them until a month later. *Id.* at 3:1-4.

When Plaintiffs' counsel heard from Defendants again on June 16, 2025, Defendants no longer wished to only discuss their "no camping enforcement" map. Defendants, now represented by new counsel, sent Plaintiffs' counsel a letter that identified five additional issues, including their assertion that the entire Settlement was void. *See* June 16, 2025, letter attached as Exhibit C to Scholar Decl., ECF. No. 243-5. The parties met on June 24, 2025, over video conference. The parties attended a Settlement Conference with this Court on July 16, 2025, and did not reach any agreements. Scholar Decl. at 2:22-23, ECF. No. 243-5.

Defendants filed their second motion for relief from the Settlement on August 14, 2025, and set a hearing with District Court Judge Drozd. Defendants' Second Rule Rule(b) Motion, ECF. No. 239. In their second Rule 60(b) Motion, Defendants argue the entire Settlement is void and they should be relieved from it as well as the Court's order retaining jurisdiction until January 14, 2027, per Rule 60(b)(4) and (5). *Id.* Plaintiffs opposed this motion, and the hearing is October 6, 2025. Plaintiffs' Opposition, ECF. No. 240.

Defendants now file their third motion seeking to change the Settlement. Third Mot., ECF. No. 243. Plaintiffs oppose Defendants' third attempt to be relieved from the Settlement.

### III. ARGUMENT

**A.    Defendants Seek Modifications to the Settlement That Can Only Be Made by Agreement Between the Parties.**

Defendants assert that the Settlement allows this court to "modify and interpret" the Settlement as part of the Dispute Resolution process and then seek modifications of the Settlement by a court order, over the opposition of Plaintiffs. Third Mot. at 8:1-2, ECF. No. 243. Defendants appear to suggest that the Dispute Resolution process in Paragraph 16 of the Settlement allows them to ask the court to unilaterally approve any and all modifications they desire, even when there is no legal basis for the modification. Defendants are wrong. While the Dispute Resolution Process states the court will retain jurisdiction over the case for five years to oversee implementation, enforcement, and/or modification, this does not provide a legal basis for modification. Settl. at 21:23-26, ECF. No. 153-1. Rather, it provides the process to seek modification when there is a legal basis to do so.

Defendants' attempt to read the Dispute Resolution process as providing a legal basis[1] to make modifications that they desire, directly contradicts Paragraph 23 of the Settlement, which states "[t]his Agreement Constitutes the entire agreement between Plaintiffs and the City regarding the matters discussed herein" and that "[a]ny alteration, change, or modification of or to this Agreement must be made by written instrument executed by each of the Parties in order to become effective." Settl. at 27:25-26, ECF No. 153-1. *See also Midwest Motor Supply Co. v. Superior Court*, 56 Cal. App. 5th 702, 710 (2020) ("Modification is a change in the obligation by a modifying agreement, which requires mutual assent, and must ordinarily be supported by consideration.") (internal quotation and citation omitted).

Under the principles of state contract law, the intent and language of the contract control its interpretation and enforcement, which, here, does not authorize approval of modification by court order just because Defendants desire different terms. "The interpretation of a settlement agreement is

---

[1] Notably, Defendants do not bring this motion under Federal Rule of Civil Procedure 60(b), which can be a legal basis for modification, as this rule allows a court to relieve a party from a final order if certain elements are met. *See* Fed. R. Civ. P. 60(b)(1)-(6). As the Court knows, Defendants have previously filed two Rule 60(b) motions seeking relief from the Settlement and Order Retaining Jurisdiction. The first was denied on March 31, 2025, and the second is pending. *See* First Rule 60(b) Order, ECF. No. 226 and Second Rule 60(b) Mot., ECF. No. 239.

governed by principles of state contract law." *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993); *accord Loftus v. Loftus*, 753 F.Appx 461, 461 (9th Cir. 2019). "This is so even where a federal cause of action is 'settled' or 'released.'" *Botefur*, 7 F.3d at 156; *accord Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013); *see also Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014) ("The parties rightly agree that state contract law governs whether they reached an enforceable agreement settling the federal and state law claims alleged in Plaintiffs' complaint.")

"[I]t is an established principle of California contract law that contracts are to be interpreted according to the objective intent of the parties." *Daniels v. Aguillera*, 2019 WL 95510, *3 (E.D. Cal. Jan. 3, 2019) (interpreting settlement agreement in prior lawsuit). Pursuant to California law, a "court must interpret the contract by examining the contract's language, the parties' clear intentions as expressed in the contract and the circumstances under which the parties contracted." *Evans v. Y's Fries, Inc.*, 2011 WL 189978, *2 (E.D. Cal. May 19, 2011) (*citing AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (1990)).

Where, as here, the settlement agreement is reduced to writing, "the intention of the parties is to be ascertained from the writing alone, if possible[.]" See *Loftus*, 753 F. App'x at 461 (citing Cal. Civ. Code § 1639); see also *Evans*, 2011 WL 189978, *2 ("The parties' intent is to be inferred, if possible, solely from the written provisions in the contract."). Moreover, "California has a strong policy in favor of enforcing settlement agreements." *Guinn v. Sturm*, 2013 WL 87955, *2 (E.D. Cal March 7, 2013) (citing *Osumi v. Sutton*, 151 Cal. App. 4th 1355, 1357 (2007)).

