UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY WARREN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF CHICO, et al.,<br><br>　　　　Defendants. | No. 2:21-cv-0640-DAD-AC<br><br><br>ORDER |

Defendants City of Chico and Chico Police Department ("defendants") move to modify and/or interpret the settlement agreement. (ECF No. 243.) The parties appeared before the undersigned for a hearing on October 29, 2025. Katherine Wardrip, Cory Turner, and Sarah Steinheimer appeared for plaintiffs and Ronald Scholar and Tyler Sherman appeared for defendants. For the reasons set forth below, the motion is denied.

**I.    Background**

Plaintiffs initiated this suit in 2021 as eight homeless City of Chico residents. They brought several claims including but not limited to a claim that enforcement of City anti-camping laws against homeless persons was cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

The parties resolved this suit through a Settlement Agreement ("Agreement") they negotiated during seven court supervised settlement conferences before Magistrate Judge Kendall

J. Newman. (ECF No. 153-1.) A stipulated order of dismissal was filed on January 14, 2022. (ECF No. 153.) The court retained jurisdiction to enforce the Agreement for five years, (id. at 3), which is the same length of time the Agreement will be in effect. (ECF No. 153-1 at 4.)

On September 10, 2024, defendants filed a motion for relief from the stipulated order of dismissal under Rule 60(b) of the Federal Rules of Civil Procedure. (ECF No. 213.) District Judge Dale A. Drozd denied the motion. (ECF No. 226.)

Defendants filed a second Rule 60(b) motion seeking relief from the stipulated order of dismissal on August 14, 2025. (ECF No. 239.) District Judge Dale A. Drozd held a hearing on October 6, 2025, and took the matter under submission. (ECF No. 253.)

Defendants filed the present motion on September 10, 2025, seeking dispute resolution on "four key issues" arising out of the agreement. (ECF No. 243 at 6.) Plaintiffs opposed the motion. (ECF No. 249.) Defendants filed a reply. (ECF No. 251.)

## II. Legal Standards

Settlement agreements are governed by the law of the forum state. United Commercial Ins. Serv. Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992). "Under California law, the intent of the parties determines the meaning of the contract." Id. (citing Cal. Civ. Code §§ 1636, 1638). The proper inquiry is the parties' objective intent, "that is, the intent manifested in the agreement and by surrounding conduct[.]" Id. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638.

## III. Discussion

### A. No Discretionary Modification of Terms

Defendants ask the court to modify the Agreement's material terms over plaintiffs' objections. However, Paragraph 23 of the Agreement provides, in relevant part:

> Plaintiffs and the City each acknowledge… that no representation, inducement, promise, agreement, or warranty not contained in this Agreement, including, without limitation, any purported supplements, modifications, waivers, or terminations of this Agreement, are valid or binding, unless executed in writing by all of the Parties to this Agreement. *Any alteration, change, or modification of or to this Agreement must be made by written*

2

> *instrument executed by each of the Parties in order to become effective.*

(ECF No. 153-1 at 28 (emphasis added).) This paragraph does not conflict with or nullify Paragraph 16 and the dispute resolution process, which expressly allows a party to file a motion to implement, enforce or modify the Agreement. (See id. at 22-24.) Although the Agreement contains a dispute resolution process granting the settlement judge jurisdiction to settle disputes arising under the Agreement, the Agreement does not provide for modification of the Agreement's material terms based on the court's discretion.[1]

### B.       Paragraphs 9, 10, and 11 in High Wildfire Risk Areas

The City seeks to shorten the notification periods to homeless persons in any area designated as a "High" or "Very High Wildfire Risk" area by making the notice procedures in Paragraphs 9, 10, and 11 inapplicable. Instead, the City would utilize a procedure under which the City would be required to provide notice to plaintiffs' counsel three days prior to issuing a 72-Hour Notice of Enforcement. (ECF No. 243 at 8-11.) The City cites cases applying the doctrine of impossibility and argues that compliance with the Agreement has become impracticable because cleared sites become immediately reoccupied and vegetation management is hindered. (Id. at 11-12.)

The doctrine of impossibility includes "cases of extreme impracticability of performance." KB Salt Lake III, LLC v. Fitness Internat., LLC, 95 Cal. App. 5th 1032, 1058 (2023). (ECF No. 243 at 10.) However, circumstances that make performance more difficult or costly than contemplated when the agreement was executed do not constitute impossibility. Id. at 1059. The City carries any burden of proving impossibility. See Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga, 175 Cal. App. 4th 1306, 1336 (2009).

The court is sympathetic to difficulties in enforcing ordinances for safety and fire mitigation, but the circumstances leading to these difficulties were foreseeable. As the district judge noted when denying the City's first Rule 60(b) motion, the enforcement process and

---

[1] Federal Rule of Civil Procedure 60(b) could, for example, provide a legal basis for modification, but defendants do not bring the present motion under Rule 60(b).

3

associated financial costs were anticipated by defendants when they voluntarily entered into the Agreement. (See ECF No. 226 at 21.) The undersigned finds no basis to unilaterally modify the Agreement as requested.