Here, the Defendants seek four modifications, effectively asking the Court to rewrite the Settlement on Defendants' terms. In doing so Defendants completely ignore that the changes they seek may only be made by agreement of the parties per Paragraph 23 of the Settlement. Settl. at 27:25-26, ECF. No. 153-1 ("Any alteration, change or modification must be made by written instrument executed by each of the Parties in order to become effective.") As Defendants acknowledge, the parties have been unable to reach agreement on Defendants' proposed modification. Scholar Decl., at 2:22-3:3, ECF No. 243. As none of Defendant's desired alterations, changes or modifications to the Settlement Agreement are pursuant to a written instrument executed by Plaintiffs or even Defendants themselves, none of them can take effect.

1

2

3

**B.**    **There Is No Legal or Factual Basis for the City's Proposed Modification to Eliminate the Notice, Shelter Referral, and Personal Property Procedures on Thousands of Acres of Public Property.**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Defendants' first requested modification is to permanently suspend Paragraphs 9, 10, and 11 of the Settlement Agreement on the thousands of acres of Public Property on its "no camping enforcement" map. Third Mot. at 8:21-10:9, ECF No. 243; Standridge Decl. at Ex. A, ECF No. 243-1. Paragraph 9 states Defendants "may only require Homeless Persons to relocate from Public Property and Enforce the Anti-Camping Ordinances in accordance with the terms of this Agreement." Settl. at 11:2-4, ECF No. 151-1. Paragraph 10 governs the process of ensuring there are sufficient shelter spaces for the number of Homeless Persons subject to an enforcement and providing notice, a referral to Appropriate shelter, and offer of transportation to shelter before Defendants may arrest a Homeless Person for violating their Anti-Camping Ordinances on Public Property. *Id.* at 11:5-16:11. Paragraph 11 is the process Defendants must follow when they intend to seize any Homeless Persons' personal property, and includes a 72-hour pre-removal notice, storage of property for 90 days, and a post-removal notice that informs a Homeless Person where the property is stored. *Id.* at 16:12-18:20. Certain property does not have to be stored, such as property that presents a health and safety risk and contraband. *Id.* at 19:19-20:2. Defendants may relocate, but not remove or destroy, property on Public Property without the pre-removal notice and storage procedures in certain situations, including when the property substantially obstructs or prevents Defendants' performance of construction, maintenance, and related operations. *Id.* at 18:21-19:18.

20

21

22

23

Per Defendants' proposal, after an initial expedited enforcement with a truncated notice to Homeless Persons, all of the procedures in paragraphs 10 and 11 will be eliminated for the remainder of the life of the Settlement on the Public Property in Defendants' "no camping enforcement" map. Third Mot. at 8:21-10:9, ECF. No. 243.

24

25

26

27

28

Defendants' proposal would allow them to conduct the initial expedited enforcement on the "no camping enforcement" map properties all at one time. Homeless Persons subjected to this initial expedited enforcement would not get the 7-day notice and assessment and referral to shelter, would not get transportation to shelter, and would not have the right to have their personal property stored upon leaving the Public Property. Third Mot. at 8:21-10:9, ECF No. 243. Rather, within the 72-hour notice

9

period, Homeless Persons would be on their own to find a place to relocate to and will face arrest if they are unable to. A Homeless Person will lose all of their belongings, which Defendants will throw away, if the Homeless Person is not able to remove their belongings from Public Property. Then, after this initial enforcement, none of the procedures in Paragraphs 10 and 11 will apply.[2] *Id.*

There is no legal basis for the City's requested change. Just six months ago, the District Court denied the Defendants' request for relief from the Settlement due to Defendants' numerous claims, which included that that the pre-enforcement procedures were "unworkable" and a fire hazard. First Rule 60(b) Order at 19:9-22:15, ECF. No. 226.  Here, the City recycles these same arguments and provides no legal basis to support their request for modification other than a misplaced reliance on the doctrine of impossibility. And, the parties have not agreed to this modification. The City's proposed modification as to Paragraph 11 also fails because it would result in violations of Homeless Persons' rights under the Fourth and Fourteenth Amendments of the United Sates Constitution.

Defendants also fail to demonstrate that their proposed modification is needed to address its alleged concerns about wildfire, when Defendants have not prioritized enforcement of encampments in areas it deems high risk for fire, have not changed its policies to allow more people to move out of high fires areas and enter the Pallet Shelter, and propose a modification that goes well beyond addressing fire concerns.

### 1. Defendants already asked the court to be relieved from the Settlement for the same reasons it now seeks this modification and the District Court denied that request.

Defendants allege, with only conclusory statements, that the pre-enforcement procedures in Paragraphs 10 and 11 "impose[e] inordinate, impractical burdens on the City's ability to clear public

---

[2] Defendants' proposed modification in Section III(B) is significantly different than what they proposed through the Dispute Resolution Process. As one example, Defendants previously proposed that the "no-camping enforcement" map would be in place from May – November and they now propose a ban that is not time limited in any way. *See* May 8, 2025, and June 16, 2025, letters attached as Exhibit A and C to Declaration of Ronald Scholar, ECF. No. 243-5.  In another example, Defendants' prior proposal did not include a suspension of the rights to a referral to shelter and the personal property procedures in the initial enforcement. As such, Defendants did not follow the Settlement's Paragraph 16 Dispute Process before filing this motion as Defendants' "requested remedy" is not what it discussed in dispute resolution. Settlement, Par. 16(a) at ECF. No. 153-1 at p. 22:3-8.