### C.     Paragraph 9 and Re-Occupation of Previously Cleared Sites

The City seeks to modify Paragraph 9 to add the following:

> Further, once a Public Property has been the subject of an enforcement action to clear Homeless Persons and/or homeless encampments from the Public Property, all provisions of the Chico Municipal Code and State law, including, but not limited to those set forth in Paragraph 3.a. of this Agreement, shall apply and be enforceable thereafter as to the specific Public Property without limitation as to scope or time.

(ECF No. 243 at 11-12.)

This addition would effectively terminate the notice requirements and other protections of Paragraphs 10 and 11 after enforcement on a property. However, the Agreement does not provide for permanent clearing of properties or address re-occupation. The City nevertheless argues the only reasonable interpretation is that "once cleared an area be subject to all City ordinances, including the anticamping notices, either permanently or for not less than 90 days… before re-occupation is permitted." (ECF No. 243 at 13.)

The City previously sought to be relieved from the Agreement based on the cost of enforcement and Homeless Persons refusing shelter offers and returning to Public Properties after an enforcement. (ECF No. 213 at 17.) In rejecting the argument made in the City's first Rule 60(b) motion, the district judge explained that the Agreement indicates "the parties were aware that a homeless person may refuse shelter spaces offered to them. Indeed, paragraph 10(i) provides the procedure for enforcing the Anti-Camping Ordinances should a homeless person decline the space offered." (ECF No. 226 at 11.) The Agreement's plain language requires the procedures in Paragraphs 10 and 11 to be followed prior to removal of a Homeless Person from a Public Property whether the property has previously been enforced on or not. The undersigned finds no basis to modify Paragraph 9 as requested.

////

////

4

### D. Contiguous Parcels

Under Paragraph 10.e. of the Agreement, a single notice may include only three "Public Properties." (ECF No. 153-1 at 14.) Paragraph 3.g. defines "Public Property" as follows:

> "Public Property" means any publicly owned property in the City, including but not limited to, a public park, public street, alley, lane, public right-of way, or any public parking lot or public area whether improved or unimproved, located within the City.

(Id. at 6.)

Defendants request the following language be added or that Paragraph 3.g be interpreted in this manner:

> For purposes of counting, a single "Public Property" shall be defined as a continuous tract or plot of land, regardless of the number of legally recognized parcels contained therein, which is not separated from the rest by intervening land owned by a party other than the City.

(ECF No. 243 at 14.)

According to the City, plaintiffs have taken the position that each parcel in a City park constitutes a separate "Public Property" which results in only being able to notice and clear a portion of a park at a given time. (ECF No. 243 at 14.) Plaintiffs dispute that they have ever taken such a position and argue the proposed modification or interpretation is unnecessary and creates more problems than it purports to solve. (ECF No. 249 at 20-21.)

As discussed, the Court will not unilaterally modify the Agreement. Moreover, defendants have not shown a present need for interpretation.

### E. Analogous Provisions

Paragraph 3.a. of the Agreement lays out the laws to which the Agreement applies:

> "Anti-Camping Ordinances and Regulations" means the following provisions of the Chico Municipal Code ("C.M.C.") and State law *and any analogous provision(s) of local or State laws* as applied against Homeless Persons on Public Property:
>
> i. C.M.C. Chapter 9.20 (CAMPING; §§ 9.20.010 – 9.20.070), including §§ 9.20.020 and 9.20.030 (Citywide Camping Prohibition), § 9.20.050 (Storage of Personal Property in Public Places), and § 9.20.055 (Property Removal);

////

5

ii. C.M.C. § 9.50.030 (B)-(E) (Waterways Ordinance – Camping, Staying, Storage of Personal Property, Entering and Remaining);

iii. C.M.C. § 12.18.430 (Park Ordinance – Camping);

iv. C.M.C. § 12.18.450 (Park Ordinance – Closure);

v. C.M.C. § 12R.04.340 (Park Regulation – Camping);

vi. C.M.C. § 12R.04.370 (Park Regulation – Closure); and

vii. California Penal Code § 647(e), which provides it is a misdemeanor to lodge in any building, structure, vehicle, or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it. The portion of California Penal Code § 647(e) pertaining to lodging in private property shall not fall within this definition.

(ECF No. 153-1 at 4-5 (emphasis added).) The City requests to strike "and any analogous provision(s) of local or State laws" or interpret the phrase to limit its scope "to laws prohibiting residing or lodging on public property." (ECF No. 243 at 15.) In the alternative, the City requests the definition "expressly exclude all other State laws not criminalizing lodging or residing on public property, and all other portions of the Chico Municipal Code, including those related to land use…, zoning…, and sanitation…." (Id.)

The Agreement's inclusion of "any analogous provision(s) of local or State laws" has the effect of including other laws that may have the same effect as the ones listed in Paragraph 3(a) when they are enforced against Homeless Persons. The phrase "and any analogous provision(s) of local or State laws" is not facially ambiguous, and the City shows no current need for interpretation. The undersigned will not unilaterally modify the Agreement.

IV.     **Conclusion and Order**

In accordance with the above, IT IS ORDERED that defendants' motion to modify and/or interpret the settlement agreement (ECF No. 243) is DENIED.

Dated:  October 31, 2025

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8, warr22cv0640.mod.set

6