10

property to undertake ordinary duties." Third Mot. at 8:5-6, ECF. No. 243. They claim that this purported "inability to enforce its ordinances and undertake fire mitigation has caused wildfire risk areas to proliferate." *Id.* at 10:17-18. If these arguments sound familiar, that is because Defendants made essentially the same arguments in their First Rule 60(b) Motion when they claimed, among other things that, "the Settlement Agreement's preconditions to the City's enforcement of its camping ordinances have proven to be completely unworkable and ineffective;" and that as a result of this unworkable process "illegal and uncontrolled fires" posed a significant risk for the public. First Rule 60(b) Mot. at 2:21-22, 18:1-19:14; ECF No. 213. Defendants even discussed, as they do now, their "particular concern" about Homeless Persons staying in the Lindo Channel and the resulting fire risk. *Id.* at 19:1-12.

As the District Court explained in its March 2025 order, one of Defendants' primary arguments in their First Rule 60(b) Motion was that there has been a significant change in factual circumstances related to the difficulty in enforcing Anti-Camping Ordinances and Regulations" and this change in factual circumstances makes continued application of the Settlement inequitable under Federal Rule of Civil Procedure Rule 60(b)(5). First Rule 60(b) Order at 12: 10-17, ECF. No. 226.  The District Court rejected Defendants' arguments and found that there were no changed factual circumstances, including as to the enforcement process itself and as to fire risk. *Id.* at 21:14-1-3 ("The court therefore finds that the enforcement process itself  . . . [was] anticipated by defendants at the time they voluntarily entered into the Settlement Agreement) and 22:12-15 ("[T]he court concludes that defendants have not satisfied their burden to demonstrate a change in factual circumstances that would warrant relief under Rule 60(b)(5) based upon evidence they have presented of the rather obvious proposition that homeless encampments can pose a fire risk.").

Defendants did not appeal that order. Now, Defendants aim to take a second bite at the apple, notably divorced from the Rule 60(b) rationale this time, and recycle the same arguments rejected by the District Court less than six months ago by repackaging them as a concern about wildfire. In essence, Defendants have filed yet another Rule 60(b)(5) motion arguing it is inequitable for them to have to comply with the Settlement on properties in its "no camping enforcement" map. Defendants are too late. Any such motion "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). A motion based on the same arguments as an earlier motion that was denied is not brought within a reasonable time.

**2.      Defendants' reliance on the impossibility doctrine is misplaced because they are able to comply with the Settlement and there are no intervening and unforeseen events.**

In an attempt to find a legal basis for their proposed modification, they claim that they should be excused from complying with Paragraphs 9, 10 and 11 on the properties in their "no camping enforcement" map per the doctrine of impossibility. Third Mot. at 10:11-18, ECF No. 243. This argument fails because they are complying with the Settlement, proving it is not impossible, and because there are no interning or unforeseen events.

The doctrine of impossibility is a defense to a breach of contract action that can be raised when there are "supervening fortuitous events" which render performance of the contract impossible. *Autry v. Republic Prods.*, 30 Cal. 2d 144, 149 (1947); see also *KB Salt Lake III, LLC v. Fitness Internat., LLC*, 95 Cal. App. 5th 1032, 1055-1059 (2023). "Circumstances that 'may make performance more difficult or costly than contemplated when the agreement was executed do not constitute impossibility.'" *KB Salt Lake III, LLC v. Fitness Internat., LLC*, 95 Cal. App. 5th 1032, 1059 (2023) (citations omitted.) And, a "party cannot 'avoid performance simply because it is more costly than anticipated or results in a loss.'" *KB Salt Lake III, LLC v. Fitness Internat., LLC*, 95 Cal. App. 5th 1032, 1059 (2023) (citations omitted.)

Here, Defendants' argument is that they should be excused from complying with Paragraphs 9, 10 and 11 because in their view, the pre-enforcement and personal property process they agreed to takes too long; some Homeless Persons return to properties after an enforcement and so Homeless Persons continue to stay in areas they have designated as high fire risk; and there are fires in homeless encampments. Third Mot. at 10:10-11:12, ECF No, 243. But, Defendants do not argue they cannot comply with the Settlement. Rather, they argue that they are complying and should not have to. This alone shows that they are entitled to modification under the doctrine of impossibility because they are able to perform the contact they agreed to. Even if compliance is hard this does not make it impossible or impractical and does not excuse performance.

Defendants' also do not allege and cannot allege any supervening and unforeseen events that occurred after the Settlement was signed that has made compliance with Paragraphs 9, 10 and 11 impossible and therefore do not meet their burden. See *San Mateo Cmty. Coll. Dist. v. Half Moon Bay*

12

*Ltd. P'ship*, 65 Cal. App. 4th 401, 414 (1998) ("The burden of proving impossibility or excuse is on the party asserting the defense.")

Defendants were well aware of wildfire risk to Chico and its neighborhoods at the time they settled this case. On April 6, 2021, two days before Plaintiffs filed this action, Defendant City of Chico adopted a Vegetative Fuel Management Plan for Parks, Greenways, Preserves and Open Spaces. *See* Defendants' Request for Judicial Notice in Support of Plaintiffs' Opposition to Defendants' Motion to Modify and/or Interpret Settlement ("Request for Judicial Not."), at 2:10-21. The plan discussed the devastating Camp Fire of 2018: "The fire burned up to the city of Chico, and some Chico neighborhoods were evacuated. Many Chicoans became newly sensitive to how Chico's cherished parks and greenways could serve as fuses pulling wildland fire in the neighborhoods of Chico." *Id. at p. 7.* Defendants do not and cannot argue that they did not know about wildfire risk as their own documents show they were well aware of these risks.

Defendants also base the need for this modification on the assertion that homeless encampments pose a serious fire risk. Third Mot. at 10:21-23, ECF. No. 243. This is also not a supervening or unforeseen event that arose after the Settlement, because Defendants were aware of this risk from the start of this lawsuit. As the District Court noted in its order denying Defendants' First Rule 60(b) motion, "the arguments advocated by defendants in opposition to plaintiffs' motion for a preliminary injunction demonstrates that they clearly anticipated at that time the danger of fires in homeless encampments." First Rule 60(b) Order at 22:9-11, ECF No. 226.

Defendants also argue that this modification is needed due to the "difficulty and delay in enforcing City laws . . ." Third Mot. at 10:19-21, ECF. No. 243. But, the agreed-upon enforcement process is not a "supervening fortuitous event," because they negotiated and agreed to these terms. As the District Court held in March 2025, when Defendants raised this same argument:

> Defendants' contention that the enforcement procedures constitute a change in factual circumstances is unpersuasive, particularly in light of the fact that the Settlement Agreement which defendants assented to contained the terms for those procedures. The Settlement Agreement itself indicates that the parties were aware that a homeless person may refuse the shelter spaces offered to them. Indeed, paragraph 10(i) provides the procedure for enforcing the Anti-Camping Ordinances should a homeless person decline the space offered. (Doc. No. 153-1 at 16) ("If the Homeless Person declines the Appropriate Shelter Space offered, the City may issue a 72-hour Illegal Encampment Notification upon the expiration of the 7-day notice required in Paragraph 10(f)").

Defendants also clearly **anticipated** the nature of the enforcement procedure because it was set forth in the Settlement Agreement they assented to. . ." First Rule 60(b) Order at 20:11-21:3, ECF No. 226. (emphasis added.)

Defendants cannot meet their burden to obtain a modification because they have not provided a legal basis for modification of the Settlement Agreement they knowingly entered into.

> **3.    Defendants' requested modification to eliminate the personal property procedures on all properties in its "no camping enforcement" map violates the 4th and 14th Amendments.**

Defendants seek to modify Paragraph 11 of the Settlement so that they can throw away Homeless Persons' personal property at any time when the personal property is found on areas within the "no camping enforcement" map. Per their proposal, during the initial, expediated enforcement, once the 72-hour Notice of Enforcement expires, Defendants "may dispose of all Personal Property and other items left on the Public Property. . ." Third Mot. at 9:27-28, ECF. No. 243. After the initial enforcement, none of the personal property procedures would apply at any time and nothing in the Settlement would prevent Defendants from "dispos[ing] of all Personal Property" they locate in the "no camping enforcement" map areas. *Id*. at 10:3-6.

Defendants' proposed modification violates the Fourth and Fourteenth Amendments of the United States Constitution. Destroying the unabandoned possessions of homeless persons is a seizure that violates the Fourth Amendment. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030-1031 (9th Cir. 2012). Property of homeless persons can only be destroyed if there is a good faith belief that it is reasonably abandoned, or that storing it poses a risk to health or safety. *See e.g. Shipp v. Schaaf*, 379 F.Supp.3d. 1033, 1038 (N.D. Cal. 2019); *Cobine v. City of Eureka*, 2016 WL 1730084, *4 (N.D. Cal. 2016); *Martin v. City of Honolulu*, 2015 WL 5826822, *7 (D. Haw. 2015) (each approving policies that allowed destruction of property of homeless persons only if there was a good faith belief the property was abandoned or storing the property threatened health or safety). Here, Defendants' proposal that it can destroy people's personal property just because of where it is located would violate the 4th Amendment.

---

Homeless persons' unabandoned possessions are also property entitled to the due process protections of the Fourteenth Amendment. *Lavan v. City of Los Angeles,* 693 F.3d 1022, 1032 (9th Cir. 2012). The allegation that property has been illegally stored or included as part of a "camp" does not eliminate this property right. *Id*. Here, Defendants' stated plan to destroy personal property located in areas on the "no camping enforcement" map would be illegally taking property without due process.

Defendants' proposal to make any changes to Paragraph 11 should be denied since their proposal would be in violation of the Fourth and Fourteenth Amendments.

**4.    Defendants' conduct undermines their allegation that it is necessary to suspend Homeless Persons' rights on thousands of acres of public property.**

Despite Defendants' insistence that it is an intolerable risk to continue to allow camping in the areas it has deemed high fire risk, Defendants have not prioritized enforcing their Anti-Camping Ordinances in these areas. Defendants primarily rely on Fire Chief Steve Standridge's declaration to support their request for modification. *See* Standridge Decl., ECF. No. 243-1. Chief Standridge asserts "unregulated homeless encampments persist in the City due to the inability to clear them[3]. That has primarily occurred in areas in the City posing what are called high and very high wildland-urban interface (WUI) fire hazards, meaning a fire hazard stemming from the intermingling of man-made buildings and natural wildland fuel." *Id*. at 39-13, ECF No. 243-1.  Presumably these areas are in Defendants' "no camping ban" map. Since April, when Defendants first contacted Plaintiffs' counsel about its alleged wildfire concern, Defendants have conducted enforcements on 18 public properties. Turner Decl. at 3:11-17. Only five of those eighteen enforcements have been in the "no camping

---

[3] Nothing in Chief Standridge's declaration demonstrates that he is qualified to offer an opinion on why there are homeless encampments in Chico. Further, Plaintiffs dispute his unsupported conclusion that there are people living outside because of the pre-enforcement process in the Settlement. Per Defendants' logic a person is no longer homeless upon being arrested for staying on public property. Despite Defendants' conclusory statements as to why there are homeless persons in Chico, experts on the causes of homelessness attribute high housing costs to be the primary cause of homelessness. See California Interagency Council on Homelessness (July 1, 2018 – June 30, 2021). Statewide Homelessness Assessment at 14-15 (discussing how "[one of the key drivers of homelessness in California is a shortage of affordable housing" and that "[r]esearch has repeatedly found that local rates of homelessness are higher in places with higher housing costs.), available at https://bcsh.ca.gov/calich/documents/homelessness_assessment.pdf.

enforcement" map. *Id.* at 3:17-18. While the City alleges that homeless encampments are "primarily" in high fire hazard areas, the City's enforcement records indicate that is either not the case or that the City has declined to enforce against those encampments.

Chief Standridge's use of the term "unregulated homeless encampments" suggests that there are multiple large groups of Homeless Persons throughout the City. But, of the eighteen enforcements since April 2025, eleven of these enforcements have been of so-called "encampments" of between zero and three people. *Id.* at 3:18-19.

The City's recent enforcement at Bidwell Park, which is one of the five properties within the high fire zone enforced on since April, also demonstrates that the City's allegations are exaggerated. Bidwell Park is nearly eleven miles long and 3,670 acres, and Defendant noticed an enforcement of the park that only identified three people camping in a five-mile stretch of the park. Request for Judicial Notice at 2:4-9; Turner Decl. at 3:20-27, Ex. 1 at 1, 4. Yet, Defendants indicate they cannot do fire mitigation in the areas located on its "no camping enforcement" map. Third Mot. at 10:11-18, ECF No. 243. They do not explain, and likely cannot explain, how three people camping in a five-mile stretch of a 3,670 acre park prevent them from doing wildfire mitigation.

Defendants continually assert that Homeless Persons living outside are a fire risk for the entire community, yet they have been unwilling to facilitate more people moving inside by changing their entry policies to the Pallet Shelter. Most people offered a Pallet Shelter go to it. *See* the discussion of the demand for the Pallet Shelter and its entry and waitlist procedures in Plaintiffs' Opposition to Defendants First Rule 60(b) Motion at 8:26-9:25; 18:5-21, ECF No. 216. However, Defendants' policy is to not allow people subject to enforcement to choose the shelter of their choice, even when Defendants know the person will refuse the shelter referral they are offered. *Id.* Today, there are twenty-eight open Pallet Shelters. Turner Decl. at 4:1-4. Failing to keep the Pallet Shelter at full capacity when many people want to go to the shelter, and most who are offered do go, is not consistent with Defendants alleged concerns about wildfire risk due to homelessness. Rather, a concrete step Defendants can take to mitigate this concern is to ensure as many people as possible are safely inside by offering more people a space at the Pallet Shelter site.

1       **5.**     **Defendants' proposed modification is not linked to their purported concern**

2       **about wildfire.**

3       Defendants' proposed modification goes well beyond addressing wildfire, and Defendants do not

4  explain how multiple provisions of their proposal are related to wildfire risk. For example, Defendants

5  do not explain, particularly in light of Defendants' own delay in pursuing this modification as discussed

6  above in Section II, why Homeless Persons living unwittingly in an area determined to be a high fire

7  risk area should not receive the same 7-day notice referral to shelter and transportation to shelter

8  guaranteed under the Settlement Agreement.  Similarly, Defendants do not explain the connection

9  between wildfire risk and Defendants' proposal that Homeless Persons on these public properties lose

10  their rights to have their personal belongings stored as required by Paragraph 11. Third Mot. at 9:27-28,

11  ECF No. 243. Defendants can remove homeless person's property from Public Property under the

12  Settlement Agreement and provide no explanation why the requirement to store it has any impact on

13  their ability to mitigate fire risk. Most illustrative of the lack of the modifications' connection to wildfire

14  risk is Defendants' proposal to remove the contact information of Legal Services of Northern California

15  from the 72-hour Notices to homeless people. *Id.* at 9:19-22. Per Paragraph 10(o) of the Settlement

16  Agreement, the parties met and conferred about the content of the notices required to be provided to

17  Homeless Persons. Settl. at 16:8-11, ECF. No. 153-1. The parties agreed on a 72-hour notice that

18  includes the statement: "If you have questions about your legal rights regarding this notice, you may, but

19  are not required to, contact: LEGAL SERVICES OF NORTHERN CALIFORNIA, (530) 345-9491, 541

20  Normal Avenue, Chico, CA 95928. chico-office@lsnc.net." Turner Decl. at 4:5-13, Ex. 2. Defendants

21  do not and cannot articulate any connections between wildfire risk and this change to the agreed upon

22  72-hour notice, as there is no possible connection.

23       Defendants fail to meet their burden to show any legal basis or factual need for their proposed

24  modification to suspend Homeless Persons' rights on the thousands of acres within its "no camping

25  enforcement" map.

26

27

28

1

2

**C.     Defendants' Proposed Modification to Eliminate All of the Settlement's Procedures on Public Property After an Enforcement Should Be Denied Because There Is No Legal or Factual Basis for It.**

3

4      Defendants' second requested modification would rewrite the Settlement to suspend the

5  requirements of Paragraphs 10 and 11 on **all** Public Properties after there has been one enforcement on

6  that property. Third Mot. at 11:14-1, ECF. No. 243.  However, Defendants do not cite to a single legal

7  authority to support why the Court should allow this significant revision to the Settlement. See Third

8  Mot. at 12:2-13:21 (Defendant's discussion of "basis for the modification.") Per Paragraph 23 of the

9  Settlement, this modification may only be made by agreement and there is no such agreement in place.

10  See Settl. at 27:25-26, ECF No. 153-1 ("Any alteration, change, or modification of or to this Agreement

11  must be made by written instrument executed by each of the Parties in order to become effective.")

12      Defendants claim the Settlement is silent on what happens to a property after enforcement. Third

13  Mot. at 6:14, 13:15, ECF No. 225. Defendants are wrong. The notice, outreach, and shelter assessment

14  procedures in Paragraph 10 apply to "[a]ny requirement that a Homeless Person relocate themselves or

15  their personal property from Public Property and/or Enforcement of the Anti-Camping Ordinances and

16  Regulations against a Homeless Person." Settl. at 17:5-9, ECF No. 153-1. There are no exceptions that

17  make Paragraph 10 inapplicable when removing a Homeless Person from public property. *Id.* The plain

18  language of the Settlement Agreement is clear and controlling—any removal of a Homeless Person from

19  Public Property requires the procedures required by Paragraph 10, whether the property has been

20  previously enforced upon or not.

21      The Settlement's notice and referral to shelter procedures apply to people and not just Public

22  Properties. Nothing in the Settlement supports that the parties intended for the protections in the

23  Settlement for Homeless Persons to only exist at one time on each Public Property. This makes sense as

24  the Settlement does not address the causes of homelessness and unfortunately the total number of

25  homeless persons in Chico, as in other parts of California, has continued to increase. A review of the

26  Butte County Point in Time surveys from 2019 to 2025 demonstrates that the total number of homeless

27  persons in Chico increased from 864 in 2019 to 1,065 in 2025.  *See* Request for Judicial Notice at 2:22-

28

3:28. And, in 2025 39% of people in the Point In Time survey reported they were experiencing homelessness for the first time. Request for Judicial Notice at 2:23-24, 3:24-27.

Despite the plain language of the Settlement, Defendants claim their proposed modification to permanently remove the notice, outreach, and shelter assessment procedures after an enforcement at a property is "the only reasonable interpretation." Third Mot. at 13:15-16, ECF No. 243.

Apparently, Defendants also do not think the prior guidance they received on this exact issue from the Magistrate Judge who previously oversaw this Settlement is reasonable. The court informed Defendants at two consecutive informal conferences held in January 2024 per the Settlement's Dispute Resolution process that the Settlement Agreement does not provide for clearing of properties forever. Turner Decl. at 4:14-22.

Defendants also ignore that this was their own interpretation just over a year ago when they filed their First Rule 60(b) Motion in which they stated: **Of very great importance is the fact that, even after a particular encampment has been cleared, the Settlement Agreement provides no prohibition or sanction for those who refuse the shelter space offered to them and then move right back to the public space that was just cleared.** First Rule 60(b) Mot. at 16:1-4, ECF. No. 213 (emphasis in original).

The only factual basis Defendants provide in support of their desired modification is once again a repackaging of the same exact arguments they made in their First Rule 60(b) Motion, which was denied in its entirety. Here, Defendants offer conclusory statements about the pre-enforcement process of notice and shelter referral being "long" and "fraught with obstacles" and a single example for an undated enforcement where an unspecified number of Homeless Persons are alleged to have returned to the property for an unspecified amount of time. Bailey Decl. at 2: 15-3:1, ECF No. 243-2. In their First Rule 60(b) Motion, Defendants asked to be relieved from the Settlement based on "a relatively small population" of Homeless Persons refusing shelter offers and returning to Public Properties after an enforcement. First Rule 60(b) Mot. at 14:19-17:25, ECF No. 213. The District Court rejected Defendants' argument and explicitly noted that per the terms of the Settlement itself "the parties were aware that a homeless person may refuse shelter spaces offered to them." First Rule 60(b) Order at

20:11-19, ECF No. 226. Even though Defendants did not appeal that order, they ask this court to reconsider the same argument and provide zero legal authority to support their request.

Defendants do not provide any legal basis or any compelling factual basis to modify the Settlement Agreement to suspend the pre-enforcement process in Paragraph 10 and the personal Property procedures of Paragraph 11 on Public Properties after there has been one enforcement.

### D.    Defendants' Allegations About the Definition of Public Properties Are Not True and Their Requested Change Is Not Needed.

Defendants erroneously claim that Plaintiffs have taken the position that each parcel of a city park is a separate Public Property. Third Mot. at 14:14-18, ECF No. 243; Sorensen Decl. at 2:14-23, ECF No. 243-3; Bailey Decl. at 2:16-17, ECF No. 243-2. The only evidence provided to support this "absurd position" that Plaintiffs have never actually taken is the equally ludicrous accusation by Mr. Sorensen that Plaintiffs prevented Defendants from conducting an enforcement at the entirety of Windchime Park, because the park is comprised of multiple parcels. Sorensen Decl. at 2:15-20, ECF No. 243-3; Mot. at 14:15, ECF No. 243. This did not happen. Defendants conducted two enforcements at Windchime Park. Turner Decl. at 5:12-21. The first concluded on or about October 17, 2022, and the second concluded on or about May 5, 2025. *Id.* In both instances, Defendants enforced at all four parcels of the park as a single public property along with the creek bed of Little Chico Creek running along the park's southern boundary and Plaintiffs did not object to these enforcements. *Id.* at 4:23-5:1, 5:12-21, Ex. 3. The enforcement that concluded in May 2025 also included two other City parks, Comanche Creek Greenway and Depot Park. *Id.* at 5:20-21. Further, Plaintiffs have never objected to the over 23 enforcements that have taken place at the following parks and open spaces on the basis that they are comprised of multiple parcels: Bidwell Park, Comanche Creek Greenway, West 9th Street and Hazel Street, Teichert Ponds, Community Park. *Id.* at 5:22-24.

Plaintiffs did object to one enforcement that included Windchime Park in 2022. On August 3, 2022, Defendants noticed an enforcement of Little Chico Creek that included every piece of public property adjacent to Little Chico Creek. *Id.* at 5:3-7. In the dispute resolution that followed, Defendants made the dubious claim that every property that bordered Little Chico Creek was also part of the creek

and therefore one property. *Id.* at 5:2-11, Ex. 4. Magistrate Judge Newman rejected the claim, stating

that by Defendants' logic, everything along the Mississippi River would also be part of the Mississippi

River. *Id.* at 5:7-10.

Defendants' proposed definition states that a single public property is any City-owned

"continuous tract or plot of land . . . which is not separated from the rest by intervening land owned by a

party other than the City." Third Mot. at 14:5-8, ECF No. 225. Such an interpretation results in the same

outcome Defendants sought in 2022 when they sought to enforce on all Public Property adjacent to

Little Chico Creek, because under this definition, Windchime Park would be the same property as

Teichert Ponds and the Teichert Ponds bike path, simply because they each border Little Chico Creek.

Turner Decl. at 5:2-11, Ex. 4. Such an interpretation is as illogical now as it was in 2022—the Teichert

bike path and Windchime Park are not interrupted by any intervening private property but they are two

distinct properties, serve different functions, are one-half mile apart, and separated by the Highway 99

Freeway. Turner Decl. at 5:4-7.

Defendants also say their modification is needed based on past enforcement of bike paths. Third

Mot. at 14:18-20. The last time Plaintiffs' Counsel objected to an enforcement on a bike path was in

December 2024 when Defendants attempted to claim that two bike paths were actually the same bike

path, despite the bike paths ending one-half mile apart with buildings and parking lots for 8 restaurants,

a dentist's office, a hotel, a Target/Hobby Lobby shopping center, a mall, and a four-lane road that is one

of, if not the, busiest streets in Chico. Turner Decl. at 5:25-6:2, Ex. 5.

Defendants' proposed modification as to contiguous parcels is unnecessary and creates more

problems than it purports to solve. There is no justification for such drastic change to the Settlement.

### E.    There Is No Reason to Strike "Analogous Provision(S)" From the Definition of Anti-Camping Ordinances and Regulations.

Defendants seek modification of the agreement to limit the applicability of the Settlement

Agreement to a finite list of State and local Anti-Camping ordinances by the removal of the phrase, "and

any analogous provisions" from paragraph 3(a). Defendants request this modification despite not

21

providing a single example of an actual issue regarding the interpretation of this phrase during the course of the implementation of the Settlement Agreement.

Defendants cite to *Bustamante v. Intuit, Inc.,* 141 Cal. App. 4th 199, 209 (2006) as their primarily authority to support their contention that the definition of "Anti-Camping Ordinances and Regulations" in Paragraph 3(a) of the Settlement is "is ambiguous and unenforceable." Third Mot. at 15:25-26, ECF No. 243. However, *Bustamante* does not support this claim and is not applicable to the Settlement. *Id.* In *Bustamante*, the plaintiff alleged an oral agreement, and the parties never signed a written contract. *Id.* at 209. The court found there was not mutual consent or sufficient meeting of the minds between the parties regarding the essential structure of their arrangement to create a binding contract. *Id.* at 210, 215. The *Bustamante* court's discussion of the elements of a contract to which Defendants' cite is in the context of determining whether a contract existed, not, as Defendants claim, whether a particular provision is "ambiguous and unenforceable." *See Id.* at 209; Mot. at 15:22-26, ECF No. 243. *Bustamante* does not discuss "ambiguity" in a contract at all. Here, unlike *Bustamante*, there is a signed Settlement and no question of mutual assent and meeting of the minds regarding all provisions.

Further, the principals of California contract law, including the doctrine of *ejusdem generis*, preclude Defendants' claim. "The doctrine of '*ejusdem generis*' simply means that where general and specific words, relating to the same things are associated together, they take color from each other, and the general words are restricted to a sense analogous to that of those less general." *Blatz Brewing Co. v. Collins*, 69 Cal. App. 2d 639, 652 (1945) (*quoting* 23 Cal.Jur. 755, § 130); *see also* Cal. Civ. Code § 3534 ("Particular expressions qualify those which are general."). *Ejusdem generis* applies to contracts. *Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 141 Cal. App. 4th 969, 981 (2006); *Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058, 1072 (2005).

The Settlement identifies a list of "Anti-Camping Ordinances and Regulations" in Paragraph 3(a) that all criminalize camping, lodging, remaining, and/or storing personal property on Public Property as applied to Homeless Persons. Settl. at 3:23-4:11, ECF No. 153-1.[4] The Settlement's inclusion of "any

---

[4] "i. C.M.C. Chapter 9.20 (CAMPING; §§ 9.20.010 – 9.20.070), including §§ 9.20.020 and 9.20.030 (Citywide Camping Prohibition), § 9.20.050 (Storage of Personal Property in Public Places), and § 9.20.055 (Property Removal); ii. C.M.C. § 9.50.030 (B)-(E) (Waterways Ordinance – Camping, Staying, Storage of Personal Property, Entering and Remaining); iii. C.M.C. § 12.18.430 (Park

(continued…)

analogous provision(s) of local or State laws" is a more general provision to include other laws that may

have the same effect as the ones listed in Paragraph 3(a) when they are enforced against Homeless

Persons. "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in

the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Powerine Oil Co.,*

*Inc. v. Superior Court*, 37 Cal.4th 377, 390–391 (2005) (citations omitted.) "[W]ritten agreements whose

language appears clear in the context of the parties' dispute are not open to claims of 'latent' ambiguity."

*Alameda Cnty. Flood Control & Water Conservation Dist. v. Dep't of Water Res.*, 213 Cal. App. 4th

1163, 1189 (2013) (*quoting Dore v. Arnold Worldwide, Inc.*, 39 Cal.4th 384, 391 (2006) (Baxter, J.,

concurring).

Here, the doctrine of *ejusdem generis* requires that Settlement restrict "analogous" to the same

meaning as the specific provisions in Paragraph 3(a). Whether any other laws are "analogous" depends

on whether they have the same effect as the laws in Paragraph 3(a) when they are enforced against

Homeless Persons on Public Property. The Settlement describes that effect is in Paragraph 10, which

applies to Anti-Camping Ordinances and Regulations and/or "[a]ny requirement that a Homeless Person

relocate themselves or their personal property from Public Property." Settl. at 11:5-9, ECF No. 153-1.

Therefore, "analogous provision" is limited to a law that is enforced in a way that requires a Homeless

Person to relocate themselves or their personal property from Public Property.

The inclusion of the term "analogous provisions" is not only not ambiguous in this context, it is

also necessary to the enforcement of the Settlement Agreement and to afford Plaintiffs with the benefit

of the Settlement Agreement. The Settlement identifies a list of Anti-Camping Ordinances and

Regulations that cannot be enforced without observance of the Settlement Agreement terms, listing

specific City of Chico municipal code sections, state statutes, and county ordinances that were in

existence at the time the Settlement Agreement was entered into. The omission of the phrase "and any

analogous provisions," would have resulted in ambiguity as to whether Defendants could have evaded

---

Ordinance – Camping); iv. C.M.C. § 12.18.450 (Park Ordinance – Closure); v. C.M.C. § 12R.04.340
(Park Regulation – Camping); vi. C.M.C. § 12R.04.370 (Park Regulation – Closure); and vii. California
Penal Code § 647(e), which provides it is a misdemeanor to lodge in any building, structure, vehicle, or
place, whether public or private, without the permission of the owner or person entitled to the possession
or in control of it. The portion of California Penal Code § 647(e) pertaining to lodging in private
property shall not fall within this definition."

the intent of the Settlement by enforcing new, similar ordinances or statutes, which would not have been listed in the Settlement Agreement by name. Therefore, the inclusion of the phrase "and any analogous provisions" was intentional and necessary to effect the intent of the parties.

Defendants' primary support for their request for modification is a series of abstract hypotheticals which do not demonstrate that there is any ambiguity arising under this provision that would require such a modification. Defendants do not identify a single time they brought any concern about whether a certain ordinance was within the meaning of "analogous provision(s)" to Plaintiffs counsel or the court through the dispute resolution process. They also do not identify any disagreement or dispute between the parties regarding the enforcement of a provision of law on the grounds that it was an "analogous provision." Third Mot. at 14:26-16:17, ECF No. 243.

Based on over three-and-a-half years of near silence on this issue from Defendants as well as the lack of any identified conflict between the parties over its interpretation, it is clear there is no significant issue that would merit modification.


## IV. CONCLUSION

For the forgoing reasons, Plaintiffs ask the court to deny Defendants' effort to unilaterally rewrite the Settlement and deny all of Defendants' requested changes to the Settlement.


DATED: September 24, 2025                     Respectfully Submitted,
                                              Legal Services of Northern California


                                              By:____/s/ Cory Turner_____
                                                  Cory Turner
                                                  Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY . . . (*Warren, et al. v. Chico*)